UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 25271-CIVIL-BECERRA


JENNIFER PELL,                              Miami, Florida

           Plaintiff,              September 17 and 22, 2021

    vs.

ROYAL CARIBBEAN CRUISES, LTD.,

           Defendant.              Pages 1 to 102
_____


TELEPHONIC DISCOVERY HEARING
(TRANSCRIBED FROM THE AUDIO RECORDING)
BEFORE THE HONORABLE JACQUELINE BECERRA,
UNITED STATES DISTRICT JUDGE

APPEARANCES:


FOR THE PLAINTIFF:          NICHOLAS I. GERSON, ESQ.
                            GERSON & SCHWARTZ
                            1980 Coral Way
                            Miami, Florida 33145


FOR THE DEFENDANT:          WALTER COOPER JARNAGIN, ESQ.
                            GRAYROBINSON, P.A.
                            515 North Flagler Drive
                            Suite 650
                            West Palm Beach, Florida 33401


TRANSCRIBED BY:             LISA EDWARDS, RDR, CRR
                            Reporterlisaedwards@gmail.com
                            (305) 439-7168

THE COURTROOM DEPUTY:  Case No. 20-25271-Civil-Becerra, Jennifer Pell versus Caribbean Cruises, Ltd.

Counsel, please state your appearances for the record, starting with the Plaintiff.

MR. GERSON:  Nicholas Gerson on behalf of the Plaintiff, your Honor.

MR. JARNAGIN:  Cooper Jarnagin on behalf of Royal Caribbean Cruises, Limited.

THE COURT:  I'm sorry.  I didn't get the name of the lawyer for Royal.

MR. JARNAGIN:  Yes.  Cooper Jarnagin.

THE COURT:  Can you spell that for me, please?

MR. JARNAGIN:  Yes.  First name, C-O-O-P-E-R; last name, J-A-R-N-A-G-I-N.

THE COURT:  All right.  So we're on my discovery calendar.

Look, I appreciate the parties continuing to work things out.  But when I get an amended notice like, you know -- I had another hearing before you all.  So it really is difficult because I'm not limiting these things.  I prepare beforehand.  So when the amended notice comes out and my notes are on the other notice, you know, do your best, please, to try to resolve things -- give me a day at least so that I'm not kind of scrambling before the hearing.

So we're going to go for about an hour today.  I'm not

going to give you more than that.  We'll probably have to reset this and continue it.  And we're going to have to kind of struggle through it because I got handed something that's different.  I'm not sure how it's different.  Again, I appreciate the parties' working it out; but, guys, in the future, you know, try to work it out not ten minutes before the hearing unless you're going to work it out completely, in which case that's a different story.

So we're here today.  There are two different notices or two different proposals, proposed orders.  I know the Defendant put a couple of things up and the Plaintiff has a number of things up.

The amended notice that I've got now -- and I'm not even sure if I'm looking at the right one, Mr. Gerson.  I'm now looking at one.  I don't know why I had one that was sent to my chambers.  You tell me.  What are we moving on?  Because I've got multiple things here now.

MR. GERSON:  Sure.  I apologize for the confusion if there is any.  And I understand the Court's position, and we have been trying to work it out.

So just to answer your question, your Honor, the notice that we're traveling under is the September 15th, 2021, notice.  It's Docket Entry 25.  And we have made some additional headway.  So I think I can streamline some of the issues for the Court.

THE COURT:  But isn't that different than my proposed order?

MR. GERSON:  I had them -- no, because my paralegal's kids have COVID, so she -- I thought she had submitted a proposed order.  So the proposed order that you have should reflect what's in this notice.

THE COURT:  All right.  Then I don't know where my confusion is.  But trust me, I'm confused.  So let's do this: Let's start with the interrogatories, because those I have in front of me.  Those I've flagged already.  So it's Interrogatories 1, 5, 9 and 19.  Are those the ones that are at issue?

MR. GERSON:  Yes, your Honor.

THE COURT:  All right.

MR. GERSON:  In fact -- sorry.  Go ahead.

THE COURT:  Hold on.  I'm looking at the Defendant's notice of serving answers to the first set of interrogatories. Right?  And I've got one that's dated July 21st.  And I think there were amendments to that or supplements to that.  I don't think the supplements have anything to do with 1, 5, 9 and 19, I think.  Or no.  There's a supplement to 19.

All right.  So let's do them one at a time.  Let's go to No. 1, then.  Let me hear you, Mr. Gerson, on No. 1.

MR. GERSON:  Sure, your Honor.  And may it please the Court.

This is a slip-and-fall that occurred on the *Enchantment of the Seas*.  Initially, if you recall, we were before your Honor and the Defendant, just for context, had objected to every interrogatory that we had propounded.  So I just was trying to lay out a foundation or a history so the Court could see what the progression was.

So the issue specifically with respect to No. 1 is -- and my client slipped and fell.  She had a brain injury; she had multiple craniotomies.  And so it is a very significant, significant injury case.

No. 1 is a very simple question:  State all facts and information about how the incident occurred, if any wet, foreign or transitory substance or any objects were identified in the area and all actions undertaken by the Defendant to prevent the incident from occurring.

And what I get is that they find my client on the floor, but they don't tell me anything factually about what happened.  And they don't answer the question if any wet or foreign or transitory substance was identified, and they referred me to CCTV video.

The CCTV video for unknown reasons actually doesn't even show the incident.  There's a gap in the -- it shows you my client about to come out and then it jumps and then the next thing you know, she's laying on the floor.  So the suggestion that the CCTV video footage is going to show me what happened

isn't conclusive, because the video has either been deleted or corrupted or I don't know what their explanation is.

But ultimately, I'm asking a simple question:  What do they know factually about what happened?  We know there was an investigation.  We know that there was multiple people.  There was even an eyewitness referenced.  And telling me that they found her on the floor isn't answering the interrogatory.

THE COURT:  All right.  Let me hear from Royal.

MR. JARNAGIN:  Yes, your Honor.  Cooper Jarnagin.

Our position is we have fully answered the interrogatory answer based on what we currently know.  The witnesses have actually [indiscernible] out to us what happened.  And this is the response.

Regarding the CCTV footage, Mr. Gerson is referring to one file of the CCTV footage.  But there's other footage from another angle that shows Plaintiff falling forward onto the pool deck.  So that's the CCTV footage that we're referring to there.

THE COURT:  Well, I've got to tell you that on 1, Mr. Gerson, I think this answer is sufficient for where the litigation's at.  Obviously, they have a responsibility to continue to supplement.  We'll get to the CCTV video footage; we'll get to other issues later.  But I think for purposes of an initial interrogatory, this interrogatory, I think this answer is sufficient.

So I'll deny the motion to compel 1.

Let's go to 5. 5 is the identification. All right. So let's talk about identifying the safety officers and other ship officers.

The response is: An initial investigation [indiscernible] completed. An accident report was completed. A [indiscernible] accident report was completed. And it says each is employed by RCCL.

Mr. Gerson, what else were you looking for here?

MR. GERSON: Facts and observations made by each of the people.

THE COURT: Hold on.

MR. GERSON: For instance, I believe Yeshota Nandan was listed as, quote, an "eyewitness," who is the lifeguard supervisor. But they don't provide us any of the information about what these people identified or uncovered or factual observations made at the scene.

THE COURT: Let me hear from you, Mr. Jarnagin, as to why at least a summary of what information they have, factual information they have, shouldn't be compelled.

MR. JARNAGIN: Yes, your Honor.

I agree with Mr. Gerson that the facts contained within the incident report are not privileged. I just -- I have a hesitation of actually listing out a factual narrative because some of these incident reports don't translate properly to this

request.  I mean, to the extent that nothing was observed, I can respond in that manner.  But otherwise, that's kind of the issue here.  I don't know how to make that fit into what this is requesting.

THE COURT:  Well, the request is:  Include all of the investigation, persons, facts and observations made of the accident.  So, you know, I assume that somebody went back to the area.  Maybe they went back to the area and whatever they saw is whatever they say.  Whatever they heard is whatever they heard.  I guess that it's always a little scary to summarize things or put them into interrogatories, but we have the interrogatory, though.

And so I'm going to grant the motion to compel on this. I do think you have to provide a factual summary of what these people know.  Obviously, it's an interrogatory.  There's going to be documents; there's going to be testimony.  But you have to provide more.  I also don't see that there was any objection that was lodged to Interrogatory No. 5.  So the motion to compel 5 is granted.

Let's go to 9:  Identify each and every record or statement made by Defendant regarding the facts of this incident.  The response goes back to 4 and 5.

Let me hear from you, Mr. Gerson.

MR. GERSON:  I'm just going back to 4 and 5 here.  My only issue with this interrogatory is, to the extent that there

are other records that they're relying on -- and I told counsel.  And just so the Court knows, we have been working very hard to try and work these issues out.

But the point of this interrogatory is, I'm not looking for his report to his client about what happened; I'm looking for other things.  And if there is information that they're claiming is protected, the identification of information is not protected.  Maybe in certain circumstances production of the information is protected.  But I'm entitled to know what exactly -- what records of the incident exist.  And they did identify some of them, but the issue I have is they have objected.  So I don't know what else is out there.

THE COURT:  All right. Mr. Jarnagin?

MR. JARNAGIN:  Yes, your Honor.

I advised Mr. Gerson that the response to this is complete.  All the investigation materials have been listed in the interrogatory answers or otherwise listed on the privilege log.

The objection itself pertains to basically any work product reports that are going between attorneys or made in response to this litigation.  So Mr. Gerson has everything identified.

THE COURT:  So I'm going to grant the motion, because what the interrogatory doesn't do is actually spell those out without objection.  So the problem is that when you say, "Look

at 4," and maybe 4 is the complete list, so when you say, "Look at 4 and 5," but then you object as being vague or also subject to confidentiality, just for purposes of a record, it appears to me to be unclear as to whether or not all those documents are identified.  It does look like you've identified in summary that you don't have any issue actually saying:  This is it.  But then you need to say it in response to No. 9.

So 9 is granted.

Then we go to 19.

MR. JARNAGIN:  Yes.

MR. GERSON:  Can the Court hear me on the speaker?  This is Mr. Gerson.

THE COURT:  Yes.  I can hear you.

MR. GERSON:  Okay.  I just wanted to make sure.

So No. 19, your Honor, deals with prior incidents.  And what we went back and forth with is, I made an agreement with counsel without prejudice to limit it to three years.  And what we were provided -- and if you'll see No. 19, it asks for very specific information:  the name, the date of birth, the description of the circumstances, various factual information.  And what was produced to us was a spreadsheet.  And that is in Reliance Material No. 9, which was submitted to the Court, I believe, the day before yesterday.  Yesterday was a holiday, so I believe it would have been done on Wednesday.

But ultimately, your Honor --

THE COURT: I have a bunch of stuff, but it didn't --
is it like a spreadsheet that I can't read because the letters
are so small?

MR. GERSON: Yes.

THE COURT: Okay.

MR. GERSON: Yes. So 9, they produced this. But they
don't provide us -- some of the information on here has the
names and not the phone numbers. Some of them have the phone
numbers and not the email addresses. Some of them don't
contain any way for me to contact these people. So it
doesn't -- like for instance, if you look at emails, under the
emails, there's nothing as far as emails.

When you ask for --

THE COURT: Well, some of them [indiscernible].

MR. GERSON: I'm sorry?

THE COURT: I think some of them have emails, if I'm
looking at the right one.

MR. GERSON: Some of them do. The point is, they don't
provide all the information for what is asked for in the
interrogatories. And in fact, they --

THE COURT: All right. Let me ask Royal Caribbean.
This is typically, as you know probably better than I do,
Mr. Gerson, this is usually generated from some incident report
software. Right? And this is what they have. But maybe.

Let me hear from Royal on this.

MR. JARNAGIN:  Yes, your Honor.

So the spreadsheet contains the name of the vessel, the name of the people.  And his complaint regarding the phone number and email, 80 percent of these 174 prior incidents contain both the phone number and the email.  All of them contain the physical address of the passenger.  So the complaint that some of these entries are blank with regard to the email or the phone number, I mean, 80 percent of it is produced.

MR. GERSON:  Well --

THE COURT:  So -- go ahead, Mr. Gerson.

MR. GERSON:  If you take a look at the first page, under email, none of the emails are provided with the exception of the last one.

ELECTRONIC VOICE:  "The conference recording has stopped."

MR. GERSON:  And none of the phone numbers --

THE COURT:  Hold on, Mr. Gerson.

Donna?

THE COURTROOM DEPUTY:  Yes, Judge.

THE COURT:  The recording stopped.  Hold on.  Something happened to the conference line.  Give me a second.

MR. GERSON:  Sure.

THE COURT:  Donna, I don't know what's going on.  It says yes and then it says no.

THE COURTROOM DEPUTY: Right. Hold on.

THE COURT: Give us a minute.

THE COURTROOM DEPUTY: Well, Judge, I'm recording on the DAR at the same time.

THE COURT: Oh, okay.

THE COURTROOM DEPUTY: Now it's fine.

THE COURT: We'll move forward. It's one of those days, gentlemen, as you can tell from my sunny disposition when I started this hearing.

I see that it doesn't have emails. But you do have -- in the ones you do have emails -- I mean, I can't read it, because it's too small, but it does look -- this is the first one. Right? It looks like you've got an address there somewhere in maybe Maryland. I think this is an MD. So you have no email, but you have a way of contacting them.

MR. GERSON: There's no phone; there's no email for any of them. I have to write --

THE COURT: You can write them. There's an address.

MR. GERSON: I mean, the interrogatory asks to provide their contact and phone number.

THE COURT: So let me ask Royal, how did you put this list together?

MR. JARNAGIN: Yes. This was --

THE COURT: Why doesn't the list have the phone or address for some of them?

MR. JARNAGIN:  Yes.  This was generated in-house.  So this was how it was received.  It looks like the bulk of the entries that have missing emails or phone numbers are back in 2017.  So I'm not sure if it's simply a matter of how the older incidents were input.

But again, I mean, this is like a nine-page document with 174 prior incidents.  80 percent of them have all the information requested.

THE COURT:  Yes.  It seems like it's just that first page and a half is missing emails and phone numbers.  So what I'm going to do is I'm going to compel Royal to make best efforts to identify either a phone number or an email for these people.

Mr. Gerson, if it's not there, it's not there.  I'm not going to make somebody, you know, spend hours upon hours trying to identify these people.  If they can get to an email or a phone number, they can readily find it in their records.  But I'll ask them to produce it to you.

But otherwise, you've got their address.  So it might be that some folks you have to send a letter to.

But I'll ask Royal Caribbean -- like I said, I'll grant your motion in part.  But if they don't have it, you know, they don't have it.  You have a way to reach these people, I guess, is my point.  It doesn't appear to me that there's any case in which you have no contact information.  You don't have an email

or phone number, but you have some contact information.

MR. GERSON: Okay. I mean, I think there's an easier way to address this; and it actually corresponds to another matter that is at issue, and those are the passenger injury statements. The passenger injury statements contain their phone number, their email address. It's a document. That would be the simplest way to get the information that I'm looking for.

THE COURT: Well, let's get to that. I mean, we'll get to that when we get to that.

MR. GERSON: Okay.

THE COURT: When we get to that, if you get those, then this is going to be very easy maybe then for Royal to get that information or you'll already have it. You guys can work that out on your own. I'm not going to give you that. I'm going to wait to see what the argument is on that.

So on this one, I'll ask Royal Caribbean to make their best efforts to provide it. And, look, my intention here is, if it'll take somebody at Royal Caribbean a week to get these things, then I think that's unreasonable. If somebody can go back into these records, right, and look for the emails or maybe get the emails from the passenger report or get it from someplace else and they can do so easily, they should do so. So if it takes a day to get this information, get it to them. If it takes a week, then that's a different story.

So I'll grant this request.  Again, on this one, if Royal can't get that information and Mr. Gerson isn't satisfied with what was done to get it, then I'll hear from you again on [indiscernible].

19 had the amendment, but it doesn't matter, because it just [indiscernible].  Hold on a second.  Let me put a paper clip on the interrogatories, and that finishes up the interrogatories.  Right?

MR. GERSON:  Correct.

THE COURT:  Okay.  So let me be done with the interrogatories.

Hold on.  I've got to go to my other notes here, so that should take us to the video.  This is the problem with the video:  I watched the video, but I don't know what I'm looking for.  So I appreciate it being sent to me, but what am I looking for, Mr. Gerson?

MR. GERSON:  Sure.  At 7:48:30, approximately, is when my client comes out or appears and then all of a sudden between 7:48:30 -- it jumps from 7:48:30 to 7:49:47.  And the entire incident is gone.

Counsel made a reference:  Well, we produced another video that shows the fall.  That video is from across the pool and you can't see what happened because all the chairs are obstructed.

So what I was asking for was a complete, unedited video

that -- you know, I don't know what the explanation is, how it's just a coincidence that the precise moment that my client falls is missing and it starts up again when she's already on the floor.  So to me, there's something wrong with that.  And I know from their policies and procedures Royal Caribbean is supposed to record information; I believe it's an hour before.

Ultimately, I'm asking the Court to compel them to produce complete, unedited video.  And if they say, "This is all we have," and they have some explanation as to why just at the precise moment my client is about to fall it deleted and then all of a sudden it starts up again, then I can address that in depo.  But I don't know what the issue is with this video.  So I was asking for an order making sure that they produced everything and not just a portion of it.

THE COURT:  All right.  Let me hear from Royal.

MR. JARNAGIN:  Yes, your Honor.

Me and Mr. Gerson discussed this, and he has been provided with all of the CCTV footage that was preserved.  I know he has a complaint about this particular angle of the video footage skipping.  And I don't know what to say, other than he has everything that we have.  And if he has a problem with the video footage, that has to be addressed through discovery and through people with personal knowledge of it.

THE COURT:  Well, let me look at your actual answer, if you don't mind.  So can someone direct me to the request, the

actual request and response on this one?

MR. GERSON:  Sure.  The request would be 14.

THE COURT:  Oh, the first requests?

MR. GERSON:  Yes, ma'am.  Yes, your Honor.

THE COURT:  Give me a second.

This is what I'm going to require on this one:  So what I'm going to require on this, which is essentially Request For Production No. 14, I want Royal to amend its answer to specifically state what I heard in court today.  Right?  Which is:  All the CCTV footage of the accident has been provided.  Right?  I don't doubt that it has, sir.  I'm not suggesting I wouldn't accept your representation as an officer of the Court.

MR. JARNAGIN:  Right.

THE COURT:  But I think Mr. Gerson's entitled to have it as a representation of the party.  You know, I have no idea what happened to the video, if there's [indiscernible].  Who knows, right?  Your point is well taken that that'll have to be developed in discovery.

But in order for him to develop it in discovery and in order for him to seek any kind of sanction or to seek any kind of relief, there's got to be -- it's got to tie back, obviously, to a request.  And I've had a couple of these where it just is kind of untidy getting there, and it doesn't make it easy on the Court or on the parties.

So I'm going to request that Royal affirm in this

discovery request here, 14, that all the video has been provided.

And then, look, there might be nothing to this.  But then we can take it from there.  So I'm going to take your motion to compel a complete [indiscernible] as to this video to be a motion to compel 14, a complete response to 14, and grant that.

Let's go back to -- so I watched that video for nothing.  Okay.

MR. GERSON:  Sorry.

THE COURT:  That's all right.  Something tells me if we go to trial, I'll see that video 15 times until it's done.

MR. JARNAGIN:  Correct.

THE COURT:  All right.  A motion to compel better response and overrule Defendant's work product objection as to Request 9.  All right.  So I'm going to go back to Request 9.  Hold on.  For some reason, these are not in order.  So if I go to 9, 9 asks for the ship's safety officer report; and there's an objection saying that it seeks privileged information.

Let me hear from you, Mr. Gerson.  I'm looking -- I have the privilege log in front of me, so I'm not sure that your objection is to [indiscernible] of the privilege log or the actual [indiscernible].

MR. GERSON:  Let me find the privilege log.  Well, they filed a privilege log and then they filed an amended privilege

log.

With respect to this particular request, counsel said a short while ago he agrees facts are not privileged. The incident report contains a factual or narrative portion based on the representations that have been made that they don't know what happened. And I've asked in a number of ways what factual information they do know, and there's been multiple representations that this is all that is known.

I'm not saying that that's not true; but ultimately, I'm asking for the factual narrative portion of the incident report to see what it says because facts are not privileged. And so that -- at least that portion of the incident report I believe should be disclosed and provided.

THE COURT: Now, look, sometimes you don't get that because you got it in an interrogatory. Right? I mean, typically, the privilege is asserted for the entire report; and if there's facts in that report, you get them in the interrogatory. Right? I haven't seen too many of these. Well, I guess I wouldn't necessarily, if that's the way it panned out. But I had always assumed that these two lines were [indiscernible] the entire report. They weren't redacting the report. Right? They assert the privilege, as I think they have a right to do. But you get the facts someplace else.

So are you suggesting that you should both get the facts someplace else and have a redacted report or would you be

satisfied if the report continues to have its privilege, but you got any facts through the interrogatories?

MR. GERSON:  My position is that the factual portion of the incident report is not protected from disclosure.  It's been produced in *Chen versus NCL*.  I can reference the docket entry, if the Court would like, where Judge Reyes ordered NCL to produce the factual narrative of the incident report.

But to answer your question, I'm seeking exactly -- I'm asking for the factual portion, just to see, you know, what facts, additional facts, are there, since essentially none have been provided.

THE COURT:  I don't need to see the Reyes order because, Mr. Gerson, you have given that to me before.  So I've received that one before, so I don't need to take a break to look at that.

Let me hear from Royal on this.  Look, I'm very familiar with the case law on the privilege issue on the reports.  Right?  So Mr. Gerson is right:  The facts of the report, you know, are not privileged.  So you could give him the report in a redacted fashion.  I think for the most part that can be cumbersome.  And one way of addressing that is to state the facts somewhere.

But there are facts in these reports.  There also are. And he's entitled to those facts.  So tell me why Royal hasn't given him the facts in those reports.

MR. JARNAGIN:  Yes, your Honor.

So respectfully, I think this overlaps with the answer to Interrogatory No. 5 that we previously addressed.  So there, you granted, giving a factual summary of what the crew members saw.

And I don't mind answering an interrogatory giving facts of the accident report.  So there is really no point of contention there.

THE COURT:  Yes.  So it doesn't really overlap entirely, I think, because in 5, you know, it's the facts that that person saw.  So if it's "I am an investigator and I didn't see any facts," then I don't see that you'd have to present [indiscernible] facts.  Right?

But if I'm an investigator and I have a report and in that report I'm listing facts that I didn't personally see, right, but they're the facts in the report, that's not privileged.

So I don't know that 5 covers it.  Look, the one that did cover it was 1.  And I denied the motion to compel there because I said on the record, obviously, that there were other places where that would come.

The problem is, you can't have it both ways.  He's entitled to these facts.  You either redact this report or you amend 1; or in your answer to 5, you can list the facts that are in each of those reports.  But he's entitled to the facts

in the report.

Like I said, I think sometimes it's cumbersome to do the redactions if it's neither here nor there because it's coming out in other places. I don't know what this report looks like. Sometimes it's easier just to do it by letting them have the factual recitation. I don't know. But he's entitled to the facts in the report.

So what I'm going to do with this is on 9, I'm going to, you know, grant it in part and deny it in part. He's entitled to the facts. You can redact the report and give him the facts that are in the report or you can represent under oath in one of the interrogatories -- it either could be 5, although I don't think 5 straight-out asks for that -- where somebody swears under oath what the facts are that were collected in the report. Right?

Mr. Gerson, if they give you an interrogatory that's clear and you want to see a redacted report, we can have that debate another day. It's probably not one that I'm going to be too thrilled to be hearing from, because to me it's one-half dozen of the other. But you're entitled to the facts. So let's see how you get them.

So it's granted. It's only denied in part in that, again, if Royal Caribbean chooses in an interrogatory to list out all the facts, it can do so. It's not going to limit you, Mr. Gerson, from coming back and wanting to see the report.

But you'll have to do so.  And again, 5 doesn't necessarily cover it, right?  Because 5 is the facts that that person, you know, themselves saw.  So the security officer isn't going to have facts of the incident unless, you know, he interviewed the person afterwards or he observed things, that kind of thing. So to me, 5 was limited to things that that person actually saw themselves as opposed to facts they collected.  And I think that's why this is still relevant on 9.

All right.  So that's 9.  So now we're going to a motion to overrule production of Defendant's work product objection.

So here, Mr. Gerson, you want me to look at the privilege log?  Or is there a request that you wanted me to look at?

MR. GERSON:  Well, both, your Honor.  We asked for, you know, Request 9; and in response to Request 9, they identify email correspondence of the incident.  I don't know why the email would be privileged.  It was done in the ordinary course and scope of business.  The report might be privileged.  But there's no -- I don't believe there's enough here for them to withhold an email about this incident.

It just says "memorializing incident investigation."  I don't know what that means.  It was sent to various people within, I presume, Royal Caribbean, the guest supervisor and the deputy security officer.  Of course, that person isn't

identified -- or here:  Godson Almaida is identified.  So my position is that the email's discoverable.

THE COURT:  All right.  Let me hear from Royal.

MR. JARNAGIN:  Yes, your Honor.

The email is from the security officer that conducted the investigation, and the substance is essentially the investigation itself.  So its contents were created as a result of the investigation and in anticipation of litigation.  It mirrors the incident report.  And it was transferred to higher-up security officers that also undertake the same duty of investigating these incidents.

So our position is that it is completely privileged.

THE COURT:  No.  I have to say, I don't understand your argument.  So the description has to give me sufficient information to allow me to conclude that it's privileged.  What I have here is an email.  What I'm reading is "Email correspondence to the chief security officer and guest security supervisor and the deputy security officer from the security supervisor memorializing the incident and the investigation conducted."

So the report -- and the law, I think, is pretty well settled on this -- is the reports are prepared in anticipation of litigation, which is why they enjoy the privilege.

I'm not sure why this email enjoys the privilege.  I don't know how the email is generated in anticipation of

litigation, unless there's something more in this email than what you've described. So there's a difference, right? Because the report, the investigation itself, that's in anticipation of litigation. How is an email between two nonlawyers something that's prepared or sent in anticipation of litigation?

MR. JARNAGIN: Yes. The security officer conducts the investigation in anticipation of litigation at the direction of the attorneys within Royal Caribbean. So their actions in actually performing the investigation are by the direction of the attorneys. And the contents of the email memorializes what they've done as part of the investigation, so the content itself would be privileged.

THE COURT: If it's memorializing the incident --

MR. JARNAGIN: Yes.

THE COURT: -- and the investigation --

MR. JARNAGIN: Yes.

THE COURT: -- [indiscernible]. Mr. Gerson?

MR. GERSON: Sorry. I didn't hear you, your Honor.

I would just like to point out, your Honor, this is the amended notice of privilege log. We're already -- well, actually, we didn't get to the document production, I guess, in the first hearing. But the fact of -- everything that is done with respect to this particular incident isn't confidential and privileged. I mean, the fact that there was an email

correspondence, okay.  So there was an email sent.  It's also unclear.

Then there's a reference to a one-page document.  Does that mean that the email was one page and there's an attachment?  But ultimately, the privilege applies to the incident report, which is conducted in anticipation of litigation.  It's not everything under the sun that relates to the incident is protected.

I mean, ultimately, I got redacted video or unedited video.  I don't have facts about what happened.  It's like everything factual isn't being disclosed.  So I don't see that the Defendant has met their burden to establish that this email correspondence amongst cruise ship safety personnel is subject to any privilege at all.  I don't think they meet their burden.  It's unclear, to say the least.

THE COURT:  Right.  Royal Caribbean, I'll ask you to submit that to me for in-camera inspection.

MR. JARNAGIN:  Yes, your Honor.

THE COURT:  From a legal perspective, what is privileged is the investigative file.  Whether an email falls into that category or not I think is a little unclear at best from the description.

So I'm not going to order you to continue to describe it at this point; I'll just take a look at it myself, which I am not excited to do at all, counsel, but I will do because at

this point I just want to move the issue along.  So I prefer not to have to look at things in camera, obviously, but I'll go ahead and do that on this one.

So that goes to -- now we're on No. 5 of the Docket Entry No. 25.  So if I go to No. 5 --

MR. GERSON:  Actually, No. 4.  I'm sorry.  We're also dealing with the lifeguard accident report.

THE COURT:  So No. 4.  Hold on.  Oh, the lifeguard accident report.  You're right.  It's all there.  So now we're on the lifeguard accident report, which is the second entry.

MR. GERSON:  So the lifeguard accident report, I have people working remotely, so I did send the reliance material for this particular document.

We don't believe the lifeguard accident report is a privileged document either.  They haven't been able to make any legal argument that it was done in anticipation of litigation. And if you look at the reliance material that was sent this morning, which is the lifeguard supervisor -- I guess this is the -- excuse me.  I'm at a loss for words for some reason. But this is the duties and responsibilities for the lifeguard supervisor.  And on Page 2, No. 3, it says very clearly under the supervisor that reporting, documenting and following up with any accidents or injuries around the aquatic areas as appropriate.

So my position is that, based on the duties and

responsibilities for the lifeguard manager, that in the ordinary course and scope of their business or duties and responsibilities, they are required to report, document and follow up with accidents and injuries not just in anticipation of litigation.  It says "with any accident."

And apparently, there was a lifeguard accident report by Yeshota Nandan, who is the lifeguard supervisor.  And if you look at the first page, this is the duties and responsibilities of the lifeguard supervisor produced in this case.  So I believe that this is a -- even though it's a report and it's a report documenting an accident that involved my client, it's not protected because the document says very clearly that -- it says "any accidents," not just "accidents in anticipation of litigation."

So I believe it's a business record and it should be produced.

THE COURT:  Let me hear from Royal.

MR. JARNAGIN:  Yes, your Honor.

First, I haven't read or heard an argument from Mr. Gerson about the applicability of this lifeguard supervisor guideline before.  And this was provided, I guess, an hour before the hearing.

But as it relates to the lifeguard incident report, it is created in anticipation of litigation.  It's created again at the direction of attorneys.  And the substance of the report

itself again would be privileged.

But I'm not comfortable with him making argument tying it to this document that I've just now seen.

THE COURT:  Well, the argument is, it's not prepared because of litigation.  You're preparing the document because that's part of their job to prepare it.

The problem I have with your argument, Mr. Gerson, is the fact that it is also part of a job description doesn't mean it's not prepared in anticipation of litigation.  Right?  So I'm sure if you polled the security officers, it would say: Hey, part of your job is to prepare these reports every time there's an accident.  Right?  The fact that it's in that description doesn't make it not privileged.  I mean, that's how I understand your argument.  Am I correct in my understanding of what it is that you're trying to articulate here?

MR. GERSON:  Yes.

THE COURT:  I am incorrect or I'm correct?

MR. GERSON:  No.  You are correct.

My position is that this -- you know, they have an incident report.  We know that they have an incident report.  And that's protected.

Now they've identified this other document that was prepared by the lifeguard supervisor.  And my position, as I mentioned before, is that in their job description that it says that they have an obligation to report and document any

accidents or injuries around the aquatic areas.  And so the mere fact that my client did pursue litigation, there's no distinction here that says these are only done in anticipation of litigation.  It just -- there's a general reference to it being work product.

THE COURT:  Yes.  So I don't agree with your argument that because it's required as part of the job description, it's not a work product document.  I don't think in and of itself that's sufficient.

That said, I don't think this description is sufficient.  We have the accident report.  It says it's two pages.  And then it just makes the conclusion that it's prepared in anticipation of litigation.

I think in the description of the document, counsel, you have to tell me more about the document:  who it was prepared for, who it was maybe given to.  Is it part of the investigative file or not?

It seems to me that where Mr. Gerson might have a point is, it's not part of the investigative file.  In other words, these lifeguards, if they just have to file these reports and they're kept someplace else and they're not collected as part of the investigative report and they're not part of the investigative report, then you can't now say they're privileged.  Right?  He's hanging his hat on the fact that the lifeguards are required to do this.  I think the fact that

they're required to do this doesn't necessarily mean that they are not in fact privileged. But your description here doesn't close the loop for me.

So either the lifeguards are required to do that as part of -- in anticipation of litigation because they're either collected by the investigative report or they're referred to in the investigative manual, something. Right? You've got to tie them back up to the fact that they're created as if they're created for litigation.

Mr. Gerson's point, like I said, I don't buy the theory. But his point is well taken that at least he's got something suggesting here that, Look, they're not created for litigation. They're just created because lifeguards have to create them. And I think you've got to respond to that argument in the description.

And if Mr. Gerson is right that these lifeguards just create these and they're not part of the investigative file, then you're going to have to produce them.

So what I'm going to do on this one is, I'm going to again grant in part and deny in part. You'll have to amend this answer. And if you can't amend it to include that this lifeguard supervisor report or accident reports are part of an investigative file, then you're going to have to produce it. Okay. So that is the second part of 4.

So now we get to 5. So if we go to 5, that's the

motion to compel a better response to Requests 8 through [indiscernible], 61, 74, 53, 54, 55, 60 and [indiscernible]. Is that correct, Mr. Gerson?  And that's to the request to Plaintiff's first [indiscernible]?

MR. GERSON:  We've actually worked out some of these issues, your Honor.  So I can -- if it would be okay, I can focus the Court in on the ones that have not been worked out.

THE COURT:  What's that?

MR. GERSON:  I believe No. 42.  42 asks the Defendant to provide us --

THE COURT:  Hold on.  Whoa.  Hold on.  I've got a different page in front of me.  42 and what else?

MR. GERSON:  42 -- and let me just look here -- 54 and 62.

THE COURT:  Hold on.  Let's go to 42:  All records and documents which support the affirmative defense.

Let me hear from you, Mr. Gerson, on that.

MR. GERSON:  Sure.  So they've made a number of affirmative defenses, including that my client wasn't paying attention, that she's comparatively negligent.

I've asked them to provide us with all documentation in support of those affirmative defenses.

And the response is that though the [indiscernible] is none, in accordance with the trial order.  Essentially, I'll get it when we're ready to go to trial.  So if they don't have

any documentation to support their affirmative defenses, then that might be a basis to strike their affirmative defenses. But I don't believe that it's permissible under the rules for them to withhold documentations that support -- or documentation to support their defenses in this case until the end of discovery and we're getting ready for trial.

THE COURT: Well, let me suggest to you that a lack of documents is not a basis to strike an affirmative defense.

MR. GERSON: Understood.

THE COURT: So let me hear from Royal Caribbean.

MR. JARNAGIN: Yes, your Honor.

So essentially, we objected to this over three months ago. And I didn't hear anything about this until last Friday.

The position remains the same: We're still early in discovery. The Plaintiff's deposition hasn't been taken. This calls for the identification of documents which would be by an attorney. It's simply too early to even respond to this. This is a complete moving target.

THE COURT: I think facts could definitely change and develop, but I don't know that records and documents do. How are the records and documents going to change?

MR. JARNAGIN: Well, based on Plaintiff's deposition and, you know, what she says about how the incident occurred, different documents could be responsive to that testimony.

THE COURT: Oh, no. I'll grant this.

So documents are documents.  I mean, there's also sort of a finite world of documents that the cruise ship company has right now.  You know, it could be that she identifies a medical record or something that goes to one of these affirmative defenses.  I don't know.  You could always amend.  I think you have an obligation to amend it.  But I think in the first instance, if you have affirmative defenses, you've got to identify the documents.

Look, you may not have any.  Like I just said, that doesn't mean you don't have a good affirmative defense.  Especially, for example, in contributory negligence, you might say:  Well, there's no documents that are going to show that.  Or maybe there are.  I don't know.  But that doesn't mean that I'm going to strike the affirmative defense.  But I think you do have to identify records [indiscernible].

That's 42.  The other one is --

MR. GERSON:  For the sake of time, would it be okay -- I know we're going to have to reset.  But just to move things along, would it be okay if I just asked the Court to address two other matters?  We also have an agreement on 9 and 11 for today, but I can talk about that before we recess.

THE COURT:  Let's do this.  Let's do this for the sake of my recordkeeping.  Let's finish 5.  I can muscle through here a little longer.  But let's go through 5.  And then if you've got an agreement on two of them, I'll hear it.  And

then -- give me one second.  Hold on.  Let me just check something on my calendar.  Give me one minute.

MR. GERSON:  Thank you.

THE COURT:  I'm going to muscle through until 1:30.

MR. GERSON:  Okay.

THE COURT:  I can do that.  I can't really push it after that.  So let's finish 5.  I'll take 9 and 11, as you said.  And then I know the Defendants had three things that I think are short.  And I'll jump to the Defendant's proposed order.  Maybe we can get rid of that, too.

So let's go to 54.

MR. GERSON:  Sure.

THE COURT:  And that's safety hazard information.

MR. GERSON:  Right.  So what we've learned in discovery, your Honor, is that -- and it's a little unclear -- but in 2017, approximately, a company by the name of Bolidt, who -- I don't know if the Court is aware who they are, but they are essentially a floor manufacturer for cruise ships.  And there was some references.  We don't really understand quite the context.

But ultimately, we know Bolidt was on the ship.  There was some sort of project undertaken to make some changes to the floor.  We don't know what those changes were.  But 54 asks the Defendant to identify safety hazard documents which refer or relate to the same floor surface and/or general area for the

five years prior.

It may be that the floors were changed within the three years prior. But ultimately, they've objected under attorney-client privilege. And if they're going to object, they have to put the information on a privilege log. But it's a very simple request as to, you know: Is there information related to safety issues concerning this floor surface and/or area?

The predicate for that is, we did get some emails and some photographs from Bolidt talking about a project. So there had to have been something that precipitated Bolidt coming onto the ship and making these changes. And that's essentially what I'm trying to get to is, you know, what additional information is there about this particular surface? And they've just objected that it calls for attorney-client and work product. But they don't put it on a privilege log. And I don't know what else is out there. And this is pretty central to this case.

THE COURT: Well, you said you have information from the floor manufacturer. Is that -- you got that through discovery in this case? And if so, what does that discovery exactly say?

MR. GERSON: Well, we're still trying to get to the bottom of it. That's going to be another matter, because we actually noticed someone from Bolidt for deposition; and they

objected, so I'm going to have to take that up.

But ultimately, they produced some documentation, some emails talking about a project that apparently was ongoing, that there was some repairs or modifications made.  But we don't know what the context for these repairs were.  We were just given an email and some photographs which have some names of people.

So there has to -- and I went over this with counsel. I said, you know, they wouldn't have just come onto the ship of their own accord and said, Hey, we're going to do this.  There has to have been some workup and buildup about why they were asked to come on and perform this work in the first place.

THE COURT:  All right.  But let's go through the objections for a minute, because you're asking for all memoranda and other documents that refer or relate to safety hazards, corrective actions or any slip-or-fall safety-related issue concerning the same floor surface or general area on the subject vessel where Plaintiff was injured for five years prior to the date of the subject incident.

Was there an agreement on the scope?  Because I have here that one of the objections is the five years.

MR. GERSON:  I had initially told counsel -- or made an agreement with counsel without prejudice as to safety-related testing for three years.  But this isn't safety-related testing; this is something else.  This is other documents and

memoranda related to safety-related issues considering the floor surface and the area for five years.

THE COURT:  All right.  Let me hear from the cruise line.

MR. JARNAGIN:  Yes.  So the first time I heard Mr. Gerson's proposal regarding hearing -- excuse me -- giving documentation about this Bolidt floor surface project was today.

The objection to this is simply that it's super overbroad.  Safety hazards, corrective action or slip-and-fall related issues, that can encompass all types of prior incidents; that can encompass a lot of things in litigation. So that's the reason for the large objection.  I mean, something can be worked out regarding producing documents pertaining to the Bolidt resurfacing project.  And I'm fine to discuss that with Mr. Gerson.  But I just can't wholesale respond to a request that is this overbroad.

THE COURT:  So it is overbroad, Mr. Gerson.  Right?  So any documents for a fall -- a fall/safety-related issue, right, concerning the same floor surface could be -- you're getting the investigative reports anyway.  But it could be very broad. It's not just a specific issue of the Bolidt document.

It sounds like the Bolidt documents are probably responsive.  But that doesn't mean that their objections aren't well taken; it means that the request has to be narrowed.

So are you prepared to narrow that request to the Bolidt documents or to make a separate request for those Bolidt documents?

MR. GERSON:  Well, I've been speaking to not just Mr. Jarnagin -- I believe that's how you pronounce his name -- but also I did speak with Mr. Drahos.  So I've gone back and forth with multiple lawyers.

But I would be willing to narrow it, if that's what the Court would like.  The only issue that I have is limiting it to the same floor surface.  Apparently, the floor surface was replaced.  So if we limit it to the same floor surface, I may just get the floor surface -- that's why it says "floor surface or general area."  So I don't know how the Court would like to narrow it.

I feel like it's limited in the sense that it's related to the floor surface and area on the vessel.  I didn't ask for every issue with Bolidt.  But however the Court is inclined to rule or if you want us to -- I don't know how more to narrow it than -- how to narrow it any more than I have.  It's slip-and-fall safety issues.  It doesn't have to be just falls, but slipperiness or slip-and-fall safety issues regarding repair, replacement, refurbishment of this area for the five years.

We know that within three years the floor was changed, so there had to have been some context prior to then.  And just

saying that it's overly burdensome to produce the information, I don't think that's enough without some indication of why it's overly burdensome.

But the real issue I have is, they're saying it's protected. So if they have protected information, put it on -- how do they know that it's protected if they don't know what the information is?

THE COURT: All right. So this is what I'm going to do: I'm going to grant this and deny it in part. This request will be limited to documents or memoranda that refer to any repair or replacement of the same floor surface or flooring surface in the general area where the Plaintiff was injured. And that should limit it.

If we're talking about repair or replacement, it should be sufficiently limiting for Royal. So if you've got, you know, discussion, for example, of someone who fell in your files two years ago, well, the incident report would have been disclosed. But I don't think that that document now becomes responsive to No. 54.

So it'll be limited to repair or replacement issues. I think repair or replacement issues are specific enough that you can either produce documents or put them on your privilege log. If you're going to say that something is privileged and not put it on the privilege log, I mean, I'll allow that only to the extent that it's, you know, something that to even look for it,

for example, you would say:  Look, it's too burdensome to look for it.  Everything he's asking for is privileged anyway.  What are we supposed to do?  Put, you know, 50 privileged documents on here when by their very nature they're privileged?  You know, something like that I understand.

But to say:  Oh, by the way, it's privileged or may not even exist is another.

So I think the limitation of repair or replacement, that should take care of that.  And so I'll grant it to the extent that the documents at issue are for repair or replacement.  If there are repair or replacement documents that are privileged, then I would expect you to put it on the log.

That's 54.  So here, I only have 62 left.

MR. GERSON:  Your Honor, may I just make one comment?

THE COURT:  Yes.

MR. GERSON:  With respect to repair and replacement, can we add the word "change," "changes"?  Because I've had -- I've been involved in litigation where they said:  Well, we didn't repair or replace it, but, you know, we applied a slip-resistant substance, and that's not a repair or a replacement.  So just could we have the word change, repair, replacement or changes?  And that would encompass everything that they could have done to the floor.

THE COURT:  Royal?

MR. JARNAGIN:  Yes.  We've already -- I'm fine with

that.  We've already given him documents regarding adding a slip-resistant substance.  So that's fine.

THE COURT:  All right.  So we add "changes."  Repair, replace or changes to 54.

Let's go to 62:  Any and all documents referencing and/or discussing the change in flooring [indiscernible].

MR. GERSON:  I'm just looking for the corresponding -- I don't understand what the objection is.  I think it's pretty clear.

THE COURT:  Let me hear from Royal.

MR. JARNAGIN:  Are we looking -- we're at 62?

THE COURT:  62.

MR. JARNAGIN:  Yes.  So this is what we supplemented on July 14th.  And No. 62 refers back to Response No. 37 that has a similar request.  This is what we produced pertaining to the Bolidt floor surface being changed.

And when I spoke to Mr. Gerson, I advised him that this response is complete.

THE COURT:  Hold on.  I'm looking at the supplement now.  So I've got 37.

I see the Bolidt.  The problem is you can't both object and say it's complete.  Right?  So you can object and provide some documents, but then of course obviously the issue is open that more documents could exist.  If it's complete, then it's complete.  So is your answer that 62 is complete?

MR. JARNAGIN:  Yes, your Honor.

THE COURT:  So I'm going to grant the motion, because you've got to -- you've got the [indiscernible], because I look back on this a little bit like a puzzle.  I went back to the amendment.  62 refers to 37.  37 says -- has the Bolidt documents in it, but it has a bunch of other objections to it.  Right?  So you'll have to amend 62 just to say your production is complete.

Okay.  So that takes care of 5.

So which are the two that you said there was some agreement on, Mr. Gerson?

MR. GERSON:  No. 9, which was to compel deposition dates.  And also, the Defendant does not oppose a motion for enlargement of time to essentially complete discovery, continue the trial.  I mean, there's just -- I know it's a slip-and-fall, but there's -- you know, for instance, the Defendant listed I think 37 people in their fact witness list.  And just the way that the case has been going with everything in the world, I haven't been able to conduct an inspection.

THE COURT:  Okay.  Hold on.  So 9 is the deposition date.  Did you already get the deposition date?  So it's denied as moot?

MR. GERSON:  Well, counsel is going to provide me with additional dates.  And we agreed that we would work those out.

THE COURT:  All right.  So 9 is withdrawn.  I'll take

that as withdrawn.  So 9 is withdrawn.

And then 11 is you all want more time.  Submit a proposed order.

MR. GERSON:  Okay.

THE COURT:  Submit a proposed order by next week, so I can -- as I said, I hate moving it once you've all supposedly sat down and figured out what dates you really want.  I'll be reasonable with you.  But, you know, give me something that's also reasonable.  Submit a proposed order on that by the end of next week.

MR. GERSON:  Okay.  And just so the Court is aware, I mean, one of the issues that we have is the vessel has been in Spain.  And being able to get to Spain and getting an expert out to Spain has not been easy for a variety of reasons. People don't want to travel.  It's costly.  So I'm just giving the Court some context as to what some of the issues are, you know, of why this is taking longer than the parties anticipated.

THE COURT:  No.  I get it.  Like I said, I'll be reasonable.  I understand there's a lot going on.  And I know lawyers are also -- trial lawyers especially are getting pulled all over the place because everyone's setting trials.  So I understand.  Just be reasonable.  Don't come back and ask me for another year.  So get me that proposed order.

So that leaves on yours, Mr. Gerson, 6, 7, 8 and 10

that we can talk about next week.

MR. GERSON: Okay.

THE COURT: But I want to get to Royal, because Royal had three that seem to be pretty easy. The first one is the medical leave. What's wrong with that, Mr. Gerson? Why haven't you given that?

MR. GERSON: That was just an oversight in my office. It was provided, I believe, yesterday when I spoke with Cooper.

THE COURT: Are you withdrawing No. 1, then?

MR. JARNAGIN: Yes, your Honor.

THE COURT: Okay. So 1 is withdrawn.

How about 2, the executed HIPAA? Mr. Gerson?

MR. GERSON: I told Mr. Jarnagin that we will have the authorizations hopefully today; if not, I can get them to him no later than Monday or Tuesday of next week. He had agreed to, I think, seven days just to give us the additional time. But we agree that he is entitled to them. And I've asked for them, and apparently they're en route.

THE COURT: Mr. Jarnagin, what I'm going to do, unless you want to do it some other way, I'll withdraw it. But if you don't have it by whenever we rehear the rest of this stuff next week, you'll let me know.

MR. JARNAGIN: Yes. That's fine.

THE COURT: And then how about the protective order?

MR. JARNAGIN: That can be addressed --

MR. GERSON:  [Indiscernible] or injury statements.

THE COURT:  It has to do with the what?

MR. GERSON:  I believe with the request -- my motion No. 66.  I don't know what the -- they objected to the information, but now they've moved for a protective order.  I never spoke to him about what the protective order was about.  But I did have an attempt -- we spent over an hour and a half on the phone today.  I think it just relates to our request for prior incident information that is part of Request 67 -- I apologize -- No. 68, which deals with passenger injury statements of prior incidents, if I'm not mistaken.

THE COURT:  So if you guys want a protective order, just submit one to me.  Is there any objection to entering into one, Mr. Gerson?

MR. GERSON:  Yes.  We don't think it's subject to a protective order.  We believe that the passenger injury statements aren't privileged, number one.  I mean, I don't know how -- if you want to address No. 8, we can, because I believe that that's what correlates to the protective order.

THE COURT:  No. 8.  Hold on.  Let me get to No. 8.  Oh, I see.  No.  We'll deal with it when we deal with it next week.  It's your No. 8.  I've got it.  No. 8, which is about No. 68.  Okay.  We'll deal with that next week.

Let me just -- I'm not going to be able to get into that screen.  Give me a second.  Let me just tell you what my

week looks like next week, so maybe we can just reset it right now.

MR. GERSON: Sure.

THE COURT: Monday's already awful. Any chance you all can do Tuesday at 3:00?

MR. GERSON: Let me make sure I don't have my doctor's appointment, which has been --

MR. JARNAGIN: Yes, your Honor. I have three depositions on Tuesday, so I'm unavailable.

THE COURT: Okay. Then Wednesday. I can do Wednesday at 1:00.

MR. GERSON: Wednesday at 1:00. I also have a medical appointment at 10:00. Could we make it 2:00?

THE COURT: I have something at 2:00, but it's short. So we could do -- we could probably do -- actually, we could do 2:30.

MR. GERSON: That works for me.

THE COURT: Does 2:30 work for you, Mr. Jarnagin?

MR. JARNAGIN: Yes, it does.

THE COURT: All right. So, Mr. Gerson, can you reset that, have your office reset it for 2:30?

MR. GERSON: Yes, your Honor.

THE COURT: Okay. So we will hear -- I have so many different things I printed for this. So we will hear what's on the amended notice at 25. We'll hear No. 6, 7, 8 and 10. And

then their 8 covers your last issue, counsel. So that should take care of that.

If you can give me the statement that I need for in-camera inspection maybe by close of business Monday, it would be great if you could have reviewed it and made a decision and I can just announce it to you all then.

MR. JARNAGIN: Yes, your Honor.

And just so I know, is any order regarding everything we discussed -- is that coming out after the continuation of the hearing --

THE COURT: Yes.

MR. JARNAGIN: -- just in case I need to frantically send out emails today?

THE COURT: You don't have to frantically send out any emails just yet. I mean, we typically do these by paperless order.

MR. JARNAGIN: Okay.

THE COURT: So, I mean, if you think it's beneficial in order to get your client to respond to things for me to give you a paperless order today, I can do that. My preference is just to wait until Wednesday and have Wednesday's paperless order. But I'll get it Wednesday.

MR. JARNAGIN: Yes. I'm fine with waiting until Wednesday. Thank you.

THE COURT: We're pretty [indiscernible], so you'll get

that order on Wednesday.

All right.  Anything else I can do today?

MR. GERSON:  No, your Honor.  Thank you for your time.

THE COURT:  I appreciate it.  I have 12 more minutes I thought I didn't have.  All right.  Thanks.  Bye.

(Whereupon, the proceedings were adjourned until September 22, 2021, and continued as follows:)

THE COURTROOM DEPUTY:  Calling Case No. 20-25271-Civil-Becerra, Jennifer Pell versus Royal Caribbean Cruises, Ltd.

Counsel, please state your appearance for the record, starting with the Plaintiff.

MR. GERSON:  Good afternoon, your Honor.  Nicholas Gerson on behalf of the Plaintiff, Jennifer Pell.

MR. JARNAGIN:  Good afternoon, your Honor.  Cooper Jarnagin on behalf of Royal Caribbean Cruises, Limited, Defendant.

THE COURT:  All right.  Good afternoon.

This is our continued discovery hearing.  I have a renotice of the hearing which I was pleased to see, incorrectly assuming that you'd resolved some of these issues, but it doesn't look like you did.  You still have the same four issues that I thought were outstanding last time, which is fine.

I'm still operating, then, under the old notice, which is at Docket Entry No. 25.  So we had 6, 7, 8 and 10 left,

which I think are, if I'm not mistaken, because I don't think the subparts changed at all, the same as what's on 1, 2, 3 and 4 of the renotice on Docket Entry No. 29.

Is that correct, Mr. Gerson?

MR. GERSON:  Yes, your Honor.  I did delete the Topic 11, since the Court had told us to submit a proposed order.  So that's why I wanted to try to make it easier.  But you are correct that 6, 7, 8 and 10 are still at issue.

THE COURT:  Yes.  I have in my notes that 11, I'm waiting for the proposed order, which is supposed to be here by the end of the week.

And then one additional thing:  I did inspect in camera that which was provided to me, which is the email correspondence.  I'm going to butcher this name, obviously, so I'll say the chief officer of security.  Let me just put it that way.  So that was provided to me for an in-camera inspection.

I have looked at that document.  It was provided to me by email as I requested.  I've looked at it.  Look, the document has information within it which are just facts.  Some of it are just facts; some of it are not, obviously.  I think that the work-product privilege that's been asserted over some of the document is appropriate, but there are portions of this document which are just facts.  So I think a redacted version of this document, counsel, needs to be provided to Mr. Gerson.

Again, I'm not going to sit here and redact the document for you.  But clearly, there are things on this document which are just facts.  And I think that can be redacted.

How many days do you need to do that, counsel?

MR. JARNAGIN:  I would think until the end of the week, your Honor.

THE COURT:  All right.  So I'll give you until close of business Friday to redact that.

MR. GERSON:  And --

THE COURT:  Yes?

MR. GERSON:  Sorry.  May I -- I don't want to interrupt your Honor.

THE COURT:  No.  I'm good.

MR. GERSON:  I just want to ask you, was the lifeguard accident report also provided?

THE COURT:  So I thought that the issue was different. I thought I ruled on that.  I thought the issue was that you needed to track down there whether or not that was also something that you could represent was also required as part of the investigative file.

I mean, my notes show that on that, I asked you to amend your answer.  Right?

MR. JARNAGIN:  Yes.

THE COURT:  I didn't think that that was supposed to be

provided to me. Look, I'll tell you what was provided to me. I only got that one thing.

MR. GERSON: If I could just clarify one thing: The motion was for the email correspondence, to overrule their objection to the email correspondence memorializing the incident and also the lifeguard accident report.

And as the Court may recall, I had pointed out in the job description for the lifeguard that it made reference to the fact that they have to prepare or report any incidents. And the Court wasn't convinced that it was work product or it wasn't. So what my understanding was that they were to provide the email correspondence and the lifeguard accident report. And the significance of the lifeguard accident report is the lifeguard, apparently, is one of the first people that were on the scene and made --

THE COURT: I know. I heard this argument. This is what my notes show: My notes show that he was going to get an in-camera inspection of the email, which I've done, and I've ruled on that.

The lifeguard incident report, I understand what the argument was. The issue here was whether or not that lifeguard incident report was, in fact, prepared in anticipation of litigation, whether or not counsel could make that representation at that point it was collected or whether or not it was created simply because that's what is done. Right? Not

that it's necessarily created at the direction of counsel.

And so I thought I had granted that and denied it in part, asking Royal Caribbean to more specifically set out what the description of the document was and to confirm, right, that it is actually directed [indiscernible], because the fact that it's part of the job description I think does not in and of itself defeat the issue of "in anticipation of litigation."  So I didn't ask for that one to be in camera.

Counsel, do you think someone sent that to me?  Because I've printed one thing out of that email, and that's all I got.

MR. JARNAGIN:  Yes, your Honor.  Your recollection is correct.  You only asked for the in-camera inspection for the email.  Had you asked for the lifeguard incident report, we would have provided that also.

My recollection is that you just asked that we amend the privilege log after looking into Mr. Gerson's assertions.

THE COURT:  Right.  And my expectation is that you'll do that, and that maybe it's not in fact in anticipation of litigation, that that's something that, given Mr. Gerson's argument, I thought merited additional consideration by Royal Caribbean.  And that's why I asked you to amend the answer accordingly.

All right.  So that's where we are on that.

Mr. Gerson, anything further?  I don't want to hear the argument again on the lifeguard report.  I get it.  But I

didn't ask for that in camera.  Is there anything else on that?

MR. GERSON:  And I don't mean to burden the Court, but could there just be some clarification to counsel with respect to what specifically the Court wants unredacted as opposed to redacted?

THE COURT:  No.  These directions are pretty clear. This is not a lengthy document.  There are things here that are just facts and that -- I don't see why that would be withheld. And I think it's an easy redaction.  There are a few things here that they could consider could be work product, but some things here clearly to me are not.  So again, I think that that's sufficient.  I've seen the document.  I don't really think that it merits any further discussion or any further litigation, given what's in it.

All right.  So let's go to 66.  So my notes show that on 66, Mr. Gerson, is the only thing at Issue 1 and 2?

MR. GERSON:  For 66, yes.  But -- yes.  For 66, 1 and 2.  There is an ancillary issue, but I'd like to address 66, 1 and 2, if I may.

THE COURT:  Yes, please.

MR. GERSON:  Okay.  So, your Honor, as the Court knows, safety meeting minutes are routine documents that are required either by the IMO or Solis -- I forget which regulatory body -- that requires it.  But ultimately, these are documents that are prepared in the ordinary course and scope of every cruise

line's business.  They're required to do them.  And Request 66 asks the Defendant to produce the safety meeting minutes that refer to the subject incident.  And the safety meeting minutes for the safety meetings for this particular incident were never provided.

If the Court would be inclined to take a look -- and I can give you an example of -- if you first take a look -- and I was trying to do my best not to burden the Court with voluminous documents, but I'm not sure I accomplished that.  But at any rate, if you take a look at Exhibit 10 of our reliance materials, this is a partial safety meeting minute for November 30th, 2019.  And if you were to -- if the Court were to take a look at Bates stamp 1153, it talks about the steering committee agenda.  I don't know if you have that pulled up or not.

THE COURT:  I'm looking at it.  Hold on.  So what I have is -- I don't see where the Bates number is.  I don't know why that didn't print on my end.  But what I have is a document that says Shipboard Safety Steering Committee.  No.  That's the steering committee meetings.  You want me to look at the safety committee meetings.  Right?

MR. GERSON:  Well, that's kind of what the point is, is that, number one, if you look at -- ultimately, we didn't get the safety meeting minutes that deal with this particular incident.  If you are to -- and if you look at these shipboard

safety steering committee minutes, on Page 3, you'll see a steering committee agenda.  This outlines all of the topics that are discussed.

THE COURT:  I don't have that.  Hold on.  I don't have that.  Whatever I printed has that page completely blacked out.

MR. GERSON:  Okay.  That is -- it's Exhibit 10, I believe.  And I'll pull it up again.  Yes.  Exhibit 10 of our reliance materials.

THE COURT:  Hold on.  If you're labeling like a .pdf and exhibit number, it doesn't print that way, so I don't know what you're talking about when you say 10.

MR. GERSON:  Oh.

THE COURT:  So I just have to kind of leaf through it until I find it, you know.

MR. GERSON:  It might be identified as 255_001 .pdf.

THE COURT:  No.  I print things.

MR. GERSON:  Oh, sorry.

THE COURT:  I print things.  So I'm looking at -- so I'm going through everything I printed on this case.  I've got something that says printed 4-25-18, retention period for years three of eight.  It says total guest injuries on the top: 2018, nine in March.  Is that what you want me to look at?

MR. GERSON:  No.  It's a document dated November 30, 2019, *Enchantment of the Seas*, shipboard safety steering committee meeting.  January 2020 December data.  And it's got a

picture of the *Enchantment* and it's got a Bates-stamped document.  But you said you don't have the Bates stamps.

THE COURT:  Hold on, Mr. Gerson.  Who is the person in your office that sends the emails?  Let me just go to the email, then, because this isn't helpful.

MR. GERSON:  Sure.  It was sent today at -- well, I'm looking at the old one.  But Carla Benedi, to answer your question.

THE COURT:  Just FYI, sending me something an hour before hearings, don't send it, unless it's a cancellation.  Right?  Because I have other hearings before you.  So I'm not sitting in front of my computer looking at emails when I'm in a hearing.

MR. GERSON:  I understand.  It was the same thing that was sent previously.  I was just trying to make it easier for the Court's reference.  There's nothing new in here.

THE COURT:  Okay.  So what is the original one?  The original one was sent --

MR. GERSON:  6:17 on 9-15.  6:17 p.m. from Carla Benedi, Wednesday, September 15th, at 6:17 p.m.

THE COURT:  Which exhibit number is it?

MR. GERSON:  It's listed as .pdf 10.

THE COURT:  It's a 23-page document?

MR. GERSON:  Yes, ma'am.  Yes, your Honor.

THE COURT:  All right.

MR. GERSON:  And if you'll keep that email handy, because I'm going to reference another document in that email as well.  But I just wanted to start with this.

THE COURT:  Give me a minute.  I have to print it because it doesn't rotate on my screen.

MR. GERSON:  I apologize.

THE COURT:  It's not in landscape, so I've got to print it.

MR. GERSON:  Then if -- I don't want to take up too much of your time.  But Exhibit 10 and 14 are the documents that I need to direct the Court to with respect to this request.

THE COURT:  Okay.  Let me go ahead and print it.

14 I had.  I had this other one, but I didn't have it identified as the meeting that started with that picture of the boat.

MR. GERSON:  I can resend it to your Honor, if you'd like.

THE COURT:  I have it.  I just have to wait for the government computer to print things.

MR. GERSON:  Understood.

THE COURT:  So I have the shipboard safety steering committee and I have the agenda, which is Bates stamped 1153.  Right?

MR. GERSON:  Correct.

THE COURT: Okay.

MR. GERSON: So if you take a look at -- so ultimately, your Honor, we asked for the safety meeting committee notes, ship and senior management. They're two different sets of meeting minutes. And at all the safety meeting minutes, prior incidents are discussed.

If you look at Page 3, you will see there's reference to Riskonnect review, observation and coach and team report, accident investigation team report. Then if you scroll down a little further, you will see that this document provides some of the Riskonnect injury information. But we were never given the safety meeting minutes with respect to my client's incident.

So the safety meeting minutes that would be responsive to my client's -- it's usually the prior month, so it would likely be the February meeting minutes. And ultimately, those were not produced.

Exhibit 14, Page 617, is another set of safety meeting minutes from a sister class ship. And if you look at Page 17, you will see very clearly there at various pages within this document that incidents are referenced and discussed within the safety meeting minutes.

So my point of showing the Court Exhibit 14 and Exhibit 9 is, number one, the incidents are discussed at the meeting minutes. There are actually these entries that go into, you

know, quite specific details about what happened, the location, what could have been done, what it's classified in.  And the objection that was made was that this is an improper fishing expedition, that it's overbroad in time and scope and that it would result in unnecessarily wasteful discovery that does not satisfy the proportionality requirements.

So ultimately --

THE COURT:  Right.  But that's also because the request asks for a lot more than that.  So I hear you on the subject incident.

Tell me, please, about the prior incidents identified in discovery.  What is it you're going to there?

MR. GERSON:  Well, as the Court is aware, you know, notice is an issue in any slip-and-fall case under federal maritime law.  And we were not provided any of the prior safety meeting minutes that deal with the prior incidents.  So --

THE COURT:  I know.  But which prior incidents?  I'm trying to get from you --

MR. GERSON:  Well, that's part of the issue.  My understanding is they didn't provide any.

THE COURT:  No, no, no, sir.  Slow down.

They have given you a list of prior incidents.  We talked about this at the last hearing.  Right?

MR. GERSON:  Correct.

THE COURT:  I need to know what universe are the

incidents. Is it that list or is it some other list?

MR. GERSON: It's based on the list that they disclosed in that spreadsheet, which would have been Plaintiff's Reliance Material No. 9.

THE COURT: Okay. But that list had about 100 incidents, I think. Right?

MR. GERSON: I didn't have the total number, but I know that there were 51 prior incidents in that spreadsheet. But they all contain different information.

And what's also interesting, I don't know if this came from a prior case, but even with respect to Ms. Pell's incident, which is the last entry, it says: Was a claim filed or a lawsuit filed? And the last entry, it says: No/no.

So I know there's been other litigation. I don't know whether or not this was pulled from a prior case. But what I'm asking for, to be clear, is I'm looking for the safety meeting minutes that correspond to this list. The objection that has been made is that it's an improper fishing expedition and that it's overbroad in time and scope.

The limitation for prior incidents, we agreed to three years. And so there's no other objection other than the remark that this is not proportional. And I believe that it is, because the incidents are going to be discussed at the safety meeting minutes. It would be relevant to the ship's knowledge about what was discussed in the safety meeting minutes that I

was referring to.  In the initial document that I showed you, there was references to these other incidents.  But ultimately, you know, I'm trying to get as much information as I can about these prior incidents because ultimately the Defendant is going to come in and argue none of them are similar and that they weren't on notice.

So I --

THE COURT:  Let me hear from Royal Caribbean on the two categories separately, the subject accident and the prior.

MR. JARNAGIN:  Yes, your Honor.

For the subject incident, the minutes related to Ms. Pell's incident, if they do exist, were not provided because Mr. Gerson agreed for us to provide three years of safety meeting minutes with regard to specific references.  So within Mr. Gerson's own agreement, he didn't address Ms. Pell's own incident as being something that he wanted in response to Request For Production No. 66.

Sitting here today, I don't know if there is meeting minutes that actually discuss Ms. Pell.  But that's the reason that those are not provided to Mr. Gerson.

THE COURT:  I didn't understand your answer, sir.  I apologize.  So there was some agreement to produce some of these minutes already?  I don't --

MR. JARNAGIN:  Yes.  There was an agreement to produce three years' worth of safety meeting minutes prior to

Ms. Pell's incident.  Mr. Gerson did not include within the agreement that he wanted the meeting minutes that would have occurred after the incident, which, if they do exist, could include Ms. Pell's incident.

THE COURT:  It wouldn't be after.  The incident itself, I agree, is a particular time period; and there's everything before and everything after.  I think to conclude that he would be interested in everything before, but not his own client's injury, is a bit of a stretch.

But here what he's asking for is the subject incident and all prior incidents identified in discovery.  So what objection, if any, do you have to producing the safety committee meeting minutes with respect to Ms. Pell's accident as well as the prior incidents as identified in the previous discovery?

MR. JARNAGIN:  Yes.  I can review the meeting minutes after Ms. Pell's incident to see if Ms. Pell's incident is mentioned in those meeting minutes.  And we don't have a problem with producing those.

THE COURT:  And what about for the prior incidents?

MR. JARNAGIN:  Mr. Gerson has brought up a document; it's safety meeting minutes from a different ship in a different class of vessels.  My understanding is that all of the ships in the way they format and the way that they construct their meeting minute documents are all different.

So in this particular case, we produced all the meeting minutes.  Our office is aware through Royal Caribbean that typically they produce these meeting minutes redacted with only the relevant information to the case.  And here, we produced everything.  We produced everything in Royal Caribbean's possession for the *Enchantment of the Seas* in the three years prior to Ms. Pell's incident.

So the --

THE COURT:  I know.  Sir, sir, sir.  Let's stick to the -- the issue is a little more narrow.

So you've produced a list that has 51 prior incidents.  He wants the safety committee meeting notes that deal with those 51 prior incidents.  Is it your representation that in what you've produced that would already be encompassed?  Or is there some other category that you would need to search to find the safety committee meeting notes for those 51 incidents?

MR. JARNAGIN:  Yes, your Honor.  We produced a spreadsheet of 174 prior incidents.  And we've produced the meeting minutes for the three years prior.  So if there was reference to any of those 174 prior incidents, it would already be in the production that we've provided.  So I'm saying the production for the meeting minutes is complete.

THE COURT:  All right.  Mr. Gerson?

MR. GERSON:  First, your Honor, Mr. Jarnagin was not present for the prior conference I had with Mr. Drahos.  So I

think there was a misunderstanding. I did not -- there was no agreement with respect to the prior incidents. So that's the first thing.

Of course I'm interested in the safety meeting minutes for the subject incident and all the prior incidents identified. In discovery of the 174, there were 51 with respect to this particular vessel.

If you go and you look at the spreadsheet that they actually produced, there is an incident description. And that incident description had to have come from somewhere. And I've found that sometimes it's in part from the safety meeting minutes. The --

THE COURT: Hold on. You guys are really not listening to each other.

So the argument I just heard counsel make for the defense is that they've given you all the safety committee meeting minutes for three years prior. And so of the 174 prior incidents that are also within a three-year period, you have those notes. You should be able to marry up the list with the notes, because they gave you the notes for the last three years.

Now, in giving you the notes for the last three years, if somebody didn't think that this incident was something relevant to look for, it's neither here nor there. I'm going to order them to give you the committee meeting notes with

respect to Ms. Pell, and they've agreed to do that.  So that's number one.

So number two, they're saying that you've got it, because they've given you the safety committee meeting notes for the past three years.

MR. GERSON:  They have not given me all the safety meeting committee notes for the past three years.  I pointed it out to Mr. Jarnagin in our 7.1, that, for instance -- and I didn't want to belabor the Court with a bunch of documents.  But for instance, they gave me -- there's duplicate sets.  There are no references to prior incidents.  And Mr. Jarnagin even just represented to the Court that he was under the impression that that wasn't at issue and they weren't required to produce it.

So I'm representing to the Court that all of the prior incidents and safety meeting minutes were not provided.  Some of the safety meeting minutes were provided.  But the way that they also provided the safety meeting minutes, they just -- you know, in the safety meetings minutes, there's one, two, three --

THE COURT:  Let me hear from Mr. Jarnagin to answer one question:  Do you have any objection to producing the safety committee meeting notes for all prior incidents identified in discovery?  It seems like you don't have an objection because you're telling me he also has it.

MR. JARNAGIN:  That's correct.  I do not have an objection.

THE COURT:  Okay.  So this is what's going to happen: I'm going to grant the motion to compel both the subject incident and all prior incidents identified in discovery.  So, Mr. Gerson, you're entitled to that information.  There's no objection to that.  And I'm going to grant your motion to compel those documents.

So if you're missing any of those documents, now, Mr. Jarnagin, somebody in your office is going to have to go back and make sure that you have in fact produced all of those, because if you haven't produced them, Mr. Gerson's going to come back here with another motion saying you failed to comply with a court order.

So I want somebody over at Royal Caribbean or at your office to make sure that all the safety committee meeting notes for the prior incidents have been turned over.  There's no objection to it that was lodged.  All right?  So I've granted the request as to 66.

MR. JARNAGIN:  Okay.

THE COURT:  Let's go to 67.  67 is E and F. Mr. Gerson, let me hear you on 67.

MR. GERSON:  Yes, your Honor.

67, we asked for the safety officer logs, notes and reports.  And we did not receive any of those.

Defendant's response -- and this is with respect to the subject incident. And then number F deals with the computer system entry ARTS and Riskonnect. And if you recall earlier in the initial exhibit that I referenced, the Riskonnect review is an item that is discussed in their safety records that were produced.

So I'm asking the Court for them to provide us with the safety officer log, notes and reports. They document -- it's my understanding they document what they do on their ship with respect to this incident and also the ARTS and Riskonnect entries, since they are discussed at the safety meeting minutes. So I don't know what the -- you know, the objection that they make in their response is: See response to 4, 5, 9, 12, 18, 21 and 21 to 37. And I've gone through them, and none of them address the issue.

THE COURT: All right. Let me hear from the cruise lines, from Royal, as to E and F.

MR. JARNAGIN: Yes. For E, I've spoken with Royal Caribbean regarding this request for security officer logs, notes and reports.

The production for this is complete. We have listed the incident report; we have listed on the privilege log the email from the security officer; and otherwise, there is no other documents responsive to this request.

THE COURT: What about F?

MR. JARNAGIN:  Yes.  For F, this request is asking for a CRS computer system printout.  Royal Caribbean does not have a CRS computer system.  So the first time I'm hearing language about ARTS and Riskonnect was on the notice of discovery hearing.

THE COURT:  So what say you as to ARTS and Riskonnect?

MR. JARNAGIN:  I don't have any knowledge of the ARTS system that he's referring to.

The Riskonnect system works with Royal Caribbean as a claims file and an accident investigation log.  So with this new request specifically for Riskonnect, I think he needs to make that in a new request for production.  I have to speak with Royal Caribbean about work product concerns, because it is a claims file system.

THE COURT:  All right.  I'm going to grant the motion to compel as to E and F, including the ARTS and Riskonnect entries.  This is what I'm going to ask Royal Caribbean to do, which is to amend your response.  So if you've given him E, your response should have been [indiscernible] as to E.  At least the response should be Bates No. XYZ.  Right?  You should identify what it is.  You should list it in your privilege log and identify it.

The same thing with F:  If he has it, he has it.  And that's what the amendment should specifically say.  You're only going to amend it to E and F, because that's the only thing

that's at issue.  And so you're going to amend as to E.  If you've produced it, tell him where it is.  If it doesn't exist, you have to say it doesn't exist.  And the same thing with F: If it's privileged, put it on the privilege log.

So that's what I'll rule on E and F.  So the motion to compel is granted as to E and F.  Specifically, the Defendant is to amend its answer.  And we'll talk about deadlines for these things in a minute.  But I think you should -- I think the appropriate thing to do there is to amend your answer. Identify it or say you don't have it.  And if you identify it as non-privileged, you're going to have to [indiscernible].

MR. GERSON:  Your Honor, may I just add one thing?

THE COURT:  Yes, sir.

MR. GERSON:  Okay.  If you look again in Exhibit 10, which was the first document that I was referring to, the safety meeting minutes, Page 4 is entitled Riskonnect Injury Review.  This is why I attached this as part of my reliance materials, because clearly they're discussed at the safety meeting minutes.  You can't discuss this Riskonnect information without the Riskonnect information.  And it's specifically identified on Page 4, Page 5, Page 6, Page 7.  It's all --

THE COURT:  Mr. Gerson, I've ruled in your favor and I've told them they have to add and include ARTS/Riskonnect.

MR. GERSON:  Okay.  Maybe I misunderstood the Court. But okay.

THE COURT: I mean, I thought I ruled in your favor. So they're going to have to give you E and F. That should exclude ARTS and Riskonnect entries. And what I've asked them to do is amend their response. They're saying some of these things might be privileged. That may be the case, and they're going to have to put it in a privilege log. But their objection that as to E and F is cumulative is overruled.

They're going to have to amend their responses as to E and F. They're going to have three choices: Either produce it. If they've already produced it, they're going to have to tell you where it is. Because you really shouldn't be talking past each other. "Do you have it?" "No, I don't." Well, "You have it" isn't good enough. You've got to tell them where they've got it. That's why we Bates stamp.

So you're going to have to tell them that you've got it, where it is. If it doesn't exist, you have to say it doesn't exist. And maybe it doesn't exist for the subject incident. So somebody's going to have to find out whether it exists or not. And if it exists but it's privileged, put it on a log. You have three choices as to E and F.

But the response on 67 is insufficient, and that's why I've granted the motion to compel. And again, specifically as to F, it includes ARTS and Riskonnect entries.

And again, that's not to say that I'm ruling now that it's not privileged. Maybe there's a privileged document. I

don't see it in a privilege log, if that's what it is. [Indiscernible] a response as to E, for example; if it's on a privilege log, then you should say so. This "cumulative" and asking him to look at ten other responses is not a sufficient response.

All right. Let's look at 68, which is Item A. So there, it's Subpart A, E and J. That's the passenger injury statements, the CCTV and other video -- we talked a little bit about it the other day -- and the photographs of the area.

Let me hear from you, Mr. Gerson.

MR. GERSON: The objection that is made is that this is cumulative, which I'm not sure I understand with respect to this request. The documents -- the passenger injury statements are not work product or privileged. And that has been ruled on in this district court in several cases: *Byron versus Royal Caribbean*, *Eirren versus Royal Caribbean Cruises*, which is April 21st, 2021. The citation is a Lexis citation, 76526, and also 2021 Westlaw 1564361, which also references the *Hallborne* case and the *Johnson* case, which is actually a case that I briefed.

And ultimately, courts in this district have uniformly or consistently ruled that passenger injury statements are not work product. The production of them only helps in shortening the deposition of the defendant corporate representative, because I don't need to necessarily go into all the details.

But ultimately, the objection that it's work product should be overruled.  The objection that it's overbroad in time and scope should be overruled.  The objection that it's unnecessary, wasteful discovery and is a fishing expedition and not relevant to issues in this case is -- should also be overruled.

And so I think the law and my position is, they should produce the passenger injury statements.  There's no privilege to them.  They correspond to what has been identified in that spreadsheet and they contain a lot of information beyond what's in that spreadsheet.  It's written in the perspective of the passenger and, you know, this is information that is very important to the element of notice in this case.

THE COURT:  So that sounds like a passenger injury statement [indiscernible] passenger accident/illness.  Are you looking for all the video for all of these incidents, though, and all information having to do with all incidents or just your incident?

MR. GERSON:  Well, there hasn't been an objection that producing any of the information is burdensome.  They object on the grounds that it's overbroad in time and scope.  Certainly photographs, I think, for the subject ship should be produced because there's no way for me to know whether or not where my client's incident occurred is similar or in the same location to all these other incidents.  So I would argue at least the

photographs are relevant.

And then with respect to the video, my issue with the video is, the video that was produced in this case, not only will it help show whether or not there were some similarities, but the video that was produced in this case skips.  And the argument that Royal Caribbean has made or what I've been informed by counsel is that there is -- there was something with the actual camera that makes it stop and just coincidentally stopped recording.

So I think it's relevant for a couple issues:  It's relevant, number one, even though relevance hasn't been addressed, but I think there's a need for at least a portion of the videos to see whether or not -- where exactly the incident occurred and whether or not similar issues that are being raised as to the reason why the video doesn't show my client's incident is consistent with the other videos.

But ultimately, I don't see an objection in here that says anything other than it's overbroad in time and scope, because I've limited it to three years.  Telling me that -- or the response that it's irrelevant, I believe that it is relevant and material, since it would shed light on whether or not at least incidents on the subject vessel are -- whether they happened in the same area or location.  And they're not privileged.

THE COURT:  Let me hear from counsel.

MR. JARNAGIN:  Yes, your Honor.

This was the issue that we put on the last notice of hearing for a protective order.  We did produce 174 prior incidents on a class of ships for a three-year period.  There's 174 results.

It would be unduly burdensome for Royal Caribbean to have to collect all of the information and all of the documents and materials that Mr. Gerson's requesting.  To even download and sort through this amount of media would take several people and a huge amount of time.  The CCTV footage alone, sometimes this footage can vary from up to an hour.  Just to download the size of this media and to go through -- to have to put it in a viewable format and -- I mean, I can't even imagine how long that would take.  Mr. Gerson has the spreadsheet of 174 people that he can contact and see -- he can sit with his client, see if the incident lines up with his own client; and he can do it that way rather than us going through this process of 174 prior incidents and producing evidence that may not be relevant whatsoever.

THE COURT:  Well, what about the passenger injury statements?  I mean, I hear you on the CCTV video and the photographs.  That might require a different kind of review and, quite frankly, I think maybe on that such a blanket request is overbroad and completely not proportional to the needs of case.  But what about the passenger injury statements?

MR. JARNAGIN:  For the passenger injury statements, I spoke to Mr. Gerson and I offered for him to go through the prior incidents and select prior incidents that he wants passenger injury statements for.  I recognize that there were --

THE COURT:  Well, let me short-circuit that.  He wants them for 174.

MR. JARNAGIN:  Yeah.  That's the issue.

THE COURT:  So given that he wants them for all 174, what's the issue with providing those?  I mean, I would think that those are a much easier collection process than the video or the pictures, which might require you to go into hard files of reports and things like that.

MR. JARNAGIN:  Right.  It would still take a large amount of time to download those files.  And we're still at the stage of discovery where Plaintiff's deposition hasn't been taken yet.  This prior incident spreadsheet contains trips, slips and falls on several different vessels.  And I think if the Court is inclined to order all 174, I think we should at least wait to see what the Plaintiff has to say and if we can narrow the list down or give Mr. Gerson more insight to help select the passenger injury statements that are going to be helpful to his case.

THE COURT:  Well, I don't see why the deposition of the Plaintiff is going to help.  He knows what his client is going

to say.  So that's not really helpful to him in narrowing it down.

I guess I don't have a good sense from you.  What does it take to get a passenger injury statement?  What would it take for Royal to find those?  What kind of process does that entail?

MR. JARNAGIN:  Yes.  My understanding is that they would have to manually search for each prior incident and download a file that would contain it; and then from our side, we would have to go through and catalog every single passenger injury statement and make sure it corresponds with what's on the spreadsheet.

MR. GERSON:  And --

THE COURT:  Well, whatever your law firm has to do to produce it is neither here nor there right now, I guess.

So what does Royal have to do?  Somebody has to go on a computer and say, Let me look for this injury report.  They input something and it comes up?  I mean, I need to know what the process is here, because you're basically saying it's so burdensome, even though that's quite not the objection that was made before.

But I take it you're saying, you know, your objection was it's overbroad; it's not proportional.  I can understand without having to hear from you as to why maybe getting video, because some of that video may or may not have been captured in

the first instance for some of those incidents.  But a passenger injury statement, right?  I would think that's collected for all of these or many of them at the time.  That's part of some file somewhere, because something generated that list of the 174.  So is it that system?  Can somebody just query that system?  I know they have to do it one by one.  But if it takes, you know, two minutes to do each or to query it and print, that takes a few hours.

MR. JARNAGIN:  Right.  My understanding is that the investigation files, they're each a separate file.  And every file for the incidents on the spreadsheet would need to be downloaded and the passengers' injury statements pulled from those files.

THE COURT:  Right.  But I don't have an idea of what that takes.  So if that takes somebody, you know, five minutes, is that somebody's day of work or is Royal Caribbean going to spend a month trying to find the 174 passenger injury statements?

MR. JARNAGIN:  A safe estimate to the Court, I think it would take a few days.

THE COURT:  So I'm going to grant the motion to compel as to the passenger injury statements.  Not as to the CCTV or the photographs.  So your motion to compel a better answer to A is granted, but it's denied as to the video and the CCTV footage and it's denied as to the photographs.  I'm granting it

as to the passenger injury statements on the representation that it'll just take a few days to compile that.

If you come back to me later and say, Listen, we've looked at it now and now that we have to do it, we calculate it's going to take somebody two weeks to get this information or a month to get this information, then come back to me and I may reconsider my order.

But if it's going to take somebody a day or two to sit down and print these, then it doesn't seem to me that you've offered any reasonable limitation on the 174. I don't think it's on the Plaintiff necessarily to limit it. And so again, without any information as to really what it might take and whether that's truly something that would be unnecessary or wasteful, then I'm not inclined to limit it any further, again, especially given the nature of the objection, which, again, does not -- I mean, it's really a stretch to say that "burdensome" is the objection. It's cumulative, which is completely the opposite of burdensome, I suspect. You've already responded to 54.

I think the "improper fishing expedition" and "overbroad" is sufficient language for you to travel on if it's going to be that kind of burden. But not a couple of days, which is what your representation here has been. So I'll grant it as to A. Denied as to E. Denied as to F -- I'm sorry -- as to J.

Mr. Gerson, anything else on that one?

MR. GERSON: With respect to -- obviously, I respect the Court's ruling. Would the Court entertain maybe ten incidents and have them produce the photographs for a portion of them? I've --

THE COURT: No. This is what I'll do. I mean, look, you're going to have the passenger injury statements. You have the list.

If it turns out during discovery or during your review of it that a couple of these incidents are so like yours or could lead to relevant evidence, then I'll hear you on that. But to have them just like pull ten random ones, when I know that -- I shouldn't say "know" -- my understanding in how these things are done suggests that pulling any of them is difficult. If you can identify some and make an argument to me later as to why this or that incident is particularly relevant, I'll hear you then. But I'm not going to have them pull ten.

MR. GERSON: Okay. I just want to point out, your Honor, that I've had in-house counsel from Royal Caribbean in my office a number of times. Everything is electronically stored. And it's literally a matter of them going into their database, finding the incident, and everything is kept in an electronic file.

There's been no affidavit filed as to any burdensome argument. I understand the Court's ruling. But I just want to

make a record that everything from what I understand is within an electronic system. Even their own policies and procedures talk about the fact that when they prepare an incident report, the photographs and everything, it is uploaded to their system. It's all electronically stored. And like I said before, I've had in-house counsel from Royal Caribbean in my office pulling up the files with relatively no issue.

THE COURT: Which is why you're getting the incident reports. Right?

I think downloading videos is more difficult. That's more time-consuming. That takes more time for sure, as well as, you know, printing photographs and downloading photographs. That just takes more time because of the way photograph and video are uploaded. And I don't see what additional relevant information, useable information, or information that could lead to relevant evidence would have by giving you the video and the photographs.

Again, if you're going to get the incident report, if there's something about that incident report that makes you think, Look, here 10 or 15 or whatever number you come up with that you can make an argument that these are particularly relevant to me or these will lead to -- or could lead to relevant information, I'll hear you then. But I don't think a blanket on all 174 for video and photographs is necessary at this time.

So let me hear you, then, on the ten depositions.

MR. GERSON:  So, your Honor, there have been over 16 people identified by Royal Caribbean in their fact witness list.  And that is not including their records custodians and doctors.  And there have been -- there's a lot of moving pieces in this case.  There's an issue with this floor manufacturer. They have, as I mentioned before -- they've got over 16 -- I think there's a total of 26 fact witnesses, but 16 persons that are listed in their fact witness list.  I have no idea what their testimony is going to be.

And I actually told Cooper that I think they have an obligation to amend their Rule 26 disclosures and to identify what all these people -- who all these people are and what information they have.

But ultimately, I'm asking the Court for leave to take more than ten depositions because of the complexities that are involved in this case.  There's going to be multiple experts; there's going to be -- there's apparently lots of different witnesses that they've identified; there were these repairs to the floors.  And ten depositions, you know, it's not common; and I understand the rule is what the rule is.

But given the damages in the case and given the number of people that have been listed -- even in these other documents, there are other people -- I need more -- I'm going to need more than ten depositions.  Initially, I spoke with --

well, ultimately, Royal Caribbean's position is that they're standing by the ten-deposition rule. The fact that they have 16 listed, I mean, if I take ten, then those are the six they could call at trial. It's happened to me before.

THE COURT: All right. So how many more do you need?

MR. GERSON: Fifteen. I don't know that I'll need them all, but I just -- in an abundance of caution.

THE COURT: So five more or 15 more?

MR. GERSON: Five more.

THE COURT: Let me hear from Royal Caribbean on the additional five.

MR. JARNAGIN: Yes, your Honor.

I just believe that it's premature right now to consider this. I believe Mr. Gerson has set maybe six depositions. And I just don't know what-all else he's wanting, what further depositions over the ten limit.

THE COURT: He just said five. He wants five more over the ten.

MR. JARNAGIN: Okay. That's the first time I've heard that from Mr. Gerson. So yeah. I haven't had a chance to speak with Royal Caribbean about it. And we just have to maintain our objection at this time.

THE COURT: So you never asked him how many more he wanted?

MR. JARNAGIN: No. He just said he wanted over ten

depositions based on the fact witness list.

THE COURT: And how many people are on your fact witness list?

MR. JARNAGIN: I believe it's around 30. And that includes the records custodians for the medical providers.

THE COURT: The motion is granted.

Let me tell you something, I don't know what kind of meet-and-confers you all are having over there. But it seems to me if someone says, "I want more than ten," a pretty good question to ask them back is, "How many more than ten do you need"? So that you can negotiate something.

So I'm going to give him five, because I've kind of scratched my head here wondering why that discussion didn't happen before, because that's what the meet-and-confer is for. And quite frankly, a lot of these things that I ruled on today and last week seem to me to be the kind of thing that the lawyers are working together to actually have conversations that [indiscernible] email and [indiscernible].

Like I said, they might be able to resolve them. I'm happy to resolve them. But sometimes they're going to get resolved in a way that you don't like. And if you can resolve them yourselves, then, you know, you might get a resolution that you're more comfortable with. So I'll grant the request for five additional.

Is there anything else on this notice that I've missed?

MR. GERSON:  No, your Honor.  I believe in this notice that's all.  I will have to have another hearing, but I'll bring that up at another time, with respect to the Bolidt issue.  But as far as today is concerned, I believe that takes care of it.

And I just wanted to let the Court know that I've conferred with Mr. Jarnagin and Mr. Drahos.  I think Mr. Jarnagin wasn't on the case.  And I did confer with Mr. Drahos, and initially he told me that he didn't have an issue with the depositions.  I told him of course it would be bilateral.  And I guess they changed their position.

So I just didn't want the Court to think that I've not made substantial efforts to try and work these things out, because I've spent many phone calls and conversations with both Mr. Jarnagin and Mr. Drahos about these issues.  So I just wanted the Court to be aware of that.  We are and I have been trying to work these out without bothering the Court.

THE COURT:  It's no bother.  It's my job.  I'm happy to hear it.  That commentary, Mr. Gerson, was made more for the benefit of Royal Caribbean, who really was the one that should have asked how many more you wanted.  Right?  Because you didn't have any hesitancy telling me, so I assume you would have told them if you'd had that discussion.

For other hearings, the only thing I'll tell the parties is, you know, two big takeaways here is, one, I try to

get ready for these at least the night before; sometimes two days before.  Very rarely do I get ready for them the day of, just because I don't know what's going to happen on my calendar and I like to be as prepared as I can.

So when you're sending me those materials, I ask you to send them to me 48 hours before for that reason, because typically when you send them is when I look at them.  So try the best you can not to change anything unless -- and if you do, then what's most helpful is in whatever email you're sending, you know, specify what the change is.  So if you're sending new materials, the email I got today, I just saw this isn't new.  That's fine.

But I had a hearing the other day where they were amending the answers, but they weren't telling me which the amendments were and there were literally 70 document requests. I tried to hear it and I had no -- they were challenging all of it, and all my notes were in the old version.  So if you're going to change something, let me know what you're changing if you're changing it after you sent it the first time.

And the second thing is, I'm old school, so I print. So if you send a .pdf, and the .pdf says Exhibit 10, I'm just printing everything, because I don't know.  So just be mindful as you prepare documentation for me that I'm printing.  I'm not looking at the email.

The reason I don't look at the email is when I'm doing

these hearings, sometimes I don't have my computer on. If I'm in the courtroom, I don't even have a computer there that I log into ever. Sometimes I take them from my desk and, of course, my computer is here. But I'm not looking at the computer, because then I'm looking down at my chest. And I do it, quite frankly, because I find emails to be distracting; and when I'm doing these hearings, I'm giving you my 100 percent attention.

So I don't like to be relying on the computer. I like to print it. So I just say that to both of you for whatever it's worth. Something tells me we'll have more hearings on this case. It'll just help me be better prepared; and hopefully, if I'm better prepared, I can give you better rulings.

You gentlemen be safe. Take care. I'm sure I'll hear from you again soon. And we'll issue that paperless order today.

MR. GERSON: Thank you, your Honor.

MR. JARNAGIN: Thank you, your Honor.

(Proceedings concluded.)

C E R T I F I C A T E


        I hereby certify that the foregoing is an

accurate transcription of the proceedings in the

above-entitled matter to the best of my ability.



                        /s/Lisa Edwards
_____           LISA EDWARDS, RDR, CRR
    DATE              Reporterlisaedwards@gmail.com
                      (305) 439-7168

**/**

/s/Lisa [1] - 89:7

**1**

1 [17] - 1:8, 4:11, 4:20, 4:23, 5:7, 5:11, 6:19, 7:1, 22:19, 22:24, 46:9, 46:11, 51:2, 55:16, 55:17, 55:18
10 [13] - 45:25, 48:25, 50:25, 51:8, 56:10, 57:6, 57:7, 57:11, 58:22, 59:10, 71:14, 82:20, 87:21
100 [2] - 62:5, 88:7
10:00 [1] - 48:13
11 [5] - 35:20, 36:7, 45:2, 51:6, 51:9
1153 [2] - 56:13, 59:23
12 [2] - 50:4, 69:14
14 [9] - 18:2, 18:8, 19:1, 19:6, 59:10, 59:14, 60:18, 60:23
14th [1] - 43:14
15 [3] - 19:12, 82:20, 84:8
1564361 [1] - 73:18
15th [2] - 3:22, 58:20
16 [4] - 83:2, 83:7, 83:8, 84:3
17 [2] - 1:5, 60:19
174 [17] - 12:4, 14:7, 65:18, 65:20, 66:6, 66:17, 76:3, 76:5, 76:14, 76:17, 77:7, 77:9, 77:19, 79:5, 79:17, 80:10, 82:24
18 [1] - 69:14
19 [7] - 4:11, 4:20, 4:21, 10:9, 10:15, 10:18, 16:5
1980 [1] - 1:15
1:00 [2] - 48:11, 48:12
1:30 [1] - 36:4

**2**

2 [6] - 28:21, 46:12, 51:2, 55:16, 55:18, 55:19
20-25271 [1] - 50:8
20-25271-Civil-Becerra [1] - 2:1

2017 [2] - 14:4, 36:16
2018 [1] - 57:22
2019 [2] - 56:12, 57:24
2020 [1] - 57:25
2021 [5] - 1:5, 3:22, 50:7, 73:17, 73:18
21 [2] - 69:14
21st [2] - 4:18, 73:17
22 [2] - 1:5, 50:7
23-page [1] - 58:23
25 [4] - 3:23, 28:5, 48:25, 50:25
25271-CIVIL-BECERRA [1] - 1:2
255_001 [1] - 57:15
26 [2] - 83:8, 83:12
29 [1] - 51:3
2:00 [2] - 48:13, 48:14
2:30 [3] - 48:16, 48:18, 48:21

**3**

3 [4] - 28:21, 51:2, 57:1, 60:7
30 [2] - 57:23, 85:4
305 [2] - 1:21, 89:9
30th [1] - 56:12
33145 [1] - 1:15
33401 [1] - 1:19
37 [6] - 43:14, 43:20, 44:5, 44:17, 69:14
3:00 [1] - 48:5

**4**

4 [12] - 8:22, 8:24, 10:1, 10:2, 28:6, 28:8, 32:24, 51:3, 69:13, 71:16, 71:21
4-25-18 [1] - 57:20
42 [6] - 33:9, 33:12, 33:13, 33:15, 35:16
439-7168 [2] - 1:21, 89:9
48 [1] - 87:6

**5**

5 [28] - 4:11, 4:20, 7:2, 8:18, 8:19, 8:22, 8:24, 10:2, 22:3, 22:10, 22:18, 22:24, 23:12, 23:13, 24:1, 24:2, 24:6, 28:4, 28:5, 32:25, 35:23, 35:24,

36:7, 44:9, 69:13, 71:21
50 [1] - 42:3
51 [5] - 62:8, 65:11, 65:13, 65:16, 66:6
515 [1] - 1:18
53 [1] - 33:2
54 [8] - 33:2, 33:13, 36:11, 36:23, 41:19, 42:13, 43:4, 80:19
55 [1] - 33:2

**6**

6 [5] - 45:25, 48:25, 50:25, 51:8, 71:21
60 [1] - 33:2
61 [1] - 33:2
617 [1] - 60:18
62 [9] - 33:14, 42:13, 43:5, 43:11, 43:12, 43:14, 43:25, 44:5, 44:7
650 [1] - 1:18
66 [9] - 47:4, 55:15, 55:16, 55:17, 55:18, 56:1, 63:17, 68:19
67 [6] - 47:9, 68:21, 68:22, 68:24, 72:21
68 [3] - 47:10, 47:22, 73:6
6:17 [3] - 58:19, 58:20

**7**

7 [5] - 45:25, 48:25, 50:25, 51:8, 71:21
7.1 [1] - 67:8
70 [1] - 87:15
74 [1] - 33:2
76526 [1] - 73:17
7:48:30 [3] - 16:17, 16:19
7:49:47 [1] - 16:19

**8**

8 [11] - 33:1, 45:25, 47:18, 47:20, 47:22, 48:25, 49:1, 50:25, 51:8
80 [3] - 12:4, 12:8, 14:7

**9**

9 [25] - 4:11, 4:20, 8:20, 10:7, 10:8, 10:22, 11:6, 19:16, 19:18, 23:8, 24:8, 24:9, 24:16, 35:20, 36:7, 44:12, 44:20, 44:25, 45:1, 60:24, 62:4, 69:13
9-15 [1] - 58:19

**A**

ability [1] - 89:5
able [6] - 28:15, 44:19, 45:13, 47:24, 66:19, 85:19
above-entitled [1] - 89:5
abundance [1] - 84:7
accept [1] - 18:12
accident [24] - 7:6, 7:7, 8:7, 18:10, 22:7, 28:7, 28:9, 28:10, 28:11, 28:14, 29:5, 29:6, 29:11, 30:12, 31:11, 32:22, 52:16, 53:6, 53:12, 53:13, 60:9, 63:9, 64:13, 70:10
accident/illness [1] - 74:15
accidents [5] - 28:23, 29:4, 29:13, 31:1
accomplished [1] - 56:9
accord [1] - 38:10
accordance [1] - 33:24
accordingly [1] - 54:22
accurate [1] - 89:4
action [1] - 39:10
actions [3] - 5:14, 26:9, 38:16
actual [4] - 17:24, 18:1, 19:23, 75:8
add [4] - 42:17, 43:3, 71:12, 71:23
adding [1] - 43:1
additional [10] - 3:23, 21:10, 37:13, 44:24, 46:16, 51:12, 54:20, 82:14, 84:11, 85:24
address [13] - 12:6, 13:13, 13:18, 13:25,

14:19, 15:3, 15:6, 17:11, 35:19, 47:18, 55:18, 63:15, 69:15
addressed [4] - 17:22, 22:3, 46:25, 75:12
addresses [1] - 11:9
addressing [1] - 21:21
adjourned [1] - 50:6
advised [2] - 9:15, 43:17
affidavit [1] - 81:24
affirm [1] - 18:25
afternoon [3] - 50:13, 50:15, 50:18
afterwards [1] - 24:5
agenda [3] - 56:14, 57:2, 59:23
ago [3] - 20:3, 34:13, 41:17
agree [4] - 7:22, 31:6, 46:17, 64:6
agreed [5] - 44:24, 46:15, 62:20, 63:13, 67:1
agreement [11] - 10:16, 35:20, 35:25, 38:20, 38:23, 44:11, 63:15, 63:22, 63:24, 64:2, 66:2
agrees [1] - 20:3
ahead [4] - 4:15, 12:11, 28:3, 59:13
allow [2] - 25:15, 41:24
Almaida [1] - 25:1
alone [1] - 76:10
amend [18] - 18:8, 22:24, 32:20, 32:21, 35:5, 35:6, 44:7, 52:23, 54:15, 54:21, 70:18, 70:25, 71:1, 71:7, 71:9, 72:4, 72:8, 83:12
amended [6] - 2:18, 2:21, 3:13, 19:25, 26:21, 48:25
amending [1] - 87:14
amendment [3] - 16:5, 44:5, 70:24
amendments [2] - 4:19, 87:15
amount [3] - 76:9, 76:10, 77:15
ancillary [1] - 55:18
angle [2] - 6:16, 17:19
announce [1] - 49:6
answer [20] - 3:21,

5:18, 6:11, 6:20, 6:25, 17:24, 18:8, 21:8, 22:2, 22:24, 32:21, 43:25, 52:23, 54:21, 58:7, 63:21, 67:21, 71:7, 71:9, 79:23

**answered** [1] - 6:10

**answering** [2] - 6:7, 22:6

**answers** [3] - 4:17, 9:17, 87:14

**anticipated** [1] - 45:18

**anticipation** [18] - 25:8, 25:22, 25:25, 26:4, 26:5, 26:8, 27:6, 28:16, 29:4, 29:13, 29:24, 30:9, 31:3, 31:13, 32:5, 53:22, 54:7, 54:18

**anyway** [2] - 39:21, 42:2

**apologize** [4] - 3:18, 47:10, 59:6, 63:22

**appear** [1] - 14:24

**appearance** [1] - 50:11

**appearances** [1] - 2:3

**APPEARANCES** [1] - 1:12

**applicability** [1] - 29:20

**applied** [1] - 42:19

**applies** [1] - 27:5

**appointment** [2] - 48:7, 48:13

**appreciate** [4] - 2:17, 3:5, 16:15, 50:4

**appropriate** [3] - 28:24, 51:23, 71:9

**April** [1] - 73:17

**aquatic** [2] - 28:23, 31:1

**area** [13] - 5:14, 8:8, 36:25, 37:8, 38:17, 39:2, 40:13, 40:16, 40:22, 41:12, 73:9, 75:23

**areas** [2] - 28:23, 31:1

**argue** [2] - 63:5, 74:25

**argument** [19] - 15:16, 25:14, 28:16, 29:19, 30:2, 30:4, 30:7, 30:14, 31:6, 32:15, 53:16, 53:21, 54:20, 54:25, 66:15, 75:6, 81:15, 81:25,

82:21

**articulate** [1] - 30:15

**ARTS** [8] - 69:3, 69:10, 70:4, 70:6, 70:7, 70:16, 72:3, 72:23

**ARTS/Riskonnect** [1] - 71:23

**assert** [1] - 20:22

**asserted** [2] - 20:16, 51:22

**assertions** [1] - 54:16

**assume** [2] - 8:7, 86:22

**assumed** [1] - 20:20

**assuming** [1] - 50:21

**attached** [1] - 71:17

**attachment** [1] - 27:5

**attempt** [1] - 47:7

**attention** [2] - 33:20, 88:7

**attorney** [3] - 34:17, 37:4, 37:15

**attorney-client** [2] - 37:4, 37:15

**attorneys** [4] - 9:20, 26:9, 26:11, 29:25

**AUDIO** [1] - 1:10

**authorizations** [1] - 46:14

**aware** [5] - 36:17, 45:11, 61:13, 65:2, 86:16

**awful** [1] - 48:4

## B

**based** [6] - 6:11, 20:4, 28:25, 34:22, 62:2, 85:1

**basis** [2] - 34:2, 34:8

**Bates** [7] - 56:13, 56:17, 58:1, 58:2, 59:23, 70:20, 72:14

**Bates-stamped** [1] - 58:1

**Beach** [1] - 1:19

**Becerra** [1] - 50:9

**BECERRA** [1] - 1:11

**becomes** [1] - 41:18

**BEFORE** [1] - 1:11

**beforehand** [1] - 2:21

**behalf** [4] - 2:5, 2:7, 50:14, 50:16

**belabor** [1] - 67:9

**Benedi** [2] - 58:7, 58:20

**beneficial** [1] - 49:18

**benefit** [1] - 86:20

**best** [7] - 2:22, 14:11, 15:18, 27:21, 56:8, 87:8, 89:5

**better** [7] - 11:22, 19:14, 33:1, 79:23, 88:11, 88:12

**between** [3] - 9:20, 16:18, 26:4

**beyond** [1] - 74:10

**big** [1] - 86:25

**bilateral** [1] - 86:11

**birth** [1] - 10:19

**bit** [3] - 44:4, 64:9, 73:8

**blacked** [1] - 57:5

**blank** [1] - 12:7

**blanket** [2] - 76:23, 82:24

**boat** [1] - 59:16

**body** [1] - 55:23

**Bolidt** [16] - 36:16, 36:21, 37:10, 37:11, 37:25, 39:7, 39:15, 39:22, 39:23, 40:2, 40:17, 43:16, 43:21, 44:5, 86:3

**bother** [1] - 86:18

**bothering** [1] - 86:17

**bottom** [1] - 37:24

**brain** [1] - 5:8

**break** [1] - 21:14

**briefed** [1] - 73:20

**bring** [1] - 86:3

**broad** [1] - 39:21

**brought** [1] - 64:21

**buildup** [1] - 38:11

**bulk** [1] - 14:2

**bunch** [3] - 11:1, 44:6, 67:9

**burden** [5] - 27:12, 27:14, 55:2, 56:8, 80:22

**burdensome** [9] - 41:1, 41:3, 42:1, 74:20, 76:6, 78:20, 80:17, 80:18, 81:24

**business** [6] - 24:19, 29:2, 29:15, 49:4, 52:9, 56:1

**butcher** [1] - 51:14

**buy** [1] - 32:10

**BY** [1] - 1:20

**bye** [1] - 50:5

**Byron** [1] - 73:15

## C

**calculate** [1] - 80:4

**calendar** [3] - 2:16, 36:2, 87:3

**camera** [10] - 27:17, 28:2, 49:4, 51:12, 51:16, 53:18, 54:8, 54:12, 55:1, 75:8

**cancellation** [1] - 58:10

**captured** [1] - 78:25

**care** [5] - 42:9, 44:9, 49:2, 86:5, 88:14

**CARIBBEAN** [1] - 1:7

**Caribbean** [35] - 2:2, 2:8, 11:21, 14:21, 15:17, 15:19, 17:5, 23:23, 24:24, 26:9, 27:16, 34:10, 50:9, 50:16, 54:3, 54:21, 63:8, 65:2, 68:15, 69:19, 70:2, 70:9, 70:13, 70:17, 73:16, 75:6, 76:6, 79:16, 81:19, 82:6, 83:3, 84:10, 84:21, 86:20

**Caribbean's** [2] - 65:5, 84:1

**Carla** [2] - 58:7, 58:19

**CASE** [1] - 1:2

**Case** [2] - 2:1, 50:8

**case** [31] - 3:8, 5:10, 14:24, 21:17, 29:9, 34:5, 37:18, 37:21, 44:18, 49:12, 57:19, 61:14, 62:11, 62:15, 65:1, 65:4, 72:5, 73:19, 74:5, 74:13, 75:3, 75:5, 76:25, 77:23, 83:6, 83:17, 83:22, 86:8, 88:11

**cases** [1] - 73:15

**catalog** [1] - 78:10

**categories** [1] - 63:9

**category** [2] - 27:21, 65:15

**caution** [1] - 84:7

**CCTV** [14] - 5:20, 5:21, 5:25, 6:14, 6:15, 6:17, 6:22, 17:18, 18:10, 73:8, 76:10, 76:21, 79:22, 79:24

**central** [1] - 37:17

**certain** [1] - 9:8

**certainly** [1] - 74:21

**certify** [1] - 89:3

**chairs** [1] - 16:23

**challenging** [1] - 87:16

**chambers** [1] - 3:16

**chance** [2] - 48:4, 84:20

**change** [8] - 34:19, 34:21, 42:17, 42:21, 43:6, 87:8, 87:10, 87:18

**changed** [5] - 37:2, 40:24, 43:16, 51:2, 86:11

**changes** [7] - 36:22, 36:23, 37:12, 42:17, 42:22, 43:3, 43:4

**changing** [2] - 87:18, 87:19

**check** [1] - 36:1

**Chen** [1] - 21:5

**chest** [1] - 88:5

**chief** [2] - 25:17, 51:15

**choices** [2] - 72:9, 72:20

**chooses** [1] - 23:23

**circuit** [1] - 77:6

**circumstances** [2] - 9:8, 10:20

**citation** [2] - 73:17

**Civil** [1] - 50:9

**Civil-Becerra** [1] - 50:9

**claim** [1] - 62:12

**claiming** [1] - 9:7

**claims** [2] - 70:10, 70:14

**clarification** [1] - 55:3

**clarify** [1] - 53:3

**class** [3] - 60:19, 64:23, 76:4

**classified** [1] - 61:2

**clear** [4] - 23:17, 43:9, 55:6, 62:16

**clearly** [6] - 28:21, 29:12, 52:2, 55:11, 60:20, 71:18

**client** [16] - 5:8, 5:16, 5:23, 9:5, 16:18, 17:2, 17:10, 29:11, 31:2, 33:19, 37:4, 37:15, 49:19, 76:15, 76:16, 77:25

**client's** [5] - 60:12, 60:15, 64:8, 74:24, 75:15

**clip** [1] - 16:7

**close** [3] - 32:3, 49:4, 52:8

**coach** [1] - 60:8
**coincidence** [1] - 17:2
**coincidentally** [1] - 75:9
**collect** [1] - 76:7
**collected** [6] - 23:15, 24:7, 31:21, 32:6, 53:24, 79:3
**collection** [1] - 77:11
**comfortable** [2] - 30:2, 85:23
**coming** [4] - 23:4, 23:25, 37:11, 49:9
**comment** [1] - 42:14
**commentary** [1] - 86:19
**committee** [17] - 56:14, 56:20, 56:21, 57:1, 57:2, 57:25, 59:23, 60:3, 64:13, 65:12, 65:16, 66:16, 66:25, 67:4, 67:7, 67:23, 68:16
**Committee** [1] - 56:19
**common** [1] - 83:20
**company** [2] - 35:2, 36:16
**comparatively** [1] - 33:20
**compel** [18] - 7:1, 8:13, 8:19, 14:11, 17:7, 19:5, 19:6, 19:14, 22:19, 33:1, 44:12, 68:4, 68:8, 70:16, 71:6, 72:22, 79:21, 79:23
**compelled** [1] - 7:20
**compile** [1] - 80:2
**complaint** [3] - 12:3, 12:7, 17:19
**complete** [16] - 9:16, 10:1, 16:25, 17:8, 19:5, 19:6, 34:18, 43:18, 43:22, 43:24, 43:25, 44:8, 44:14, 65:22, 69:21
**completed** [3] - 7:6, 7:7
**completely** [5] - 3:7, 25:12, 57:5, 76:24, 80:18
**complexities** [1] - 83:16
**comply** [1] - 68:13
**computer** [11] - 58:12, 59:20, 69:2, 70:2, 70:3, 78:17, 88:1, 88:2, 88:4, 88:8

**concerned** [1] - 86:4
**concerning** [3] - 37:7, 38:17, 39:20
**concerns** [1] - 70:13
**conclude** [2] - 25:15, 64:7
**concluded** [1] - 88:19
**conclusion** [1] - 31:12
**conclusive** [1] - 6:1
**conduct** [1] - 44:19
**conducted** [3] - 25:5, 25:20, 27:6
**conducts** [1] - 26:7
**confer** [2] - 85:14, 86:8
**conference** [3] - 12:15, 12:22, 65:25
**conferred** [1] - 86:7
**confers** [1] - 85:8
**confidential** [1] - 26:24
**confidentiality** [1] - 10:3
**confirm** [1] - 54:4
**confused** [1] - 4:8
**confusion** [2] - 3:18, 4:8
**consider** [2] - 55:10, 84:14
**consideration** [1] - 54:20
**considering** [1] - 39:1
**consistent** [1] - 75:16
**consistently** [1] - 73:22
**construct** [1] - 64:25
**consuming** [1] - 82:11
**contact** [5] - 11:10, 13:20, 14:25, 15:1, 76:15
**contacting** [1] - 13:15
**contain** [7] - 11:10, 12:5, 12:6, 15:5, 62:9, 74:10, 78:9
**contained** [1] - 7:22
**contains** [3] - 12:2, 20:4, 77:17
**content** [1] - 26:12
**contention** [1] - 22:8
**contents** [2] - 25:7, 26:11
**context** [5] - 5:3, 36:20, 38:5, 40:25, 45:16

**continuation** [1] - 49:9
**continue** [4] - 3:2, 6:22, 27:23, 44:14
**continued** [2] - 50:7, 50:19
**continues** [1] - 21:1
**continuing** [1] - 2:17
**contributory** [1] - 35:11
**conversations** [2] - 85:17, 86:14
**convinced** [1] - 53:10
**COOPER** [2] - 1:17, 2:13
**Cooper** [6] - 2:7, 2:11, 6:9, 46:8, 50:15, 83:11
**Coral** [1] - 1:15
**corporate** [1] - 73:24
**correct** [12] - 16:9, 19:13, 30:14, 30:17, 30:18, 33:3, 51:4, 51:8, 54:12, 59:25, 61:24, 68:1
**corrective** [2] - 38:16, 39:10
**correlates** [1] - 47:19
**correspond** [2] - 62:17, 74:9
**correspondence** [8] - 24:17, 25:17, 27:1, 27:13, 51:14, 53:4, 53:5, 53:12
**corresponding** [1] - 43:7
**corresponds** [2] - 15:3, 78:11
**corrupted** [1] - 6:2
**costly** [1] - 45:15
**counsel** [24] - 2:3, 9:2, 10:17, 16:21, 20:2, 27:25, 31:14, 38:8, 38:22, 38:23, 44:23, 49:1, 50:11, 51:25, 52:5, 53:23, 54:1, 54:9, 55:3, 66:15, 75:7, 75:25, 81:19, 82:6
**couple** [5] - 3:11, 18:22, 75:10, 80:22, 81:10
**course** [8] - 24:18, 24:25, 29:2, 43:23, 55:25, 66:4, 86:10, 88:3
**COURT** [173] - 1:1, 2:9, 2:12, 2:15, 4:1, 4:7, 4:14, 4:16, 6:8,

6:19, 7:12, 7:18, 8:5, 9:13, 9:23, 10:13, 11:1, 11:5, 11:14, 11:16, 11:21, 12:11, 12:18, 12:21, 12:24, 13:2, 13:5, 13:7, 13:18, 13:21, 13:24, 14:9, 15:9, 15:12, 16:10, 17:15, 17:24, 18:3, 18:5, 18:14, 19:11, 19:14, 20:14, 21:12, 22:9, 25:3, 25:13, 26:14, 26:16, 26:18, 27:16, 27:19, 28:8, 29:17, 30:4, 30:17, 31:6, 33:8, 33:11, 33:15, 34:7, 34:10, 34:19, 34:25, 35:22, 36:4, 36:6, 36:13, 37:19, 38:13, 39:3, 39:18, 41:8, 42:15, 42:24, 43:3, 43:10, 43:12, 43:19, 44:2, 44:20, 44:25, 45:5, 45:19, 46:3, 46:9, 46:11, 46:19, 46:24, 47:2, 47:12, 47:20, 48:4, 48:10, 48:14, 48:18, 48:20, 48:23, 49:11, 49:14, 49:18, 49:25, 50:4, 50:18, 51:9, 52:8, 52:11, 52:14, 52:17, 52:25, 53:16, 54:17, 55:6, 55:20, 56:16, 57:4, 57:9, 57:13, 57:16, 57:18, 58:3, 58:9, 58:17, 58:21, 58:23, 58:25, 59:4, 59:7, 59:13, 59:19, 59:22, 60:1, 61:8, 61:17, 61:21, 61:25, 62:5, 63:8, 63:21, 64:5, 64:20, 65:9, 65:23, 66:13, 67:21, 68:3, 68:21, 69:16, 69:25, 70:6, 70:15, 71:13, 71:22, 72:1, 74:14, 75:25, 76:20, 77:6, 77:9, 77:24, 78:14, 79:14, 79:21, 81:6, 82:8, 84:5, 84:8, 84:10, 84:17, 84:23, 85:2, 85:6, 86:18
**court** [3] - 18:9, 68:14, 73:15
**Court** [43] - 3:25, 4:25, 5:6, 9:2, 10:11, 10:22, 17:7, 18:12, 18:24, 21:6, 33:7, 35:19, 36:17, 40:9,

40:13, 40:17, 45:11, 45:16, 51:6, 53:7, 53:10, 55:2, 55:4, 55:21, 56:6, 56:8, 56:12, 59:11, 60:23, 61:13, 67:9, 67:12, 67:15, 69:7, 71:24, 77:19, 79:19, 81:3, 83:15, 86:6, 86:12, 86:16, 86:17
**Court's** [4] - 3:19, 58:16, 81:3, 81:25
**courtroom** [1] - 88:2
**COURTROOM** [6] - 2:1, 12:20, 13:1, 13:3, 13:6, 50:8
**courts** [1] - 73:21
**cover** [2] - 22:19, 24:2
**covers** [2] - 22:18, 49:1
**COVID** [1] - 4:4
**craniotomies** [1] - 5:9
**create** [2] - 32:14, 32:17
**created** [9] - 25:7, 29:24, 32:8, 32:9, 32:12, 32:13, 53:25, 54:1
**crew** [1] - 22:4
**CRR** [2] - 1:20, 89:8
**CRS** [2] - 70:2, 70:3
**cruise** [6] - 27:13, 35:2, 36:18, 39:3, 55:25, 69:16
**CRUISES** [1] - 1:7
**Cruises** [5] - 2:2, 2:8, 50:9, 50:16, 73:16
**cumbersome** [2] - 21:21, 23:2
**cumulative** [4] - 72:7, 73:3, 73:12, 80:17
**custodians** [2] - 83:4, 85:5

### D

**damages** [1] - 83:22
**DAR** [1] - 13:4
**data** [1] - 57:25
**database** [1] - 81:22
**date** [4] - 10:19, 38:19, 44:21
**DATE** [1] - 89:8
**dated** [2] - 4:18, 57:23
**dates** [3] - 44:13,

44:24, 45:7
**days** [7] - 13:8, 46:16, 52:5, 79:20, 80:2, 80:22, 87:2
**deadlines** [1] - 71:7
**deal** [6] - 47:21, 47:23, 56:24, 61:16, 65:12
**dealing** [1] - 28:7
**deals** [3] - 10:15, 47:10, 69:2
**debate** [1] - 23:18
**December** [1] - 57:25
**decision** [1] - 49:6
**deck** [1] - 6:17
**defeat** [1] - 54:7
**Defendant** [13] - 3:11, 5:3, 5:14, 8:21, 27:12, 33:9, 36:24, 44:13, 44:17, 50:17, 56:2, 63:4, 71:6
**defendant** [2] - 1:8, 73:24
**DEFENDANT** [1] - 1:17
**Defendant's** [5] - 4:16, 19:15, 24:10, 36:9, 69:1
**Defendants** [1] - 36:8
**defense** [5] - 33:16, 34:8, 35:10, 35:14, 66:16
**defenses** [7] - 33:19, 33:22, 34:1, 34:2, 34:5, 35:5, 35:7
**definitely** [1] - 34:19
**delete** [1] - 51:5
**deleted** [2] - 6:1, 17:10
**denied** [8] - 22:19, 23:22, 44:21, 54:2, 79:24, 79:25, 80:24
**deny** [4] - 7:1, 23:9, 32:20, 41:9
**depo** [1] - 17:12
**deposition** [10] - 34:15, 34:22, 37:25, 44:12, 44:20, 44:21, 73:24, 77:16, 77:24, 84:2
**depositions** [9] - 48:9, 83:1, 83:16, 83:20, 83:25, 84:15, 84:16, 85:1, 86:10
**deputy** [2] - 24:25, 25:18
**DEPUTY** [6] - 2:1, 12:20, 13:1, 13:3,

13:6, 50:8
**describe** [1] - 27:23
**described** [1] - 26:2
**description** [16] - 10:20, 25:14, 27:22, 30:8, 30:13, 30:24, 31:7, 31:10, 31:14, 32:2, 32:15, 53:8, 54:4, 54:6, 66:9, 66:10
**desk** [1] - 88:3
**details** [2] - 61:1, 73:25
**develop** [2] - 18:19, 34:20
**developed** [1] - 18:18
**difference** [1] - 26:2
**different** [19] - 3:4, 3:8, 3:9, 3:10, 4:1, 15:25, 33:12, 34:24, 48:24, 52:17, 60:4, 62:9, 64:22, 64:23, 64:25, 76:22, 77:18, 83:18
**difficult** [3] - 2:20, 81:14, 82:10
**direct** [2] - 17:25, 59:11
**directed** [1] - 54:5
**direction** [4] - 26:8, 26:10, 29:25, 54:1
**directions** [1] - 55:6
**disclosed** [4] - 20:13, 27:11, 41:18, 62:2
**disclosure** [1] - 21:4
**disclosures** [1] - 83:12
**discoverable** [1] - 25:2
**discovery** [23] - 2:15, 17:23, 18:18, 18:19, 19:1, 34:6, 34:15, 36:15, 37:21, 44:14, 50:19, 61:5, 61:12, 64:11, 64:15, 66:6, 67:24, 68:5, 70:4, 74:4, 77:16, 81:9
**DISCOVERY** [1] - 1:10
**discuss** [3] - 39:16, 63:19, 71:19
**discussed** [11] - 17:17, 49:9, 57:3, 60:6, 60:21, 60:24, 62:23, 62:25, 69:5, 69:11, 71:18
**discussing** [1] - 43:6
**discussion** [4] -

41:16, 55:13, 85:13, 86:23
**disposition** [1] - 13:8
**distinction** [1] - 31:3
**distracting** [1] - 88:6
**district** [2] - 73:15, 73:21
**DISTRICT** [3] - 1:1, 1:1, 1:11
**DIVISION** [1] - 1:2
**Docket** [4] - 3:23, 28:4, 50:25, 51:3
**docket** [1] - 21:5
**doctor's** [1] - 48:6
**doctors** [1] - 83:5
**document** [41] - 14:6, 15:6, 26:22, 27:3, 28:13, 28:15, 29:3, 29:12, 30:3, 30:5, 30:22, 30:25, 31:8, 31:14, 31:15, 39:22, 41:18, 51:18, 51:20, 51:23, 51:24, 51:25, 52:2, 52:3, 54:4, 55:7, 55:12, 56:18, 57:23, 58:2, 58:23, 59:2, 60:10, 60:21, 63:1, 64:21, 69:8, 69:9, 71:15, 72:25, 87:15
**documentation** [6] - 33:21, 34:1, 34:5, 38:2, 39:7, 87:23
**documentations** [1] - 34:4
**documenting** [2] - 28:22, 29:11
**documents** [43] - 8:16, 10:4, 33:16, 34:8, 34:16, 34:20, 34:21, 34:24, 35:1, 35:2, 35:8, 35:12, 36:24, 38:15, 38:25, 39:14, 39:19, 39:23, 40:2, 40:3, 41:10, 41:22, 42:3, 42:10, 42:11, 43:1, 43:5, 43:23, 43:24, 44:6, 55:22, 55:24, 56:9, 59:10, 64:25, 67:9, 68:8, 68:9, 69:24, 73:13, 76:7, 83:24
**done** [14] - 10:24, 16:3, 16:10, 19:12, 24:18, 26:12, 26:23, 28:16, 31:3, 42:23, 53:18, 53:25, 61:2, 81:14
**Donna** [2] - 12:19, 12:24

**doubt** [1] - 18:11
**down** [8] - 45:7, 52:19, 60:9, 61:21, 77:21, 78:2, 80:9, 88:5
**download** [4] - 76:8, 76:11, 77:15, 78:9
**downloaded** [1] - 79:12
**downloading** [2] - 82:10, 82:12
**dozen** [1] - 23:20
**Drahos** [5] - 40:6, 65:25, 86:7, 86:9, 86:15
**Drive** [1] - 1:18
**duplicate** [1] - 67:10
**during** [2] - 81:9
**duties** [4] - 28:20, 28:25, 29:2, 29:8
**duty** [1] - 25:10

## E

**early** [2] - 34:14, 34:17
**easier** [5] - 15:2, 23:5, 51:7, 58:15, 77:11
**easily** [1] - 15:23
**easy** [5] - 15:13, 18:24, 45:14, 46:4, 55:9
**Edwards** [1] - 89:7
**EDWARDS** [2] - 1:20, 89:8
**efforts** [3] - 14:12, 15:18, 86:13
**eight** [1] - 57:21
**Eirren** [1] - 73:16
**either** [10] - 6:1, 14:12, 22:23, 23:12, 28:15, 32:4, 32:5, 41:22, 55:23, 72:9
**electronic** [2] - 81:23, 82:2
**ELECTRONIC** [1] - 12:15
**electronically** [2] - 81:20, 82:5
**element** [1] - 74:13
**email** [44] - 11:9, 12:4, 12:5, 12:8, 12:13, 13:15, 13:16, 14:12, 14:16, 14:25, 15:6, 24:17, 24:18, 24:21, 25:5, 25:16, 25:24, 25:25, 26:1, 26:4, 26:11, 26:25,

27:1, 27:4, 27:12, 27:20, 38:6, 51:13, 51:19, 53:4, 53:5, 53:12, 53:18, 54:10, 54:13, 58:5, 59:1, 59:2, 69:23, 85:18, 87:9, 87:11, 87:24, 87:25
**Email** [1] - 25:16
**email's** [1] - 25:2
**emails** [18] - 11:11, 11:12, 11:16, 12:13, 13:10, 13:11, 14:3, 14:10, 15:21, 15:22, 37:9, 38:3, 49:13, 49:15, 58:4, 58:12, 88:6
**employed** [1] - 7:8
**en** [1] - 46:18
**Enchantment** [4] - 5:2, 57:24, 58:1, 65:6
**encompass** [3] - 39:11, 39:12, 42:22
**encompassed** [1] - 65:14
**end** [5] - 34:6, 45:9, 51:11, 52:6, 56:18
**enjoy** [1] - 25:23
**enjoys** [1] - 25:24
**enlargement** [1] - 44:14
**entail** [1] - 78:6
**entering** [1] - 47:13
**entertain** [1] - 81:3
**entire** [3] - 16:19, 20:16, 20:21
**entirely** [1] - 22:10
**entitled** [12] - 9:9, 18:14, 21:24, 22:23, 22:25, 23:7, 23:10, 23:20, 46:17, 68:6, 71:16, 89:5
**entries** [7] - 12:7, 14:3, 60:25, 69:11, 70:17, 72:3, 72:23
**entry** [5] - 21:6, 28:10, 62:12, 62:13, 69:3
**Entry** [4] - 3:23, 28:5, 50:25, 51:3
**especially** [3] - 35:11, 45:21, 80:15
**ESQ** [2] - 1:14, 1:17
**essentially** [8] - 18:7, 21:10, 25:6, 33:24, 34:12, 36:18, 37:12, 44:14
**establish** [1] - 27:12
**estimate** [1] - 79:19
**evidence** [3] - 76:18,

81:11, 82:16

**exactly** [4] - 9:10, 21:8, 37:22, 75:13

**example** [5] - 35:11, 41:16, 42:1, 56:7, 73:2

**exception** [1] - 12:13

**excited** [1] - 27:25

**exclude** [1] - 72:3

**excuse** [2] - 28:19, 39:6

**executed** [1] - 46:12

**Exhibit** [9] - 56:10, 57:6, 57:7, 59:10, 60:18, 60:23, 71:14, 87:21

**exhibit** [3] - 57:10, 58:21, 69:4

**exist** [10] - 9:10, 42:7, 43:24, 63:12, 64:3, 71:2, 71:3, 72:16, 72:17

**exists** [2] - 72:19

**expect** [1] - 42:12

**expectation** [1] - 54:17

**expedition** [4] - 61:4, 62:18, 74:4, 80:20

**expert** [1] - 45:13

**experts** [1] - 83:17

**explanation** [3] - 6:2, 17:1, 17:9

**extent** [4] - 8:1, 8:25, 41:25, 42:10

**eyewitness** [2] - 6:6, 7:14

## F

**fact** [24] - 4:15, 11:20, 26:23, 26:25, 30:8, 30:12, 31:2, 31:24, 31:25, 32:2, 32:8, 44:17, 53:9, 53:22, 54:5, 54:18, 68:11, 82:3, 83:3, 83:8, 83:9, 84:2, 85:1, 85:2

**facts** [43] - 5:11, 7:10, 7:22, 8:6, 8:21, 20:3, 20:11, 20:17, 20:23, 20:25, 21:2, 21:10, 21:18, 21:22, 21:23, 21:24, 21:25, 22:7, 22:10, 22:12, 22:13, 22:15, 22:16, 22:23, 22:24, 22:25, 23:7, 23:10, 23:11, 23:14, 23:20, 23:24,

24:2, 24:4, 24:7, 27:10, 34:19, 51:20, 51:21, 51:24, 52:3, 55:8

**factual** [14] - 7:16, 7:19, 7:24, 8:14, 10:20, 20:4, 20:6, 20:10, 21:3, 21:7, 21:9, 22:4, 23:6, 27:11

**factually** [2] - 5:17, 6:4

**failed** [1] - 68:13

**fall** [10] - 5:1, 16:22, 17:10, 38:16, 39:10, 39:19, 40:20, 40:21, 44:16, 61:14

**fall/safety** [1] - 39:19

**fall/safety-related** [1] - 39:19

**falling** [1] - 6:16

**falls** [4] - 17:3, 27:20, 40:20, 77:18

**familiar** [1] - 21:17

**far** [2] - 11:12, 86:4

**fashion** [1] - 21:20

**favor** [2] - 71:22, 72:1

**February** [1] - 60:16

**federal** [1] - 61:14

**fell** [2] - 5:8, 41:16

**few** [4] - 55:9, 79:8, 79:20, 80:2

**fifteen** [1] - 84:6

**figured** [1] - 45:7

**file** [15] - 6:15, 27:20, 31:17, 31:19, 31:20, 32:17, 32:23, 52:21, 70:10, 70:14, 78:9, 79:4, 79:10, 79:11, 81:23

**filed** [5] - 19:25, 62:12, 62:13, 81:24

**files** [6] - 41:17, 77:12, 77:15, 79:10, 79:13, 82:7

**fine** [8] - 13:6, 39:15, 42:25, 43:2, 46:23, 49:23, 50:23, 87:12

**finish** [2] - 35:23, 36:7

**finishes** [1] - 16:7

**finite** [1] - 35:2

**firm** [1] - 78:14

**first** [23] - 2:13, 4:17, 12:12, 13:12, 14:9, 18:3, 26:23, 29:8, 29:19, 33:4, 35:6, 38:12, 39:5, 46:4, 53:14, 56:7, 65:24,

66:3, 70:3, 71:15, 79:1, 84:19, 87:19

**fishing** [4] - 61:3, 62:18, 74:4, 80:20

**fit** [1] - 8:3

**five** [13] - 37:1, 38:18, 38:21, 39:2, 40:22, 79:15, 84:8, 84:9, 84:11, 84:17, 85:12, 85:24

**flagged** [1] - 4:10

**Flagler** [1] - 1:18

**floor** [24] - 5:17, 5:24, 6:7, 17:4, 36:18, 36:23, 36:25, 37:7, 37:20, 38:17, 39:2, 39:7, 39:20, 40:10, 40:11, 40:12, 40:16, 40:24, 41:11, 42:23, 43:16, 83:6

**flooring** [2] - 41:11, 43:6

**floors** [2] - 37:2, 83:20

**FLORIDA** [1] - 1:1

**Florida** [3] - 1:4, 1:15, 1:19

**focus** [1] - 33:7

**folks** [1] - 14:20

**follow** [1] - 29:4

**following** [1] - 28:22

**follows** [1] - 50:7

**footage** [13] - 5:25, 6:14, 6:15, 6:17, 6:22, 17:18, 17:20, 17:22, 18:10, 76:10, 76:11, 79:25

**FOR** [2] - 1:14, 1:17

**foregoing** [1] - 89:3

**foreign** [2] - 5:13, 5:19

**forget** [1] - 55:23

**format** [2] - 64:24, 76:13

**forth** [2] - 10:16, 40:7

**forward** [2] - 6:16, 13:7

**foundation** [1] - 5:5

**four** [1] - 50:22

**frankly** [3] - 76:23, 85:15, 88:6

**frantically** [2] - 49:12, 49:14

**Friday** [2] - 34:13, 52:9

**FROM** [1] - 1:10

**front** [4] - 4:10, 19:21, 33:12, 58:12

**fully** [1] - 6:10

**future** [1] - 3:6

**FYI** [1] - 58:9

## G

**gap** [1] - 5:22

**general** [5] - 31:4, 36:25, 38:17, 40:13, 41:12

**generated** [4] - 11:23, 14:1, 25:25, 79:4

**gentlemen** [2] - 13:8, 88:14

**GERSON** [118] - 1:14, 1:14, 2:5, 3:18, 4:3, 4:13, 4:15, 4:24, 7:10, 7:13, 8:24, 10:11, 10:14, 11:4, 11:6, 11:15, 11:18, 12:10, 12:12, 12:17, 12:23, 13:16, 13:19, 15:2, 15:11, 16:9, 16:17, 18:2, 18:4, 19:10, 19:24, 21:3, 24:15, 26:19, 28:6, 28:11, 30:16, 30:18, 33:5, 33:9, 33:13, 33:18, 34:9, 35:17, 36:3, 36:5, 36:12, 36:14, 37:23, 38:22, 40:4, 42:14, 42:16, 43:7, 44:12, 44:23, 45:4, 45:11, 46:2, 46:7, 46:13, 47:1, 47:3, 47:15, 48:3, 48:6, 48:12, 48:17, 48:22, 50:3, 50:13, 51:5, 52:10, 52:12, 52:15, 53:3, 55:2, 55:17, 55:21, 56:22, 57:6, 57:12, 57:15, 57:17, 57:23, 58:6, 58:14, 58:19, 58:22, 58:24, 59:1, 59:6, 59:9, 59:17, 59:21, 59:25, 60:2, 61:13, 61:19, 61:24, 62:2, 62:7, 65:24, 67:6, 68:23, 71:12, 71:14, 71:24, 73:11, 74:19, 78:13, 81:2, 81:18, 83:2, 84:6, 84:9, 86:1, 88:17

**Gerson** [62] - 2:5, 3:14, 4:23, 6:14, 6:20, 7:9, 7:22, 8:23, 9:15, 9:21, 10:12, 11:23, 12:11, 12:18, 14:14, 16:2, 16:16, 17:17, 19:20, 21:13, 21:18,

23:16, 23:25, 24:12, 26:18, 29:20, 30:7, 31:18, 32:16, 33:3, 33:17, 39:16, 39:18, 43:17, 44:11, 45:25, 46:5, 46:12, 47:14, 48:20, 50:14, 51:4, 51:25, 54:24, 55:16, 58:3, 63:13, 63:20, 64:1, 64:21, 65:23, 68:6, 68:22, 71:22, 73:10, 76:14, 77:2, 77:21, 81:1, 84:14, 84:20, 86:19

**Gerson's** [8] - 18:14, 32:10, 39:6, 54:16, 54:19, 63:15, 68:12, 76:8

**given** [18] - 21:13, 21:25, 31:16, 38:6, 43:1, 46:6, 54:19, 55:14, 60:11, 61:22, 66:16, 67:4, 67:6, 70:18, 77:9, 80:15, 83:22

**Godson** [1] - 25:1

**government** [1] - 59:20

**grant** [17] - 8:13, 9:23, 14:21, 16:1, 19:6, 23:9, 32:20, 34:25, 41:9, 42:9, 44:2, 68:4, 68:7, 70:15, 79:21, 80:23, 85:23

**granted** [10] - 8:19, 10:8, 22:4, 23:22, 54:2, 68:18, 71:6, 72:22, 79:24, 85:6

**granting** [1] - 79:25

**GRAYROBINSON** [1] - 1:17

**great** [1] - 49:5

**grounds** [1] - 74:21

**guess** [9] - 8:10, 14:23, 20:19, 26:22, 28:18, 29:21, 78:3, 78:15, 86:11

**guest** [3] - 24:24, 25:17, 57:21

**guideline** [1] - 29:21

**guys** [4] - 3:5, 15:14, 47:12, 66:13

## H

**half** [3] - 14:10, 23:19, 47:7

**Hallborne** [1] - 73:18

**handed** [1] - 3:3
**handy** [1] - 59:1
**hanging** [1] - 31:24
**happy** [2] - 85:20, 86:18
**hard** [2] - 9:3, 77:12
**hat** [1] - 31:24
**hate** [1] - 45:6
**hazard** [2] - 36:13, 36:24
**hazards** [2] - 38:16, 39:10
**head** [1] - 85:13
**headway** [1] - 3:24
**hear** [41] - 4:23, 6:8, 7:18, 8:23, 10:11, 10:13, 11:25, 16:3, 17:15, 19:20, 21:16, 25:3, 26:19, 29:17, 33:17, 34:10, 34:13, 35:25, 39:3, 43:10, 48:23, 48:24, 48:25, 54:24, 61:9, 63:8, 67:21, 68:22, 69:16, 73:10, 75:25, 76:21, 78:24, 81:11, 81:16, 82:23, 83:1, 84:10, 86:19, 87:16, 88:14
**heard** [8] - 8:9, 8:10, 18:9, 29:19, 39:5, 53:16, 66:15, 84:19
**hearing** [18] - 2:19, 2:24, 3:7, 13:9, 23:19, 26:23, 29:22, 39:6, 49:10, 50:19, 50:20, 58:13, 61:23, 70:3, 70:5, 76:3, 86:2, 87:13
**HEARING** [1] - 1:10
**hearings** [6] - 58:10, 58:11, 86:24, 88:1, 88:7, 88:10
**help** [4] - 75:4, 77:21, 77:25, 88:11
**helpful** [4] - 58:5, 77:23, 78:1, 87:9
**helps** [1] - 73:23
**hereby** [1] - 89:3
**hesitancy** [1] - 86:22
**hesitation** [1] - 7:24
**higher** [1] - 25:10
**higher-up** [1] - 25:10
**HIPAA** [1] - 46:12
**history** [1] - 5:5
**hold** [21] - 4:16, 7:12, 12:18, 12:21, 13:1, 16:6, 16:12, 19:17, 28:8, 33:11, 33:15, 36:1, 43:19, 44:20, 47:20, 56:16, 57:4,

57:9, 58:3, 66:13
**holiday** [1] - 10:23
**Honor** [52] - 2:6, 3:21, 4:13, 4:24, 5:3, 6:9, 7:21, 9:14, 10:15, 10:25, 12:1, 17:16, 18:4, 22:1, 24:15, 25:4, 26:19, 26:20, 27:18, 29:18, 33:6, 34:11, 36:15, 42:14, 44:1, 46:10, 48:8, 48:22, 49:7, 50:3, 50:13, 50:15, 51:5, 52:7, 52:13, 54:11, 55:21, 58:24, 59:17, 60:3, 63:10, 65:17, 65:24, 68:23, 71:12, 76:1, 81:19, 83:2, 84:12, 86:1, 88:17, 88:18
**HONORABLE** [1] - 1:11
**hopefully** [2] - 46:14, 88:12
**hour** [6] - 2:25, 17:6, 29:21, 47:7, 58:9, 76:11
**hours** [4] - 14:15, 79:8, 87:6
**house** [3] - 14:1, 81:19, 82:6
**huge** [1] - 76:10

**I**

**idea** [3] - 18:15, 79:14, 83:9
**identification** [3] - 7:2, 9:7, 34:16
**identified** [21] - 5:13, 5:19, 7:16, 9:22, 10:5, 25:1, 30:22, 57:15, 59:15, 61:11, 64:11, 64:14, 66:6, 67:23, 68:5, 71:21, 74:9, 83:3, 83:19
**identifies** [1] - 35:3
**identify** [14] - 8:20, 9:11, 14:12, 14:16, 24:16, 35:8, 35:15, 36:24, 70:21, 70:22, 71:10, 81:15, 83:12
**identifying** [1] - 7:3
**imagine** [1] - 76:13
**IMO** [1] - 55:23
**important** [1] - 74:13
**impression** [1] - 67:13
**improper** [3] - 61:3,

62:18, 80:20
**in-camera** [5] - 27:17, 49:4, 51:16, 53:18, 54:12
**in-house** [3] - 14:1, 81:19, 82:6
**incident** [74] - 5:12, 5:15, 5:22, 7:23, 7:25, 8:22, 9:10, 11:23, 16:20, 20:4, 20:10, 20:12, 21:4, 21:7, 24:4, 24:17, 24:21, 24:22, 25:9, 25:19, 26:14, 26:24, 27:6, 27:8, 29:23, 30:20, 34:23, 38:19, 41:17, 47:9, 53:6, 53:20, 53:22, 54:13, 56:3, 56:4, 56:25, 60:13, 61:10, 62:12, 63:11, 63:12, 63:16, 64:1, 64:3, 64:4, 64:5, 64:10, 64:17, 65:7, 66:5, 66:9, 66:10, 66:23, 68:5, 69:2, 69:10, 69:22, 72:18, 74:18, 74:24, 75:13, 75:16, 76:16, 77:17, 78:8, 81:16, 81:22, 82:3, 82:8, 82:18, 82:19
**incidents** [50] - 10:15, 12:4, 14:5, 14:7, 25:11, 39:12, 47:11, 53:9, 60:6, 60:21, 60:24, 61:11, 61:16, 61:17, 61:22, 62:1, 62:6, 62:8, 62:20, 62:23, 63:2, 63:4, 64:11, 64:14, 64:20, 65:11, 65:13, 65:16, 65:18, 65:20, 66:2, 66:5, 66:18, 67:11, 67:16, 67:23, 68:5, 68:17, 74:16, 74:17, 74:25, 75:22, 76:4, 76:18, 77:3, 79:1, 79:11, 81:4, 81:10
**inclined** [4] - 40:17, 56:6, 77:19, 80:14
**include** [5] - 8:5, 32:21, 64:1, 64:4, 71:23
**includes** [2] - 72:23, 85:5
**including** [3] - 33:19, 70:16, 83:4
**incorrect** [1] - 30:17
**incorrectly** [1] -

50:20
**indication** [1] - 41:2
**indiscernible** [18] - 6:12, 7:6, 7:7, 19:5, 19:22, 20:21, 22:13, 33:2, 33:4, 33:23, 44:3, 47:1, 49:25, 54:5, 70:19, 73:2, 74:15, 85:18
**indiscernible]** [11] - 11:14, 16:4, 16:6, 18:16, 19:23, 26:18, 33:2, 35:15, 43:6, 71:11, 85:18
**information** [53] - 5:12, 7:15, 7:19, 7:20, 9:6, 9:7, 9:9, 10:19, 10:20, 11:7, 11:19, 14:8, 14:25, 15:1, 15:7, 15:14, 15:24, 16:2, 17:6, 19:19, 20:7, 25:15, 36:13, 37:5, 37:6, 37:13, 37:19, 41:1, 41:5, 41:7, 47:5, 47:9, 51:20, 60:11, 62:9, 63:3, 65:4, 68:6, 71:19, 71:20, 74:10, 74:12, 74:17, 74:20, 76:7, 80:5, 80:6, 80:12, 82:15, 82:23, 83:14
**informed** [1] - 75:7
**initial** [4] - 6:24, 7:5, 63:1, 69:4
**injured** [2] - 38:18, 41:12
**injuries** [4] - 28:23, 29:4, 31:1, 57:21
**injury** [28] - 5:8, 5:10, 15:4, 15:5, 47:1, 47:10, 47:16, 60:11, 64:9, 73:7, 73:13, 73:22, 74:8, 74:14, 76:20, 76:25, 77:1, 77:4, 77:22, 78:4, 78:11, 78:17, 79:2, 79:12, 79:17, 79:22, 80:1, 81:7
**Injury** [1] - 71:16
**input** [2] - 14:5, 78:18
**insight** [1] - 77:21
**inspect** [1] - 51:12
**inspection** [6] - 27:17, 44:19, 49:4, 51:17, 53:18, 54:12
**instance** [7] - 7:13, 11:11, 35:7, 44:16, 67:8, 67:10, 79:1

**insufficient** [1] - 72:21
**intention** [1] - 15:18
**interested** [2] - 64:8, 66:4
**interesting** [1] - 62:10
**interrogatories** [9] - 4:9, 4:17, 8:11, 11:20, 16:7, 16:8, 16:11, 21:2, 23:12
**Interrogatories** [1] - 4:11
**interrogatory** [17] - 5:4, 6:7, 6:11, 6:24, 8:12, 8:15, 8:25, 9:4, 9:17, 9:24, 13:19, 20:15, 20:18, 22:6, 23:16, 23:23
**Interrogatory** [2] - 8:18, 22:3
**interrupt** [1] - 52:12
**interviewed** [1] - 24:4
**investigating** [1] - 25:11
**investigation** [17] - 6:5, 7:5, 8:6, 9:16, 24:22, 25:6, 25:7, 25:8, 25:19, 26:3, 26:8, 26:10, 26:12, 26:16, 60:9, 70:10, 79:10
**investigative** [11] - 27:20, 31:17, 31:19, 31:22, 31:23, 32:6, 32:7, 32:17, 32:23, 39:21, 52:21
**investigator** [2] - 22:11, 22:14
**involved** [3] - 29:11, 42:18, 83:17
**irrelevant** [1] - 75:20
**Issue** [1] - 55:16
**issue** [40] - 4:12, 5:7, 8:3, 8:25, 9:11, 10:6, 15:4, 17:12, 21:17, 28:1, 38:17, 39:19, 39:22, 40:9, 40:17, 41:4, 42:10, 43:23, 49:1, 51:8, 52:17, 52:18, 53:21, 54:7, 55:18, 61:14, 61:19, 65:10, 67:13, 69:15, 71:1, 75:2, 76:2, 77:8, 77:10, 82:7, 83:6, 86:4, 86:10, 88:15
**issues** [19] - 3:24, 6:23, 9:3, 33:6, 37:7, 39:1, 39:11, 40:20,

40:21, 41:20, 41:21, 45:12, 45:16, 50:21, 50:22, 74:5, 75:10, 75:14, 86:15

**it'll** [4] - 15:19, 41:20, 80:2, 88:11

**item** [1] - 69:5

**Item** [1] - 73:6

**itself** [8] - 9:19, 25:7, 26:3, 26:13, 30:1, 31:8, 54:7, 64:5

## J

**J-A-R-N-A-G-I-N** [1] - 2:14

**JACQUELINE** [1] - 1:11

**January** [1] - 57:25

**JARNAGIN** [63] - 1:17, 2:7, 2:11, 2:13, 6:9, 7:21, 9:14, 10:10, 12:1, 13:23, 14:1, 17:16, 18:13, 19:13, 22:1, 25:4, 26:7, 26:15, 26:17, 27:18, 29:18, 34:11, 34:22, 39:5, 42:25, 43:11, 43:13, 44:1, 46:10, 46:23, 46:25, 48:8, 48:19, 49:7, 49:12, 49:17, 49:23, 50:15, 52:6, 52:24, 54:11, 63:10, 63:24, 64:16, 64:21, 65:17, 68:1, 68:20, 69:18, 70:1, 70:7, 76:1, 77:1, 77:8, 77:14, 78:7, 79:9, 79:19, 84:12, 84:19, 84:25, 85:4, 88:18

**Jarnagin** [18] - 2:7, 2:11, 6:9, 7:18, 9:13, 40:5, 46:13, 46:19, 48:18, 50:16, 65:24, 67:8, 67:11, 67:21, 68:10, 86:7, 86:8, 86:15

**JENNIFER** [1] - 1:4

**Jennifer** [3] - 2:2, 50:9, 50:14

**job** [8] - 30:6, 30:8, 30:11, 30:24, 31:7, 53:8, 54:6, 86:18

**Johnson** [1] - 73:19

**Judge** [3] - 12:20, 13:3, 21:6

**JUDGE** [1] - 1:11

**July** [2] - 4:18, 43:14

**jump** [1] - 36:9

**jumps** [2] - 5:23, 16:19

## K

**keep** [1] - 59:1

**kept** [2] - 31:21, 81:22

**kids** [1] - 4:4

**kind** [15] - 2:24, 3:2, 8:2, 18:20, 18:23, 24:5, 56:22, 57:13, 76:22, 78:5, 80:22, 85:7, 85:12, 85:16

**knowledge** [3] - 17:23, 62:24, 70:7

**known** [1] - 20:8

**knows** [4] - 9:2, 18:17, 55:21, 77:25

## L

**labeling** [1] - 57:9

**lack** [1] - 34:7

**landscape** [1] - 59:7

**language** [2] - 70:3, 80:21

**large** [2] - 39:13, 77:14

**last** [12] - 2:13, 12:14, 34:13, 49:1, 50:23, 61:23, 62:12, 62:13, 66:20, 66:22, 76:2, 85:16

**law** [5] - 21:17, 25:21, 61:15, 74:7, 78:14

**lawsuit** [1] - 62:13

**lawyer** [1] - 2:10

**lawyers** [4] - 40:7, 45:21, 85:17

**lay** [1] - 5:5

**laying** [1] - 5:24

**lead** [4] - 81:11, 82:16, 82:22

**leaf** [1] - 57:13

**learned** [1] - 36:14

**least** [11] - 2:23, 7:19, 20:12, 27:15, 32:11, 70:20, 74:25, 75:12, 75:22, 77:20, 87:1

**leave** [2] - 46:5, 83:15

**leaves** [1] - 45:25

**left** [2] - 42:13, 50:25

**legal** [2] - 27:19, 28:16

**lengthy** [1] - 55:7

**letter** [1] - 14:20

**letters** [1] - 11:2

**letting** [1] - 23:5

**Lexis** [1] - 73:17

**lifeguard** [26] - 7:14, 28:7, 28:8, 28:10, 28:11, 28:14, 28:18, 28:20, 29:1, 29:6, 29:7, 29:9, 29:20, 29:23, 30:23, 32:22, 52:15, 53:6, 53:8, 53:12, 53:13, 53:14, 53:20, 53:21, 54:13, 54:25

**lifeguards** [5] - 31:20, 31:25, 32:4, 32:13, 32:16

**light** [1] - 75:21

**likely** [1] - 60:16

**limit** [7] - 10:17, 23:24, 40:11, 41:13, 80:11, 80:14, 84:16

**limitation** [3] - 42:8, 62:20, 80:10

**limited** [5] - 24:6, 40:15, 41:10, 41:20, 75:19

**Limited** [2] - 2:8, 50:16

**limiting** [3] - 2:20, 40:9, 41:15

**line** [2] - 12:22, 39:4

**line's** [1] - 56:1

**lines** [3] - 20:20, 69:17, 76:16

**LISA** [2] - 1:20, 89:8

**list** [22] - 10:1, 13:22, 13:24, 22:24, 23:23, 44:17, 61:22, 62:1, 62:2, 62:5, 62:17, 65:11, 66:19, 70:21, 77:21, 79:5, 81:8, 83:4, 83:9, 85:1, 85:3

**listed** [10] - 7:14, 9:16, 9:17, 44:17, 58:22, 69:21, 69:22, 83:9, 83:23, 84:3

**Listen** [1] - 80:3

**listening** [1] - 66:13

**listing** [2] - 7:24, 22:15

**literally** [2] - 81:21, 87:15

**litigation** [27] - 9:21, 25:8, 25:23, 26:1, 26:4, 26:6, 26:8, 27:7, 28:16, 29:5, 29:14, 29:24, 30:5, 30:9, 31:2, 31:4, 31:13, 32:5, 32:9, 32:13, 39:12, 42:18, 53:23, 54:7, 54:19, 55:14, 62:14

**litigation's** [1] - 6:21

**location** [3] - 61:1, 74:24, 75:23

**lodged** [2] - 8:18, 68:18

**log** [24] - 9:18, 19:21, 19:22, 19:24, 19:25, 20:1, 24:13, 26:21, 37:5, 37:16, 41:22, 41:24, 42:12, 54:16, 69:8, 69:22, 70:10, 70:21, 71:4, 72:6, 72:20, 73:1, 73:3, 88:2

**logs** [2] - 68:24, 69:19

**Look** [3] - 32:12, 42:1, 82:20

**look** [49] - 2:17, 9:25, 10:1, 10:5, 11:11, 12:12, 13:12, 15:18, 15:21, 17:24, 19:3, 20:14, 21:15, 21:16, 22:18, 24:12, 24:14, 27:24, 28:2, 28:17, 29:8, 33:13, 35:9, 41:25, 42:1, 44:3, 50:22, 51:19, 53:1, 56:6, 56:7, 56:10, 56:13, 56:20, 56:23, 56:25, 57:22, 60:2, 60:7, 60:19, 66:8, 66:24, 71:14, 73:4, 73:6, 78:17, 81:6, 87:7, 87:25

**looked** [3] - 51:18, 51:19, 80:4

**looking** [24] - 3:14, 3:15, 4:16, 7:9, 9:4, 9:5, 11:17, 15:8, 16:14, 16:16, 19:20, 43:7, 43:11, 43:19, 54:16, 56:16, 57:18, 58:7, 58:12, 62:16, 74:16, 87:24, 88:4, 88:5

**looks** [4] - 13:13, 14:2, 23:5, 48:1

**loop** [1] - 32:3

**loss** [1] - 28:19

**LTD** [1] - 1:7

**Ltd** [2] - 2:2, 50:10

## M

**ma'am** [2] - 18:4, 58:24

**maintain** [1] - 84:22

**management** [1] - 60:4

**manager** [1] - 29:1

**manner** [1] - 8:2

**manual** [1] - 32:7

**manually** [1] - 78:8

**manufacturer** [3] - 36:18, 37:20, 83:6

**March** [1] - 57:22

**maritime** [1] - 61:15

**marry** [1] - 66:19

**Maryland** [1] - 13:14

**Material** [2] - 10:22, 62:4

**material** [3] - 28:12, 28:17, 75:21

**materials** [7] - 9:16, 56:11, 57:8, 71:18, 76:8, 87:5, 87:11

**matter** [6] - 14:4, 15:4, 16:5, 37:24, 81:21, 89:5

**matters** [1] - 35:20

**MD** [1] - 13:14

**mean** [35] - 8:1, 12:8, 13:11, 13:19, 14:6, 15:2, 15:9, 20:15, 26:25, 27:4, 27:9, 30:8, 30:13, 32:1, 35:1, 35:10, 35:13, 39:13, 39:24, 41:24, 44:15, 45:12, 47:17, 49:15, 49:18, 52:22, 55:2, 72:1, 76:13, 76:21, 77:10, 78:18, 80:16, 81:6, 84:3

**means** [2] - 24:23, 39:25

**media** [2] - 76:9, 76:12

**medical** [4] - 35:3, 46:5, 48:12, 85:5

**meet** [3] - 27:14, 85:8, 85:14

**meet-and-confer** [1] - 85:14

**meet-and-confers** [1] - 85:8

**meeting** [49] - 55:22, 56:2, 56:3, 56:11, 56:24, 57:25, 59:15, 60:3, 60:5, 60:12, 60:14, 60:16, 60:18, 60:22, 60:24, 61:16, 62:16, 62:24, 62:25, 63:14, 63:18, 63:25, 64:2, 64:13, 64:16, 64:18, 64:22, 64:25,

65:1, 65:3, 65:12, 65:16, 65:19, 65:22, 66:4, 66:11, 66:17, 66:25, 67:4, 67:7, 67:16, 67:17, 67:18, 67:23, 68:16, 69:11, 71:16, 71:19

**meetings** [4] - 56:4, 56:20, 56:21, 67:19

**members** [1] - 22:4

**memoranda** [3] - 38:15, 39:1, 41:10

**memorializes** [1] - 26:11

**memorializing** [4] - 24:22, 25:19, 26:14, 53:5

**mentioned** [3] - 30:24, 64:18, 83:7

**mere** [1] - 31:2

**merited** [1] - 54:20

**merits** [1] - 55:13

**met** [1] - 27:12

**MIAMI** [1] - 1:2

**Miami** [2] - 1:4, 1:15

**might** [13] - 14:19, 19:3, 24:19, 31:18, 34:2, 35:11, 57:15, 72:5, 76:22, 77:12, 80:12, 85:19, 85:22

**mind** [2] - 17:25, 22:6

**mindful** [1] - 87:22

**minute** [7] - 13:2, 36:2, 38:14, 56:11, 59:4, 64:25, 71:8

**minutes** [45] - 3:6, 50:4, 55:22, 56:2, 56:3, 56:24, 57:1, 60:5, 60:12, 60:14, 60:16, 60:19, 60:22, 60:25, 61:16, 62:17, 62:24, 62:25, 63:11, 63:14, 63:19, 63:23, 63:25, 64:2, 64:13, 64:16, 64:18, 64:22, 65:2, 65:3, 65:19, 65:22, 66:4, 66:12, 66:17, 67:16, 67:17, 67:18, 67:19, 69:12, 71:16, 71:19, 79:7, 79:15

**mirrors** [1] - 25:9

**missed** [1] - 85:25

**missing** [4] - 14:3, 14:10, 17:3, 68:9

**mistaken** [2] - 47:11, 51:1

**misunderstanding** [1] - 66:1

**misunderstood** [1] - 71:24

**modifications** [1] - 38:4

**moment** [2] - 17:2, 17:10

**Monday** [2] - 46:15, 49:4

**Monday's** [1] - 48:4

**month** [3] - 60:15, 79:17, 80:6

**months** [1] - 34:12

**moot** [1] - 44:22

**morning** [1] - 28:18

**most** [2] - 21:20, 87:9

**motion** [24] - 7:1, 8:13, 8:18, 9:23, 14:22, 19:5, 19:6, 19:14, 22:19, 24:10, 33:1, 44:2, 44:13, 47:3, 53:4, 68:4, 68:7, 68:13, 70:15, 71:5, 72:22, 79:21, 79:23, 85:6

**move** [3] - 13:7, 28:1, 35:18

**moved** [1] - 47:5

**moving** [4] - 3:16, 34:18, 45:6, 83:5

**MR** [178] - 2:5, 2:7, 2:11, 2:13, 3:18, 4:3, 4:13, 4:15, 4:24, 6:9, 7:10, 7:13, 7:21, 8:24, 9:14, 10:10, 10:11, 10:14, 11:4, 11:6, 11:15, 11:18, 12:1, 12:10, 12:12, 12:17, 12:23, 13:16, 13:19, 13:23, 14:1, 15:2, 15:11, 16:9, 16:17, 17:16, 18:2, 18:4, 18:13, 19:10, 19:13, 19:24, 21:3, 22:1, 24:15, 25:4, 26:7, 26:15, 26:17, 26:19, 27:18, 28:6, 28:11, 29:18, 30:16, 30:18, 33:5, 33:9, 33:13, 33:18, 34:9, 34:11, 34:22, 35:17, 36:3, 36:5, 36:12, 36:14, 37:23, 38:22, 39:5, 40:4, 42:14, 42:16, 42:25, 43:7, 43:11, 43:13, 44:1, 44:12, 44:23, 45:4, 45:11, 46:2, 46:7, 46:10, 46:13, 46:23, 46:25, 47:1, 47:3, 47:15,

48:3, 48:6, 48:8, 48:12, 48:17, 48:19, 48:22, 49:7, 49:12, 49:17, 49:23, 50:3, 50:13, 50:15, 51:5, 52:6, 52:10, 52:12, 52:15, 52:24, 53:3, 54:11, 55:2, 55:17, 55:21, 56:22, 57:6, 57:12, 57:15, 57:17, 57:23, 58:6, 58:14, 58:19, 58:22, 58:24, 59:1, 59:6, 59:9, 59:17, 59:21, 59:25, 60:2, 61:13, 61:19, 61:24, 62:2, 62:7, 63:10, 63:24, 64:16, 64:21, 65:17, 65:24, 67:6, 68:1, 68:20, 68:23, 69:18, 70:1, 70:7, 71:12, 71:14, 71:24, 73:11, 74:19, 76:1, 77:1, 77:8, 77:14, 78:7, 78:13, 79:9, 79:19, 81:2, 81:18, 83:2, 84:6, 84:9, 84:12, 84:19, 84:25, 85:4, 86:1, 88:17, 88:18

**multiple** [6] - 3:17, 5:9, 6:5, 20:7, 40:7, 83:17

**muscle** [2] - 35:23, 36:4

## N

**name** [9] - 2:9, 2:13, 2:14, 10:19, 12:2, 12:3, 36:16, 40:5, 51:14

**names** [2] - 11:8, 38:6

**Nandan** [2] - 7:13, 29:7

**narrative** [4] - 7:24, 20:4, 20:10, 21:7

**narrow** [7] - 40:1, 40:8, 40:14, 40:18, 40:19, 65:10, 77:21

**narrowed** [1] - 39:25

**narrowing** [1] - 78:1

**nature** [2] - 42:4, 80:15

**NCL** [2] - 21:5, 21:6

**necessarily** [6] - 20:19, 24:1, 32:1, 54:1, 73:25, 80:11

**necessary** [1] - 82:24

**need** [18] - 10:7, 21:12, 21:14, 49:3, 49:12, 52:5, 59:11, 61:25, 65:15, 73:25, 75:12, 78:18, 79:11, 83:24, 83:25, 84:5, 84:6, 85:11

**needed** [1] - 52:19

**needs** [3] - 51:25, 70:11, 76:25

**negligence** [1] - 35:11

**negligent** [1] - 33:20

**negotiate** [1] - 85:11

**never** [4] - 47:6, 56:4, 60:11, 84:23

**new** [5] - 58:16, 70:11, 70:12, 87:11, 87:12

**next** [9] - 5:23, 45:5, 45:10, 46:1, 46:15, 46:21, 47:21, 47:23, 48:1

**NICHOLAS** [1] - 1:14

**Nicholas** [2] - 2:5, 50:13

**night** [1] - 87:1

**nine** [2] - 14:6, 57:22

**nine-page** [1] - 14:6

**NO** [1] - 1:2

**no/no** [1] - 62:13

**non** [1] - 71:11

**non-privileged** [1] - 71:11

**none** [6] - 12:13, 12:17, 21:10, 33:24, 63:5, 69:14

**nonlawyers** [1] - 26:5

**North** [1] - 1:18

**notes** [23] - 2:21, 16:12, 51:9, 52:22, 53:17, 55:15, 60:3, 65:12, 65:16, 66:19, 66:20, 66:22, 66:25, 67:4, 67:7, 67:23, 68:16, 68:24, 69:8, 69:20, 87:17

**nothing** [5] - 8:1, 11:12, 19:3, 19:9, 58:16

**notice** [18] - 2:18, 2:21, 2:22, 3:13, 3:21, 3:22, 4:6, 4:17, 26:21, 48:25, 50:24, 61:14, 63:6, 70:4, 74:13, 76:2, 85:25, 86:1

**noticed** [1] - 37:25

**notices** [1] - 3:9

**November** [2] -

56:12, 57:23

**number** [25] - 3:12, 12:4, 12:5, 12:8, 13:20, 14:12, 14:17, 15:1, 15:6, 20:6, 33:18, 47:17, 56:17, 56:23, 57:10, 58:21, 60:24, 62:7, 67:2, 67:3, 69:2, 75:11, 81:20, 82:20, 83:22

**numbers** [5] - 11:8, 11:9, 12:17, 14:3, 14:10

## O

**oath** [2] - 23:12, 23:14

**object** [5] - 10:2, 37:4, 43:21, 43:22, 74:20

**objected** [7] - 5:4, 9:12, 34:12, 37:3, 37:15, 38:1, 47:4

**objection** [34] - 8:17, 9:19, 9:25, 19:15, 19:19, 19:22, 24:11, 39:9, 39:13, 43:8, 47:13, 53:5, 61:3, 62:17, 62:21, 64:12, 67:22, 67:24, 68:2, 68:7, 68:18, 69:12, 72:7, 73:11, 74:1, 74:2, 74:3, 74:19, 75:17, 78:20, 78:22, 80:15, 80:17, 84:22

**objections** [4] - 38:14, 38:21, 39:24, 44:6

**objects** [1] - 5:13

**obligation** [3] - 30:25, 35:6, 83:12

**observation** [1] - 60:8

**observations** [3] - 7:10, 7:17, 8:6

**observed** [2] - 8:1, 24:5

**obstructed** [1] - 16:24

**obviously** [9] - 6:21, 8:15, 18:22, 22:20, 28:2, 43:23, 51:14, 51:21, 81:2

**occurred** [6] - 5:1, 5:12, 34:23, 64:3, 74:24, 75:14

**occurring** [1] - 5:15

**OF** [1] - 1:1

**offered** [2] - 77:2, 80:10
**office** [8] - 46:7, 48:21, 58:4, 65:2, 68:10, 68:16, 81:20, 82:6
**officer** [13] - 18:12, 19:18, 24:3, 24:25, 25:5, 25:17, 25:18, 26:7, 51:15, 68:24, 69:8, 69:19, 69:23
**officers** [4] - 7:3, 7:4, 25:10, 30:10
**old** [4] - 50:24, 58:7, 87:17, 87:20
**older** [1] - 14:4
**once** [1] - 45:6
**one** [57] - 3:14, 3:15, 4:18, 4:22, 6:15, 11:17, 12:14, 13:7, 13:13, 15:17, 16:1, 18:1, 18:6, 21:14, 21:21, 22:18, 23:12, 23:18, 23:19, 27:3, 27:4, 28:3, 32:19, 35:4, 35:16, 36:1, 36:2, 38:21, 42:14, 45:12, 46:4, 47:13, 47:14, 47:17, 51:12, 53:2, 53:3, 53:14, 54:8, 54:10, 56:23, 58:7, 58:17, 58:18, 59:14, 60:24, 67:2, 67:19, 67:21, 71:12, 75:11, 79:6, 81:1, 86:20, 86:25
**one-half** [1] - 23:19
**one-page** [1] - 27:3
**ones** [4] - 4:11, 13:11, 33:7, 81:12
**ongoing** [1] - 38:3
**open** [1] - 43:23
**operating** [1] - 50:24
**oppose** [1] - 44:13
**opposed** [2] - 24:7, 55:4
**opposite** [1] - 80:18
**order** [35] - 4:2, 4:5, 17:13, 18:19, 18:20, 19:17, 21:12, 27:23, 33:24, 36:10, 45:3, 45:5, 45:9, 45:24, 46:24, 47:5, 47:6, 47:12, 47:16, 47:19, 49:8, 49:16, 49:19, 49:20, 49:22, 50:1, 51:6, 51:10, 66:25, 68:14, 76:3, 77:19, 80:7, 88:15
**ordered** [1] - 21:6

**orders** [1] - 3:10
**ordinary** [3] - 24:18, 29:2, 55:25
**original** [2] - 58:17, 58:18
**otherwise** [4] - 8:2, 9:17, 14:19, 69:23
**outlines** [1] - 57:2
**outstanding** [1] - 50:23
**overbroad** [11] - 39:10, 39:17, 39:18, 61:4, 62:19, 74:2, 74:21, 75:18, 76:24, 78:23, 80:21
**overlap** [1] - 22:9
**overlaps** [1] - 22:2
**overly** [2] - 41:1, 41:3
**overrule** [3] - 19:15, 24:10, 53:4
**overruled** [4] - 72:7, 74:2, 74:3, 74:6
**oversight** [1] - 46:7
**own** [7] - 15:15, 38:10, 63:15, 63:16, 64:8, 76:16, 82:2

## P

**P.A** [1] - 1:17
**p.m** [2] - 58:19, 58:20
**page** [8] - 12:12, 14:6, 14:10, 27:3, 27:4, 29:8, 33:12, 57:5
**Page** [10] - 28:21, 57:1, 60:7, 60:18, 60:19, 71:16, 71:21
**pages** [2] - 31:12, 60:20
**Pages** [1] - 1:8
**Palm** [1] - 1:19
**panned** [1] - 20:20
**paper** [1] - 16:6
**paperless** [4] - 49:15, 49:20, 49:21, 88:15
**paralegal's** [1] - 4:3
**part** [29] - 14:22, 21:20, 23:9, 23:22, 26:12, 30:6, 30:8, 30:11, 31:7, 31:16, 31:19, 31:21, 31:22, 32:5, 32:17, 32:20, 32:22, 32:24, 41:9, 47:9, 52:20, 54:3, 54:6, 61:19, 66:11,

71:17, 79:4
**partial** [1] - 56:11
**particular** [10] - 17:19, 20:2, 26:24, 28:13, 37:14, 56:4, 56:24, 64:6, 65:1, 66:7
**particularly** [2] - 81:16, 82:21
**parties** [4] - 2:17, 18:24, 45:17, 86:25
**parties'** [1] - 3:5
**party** [1] - 18:15
**passenger** [25] - 12:6, 15:4, 15:5, 15:22, 47:10, 47:16, 73:7, 73:13, 73:22, 74:8, 74:12, 74:14, 74:15, 76:20, 76:25, 77:1, 77:4, 77:22, 78:4, 78:10, 79:2, 79:17, 79:22, 80:1, 81:7
**passengers'** [1] - 79:12
**past** [3] - 67:5, 67:7, 72:12
**paying** [1] - 33:19
**pdf** [5] - 57:9, 57:15, 58:22, 87:21
**PELL** [1] - 1:4
**Pell** [5] - 2:2, 50:9, 50:14, 63:19, 67:1
**Pell's** [9] - 62:11, 63:12, 63:15, 64:1, 64:4, 64:13, 64:17, 65:7
**people** [24] - 6:5, 7:11, 7:16, 8:15, 11:10, 12:3, 14:13, 14:16, 14:23, 17:23, 24:23, 28:12, 38:7, 44:17, 45:15, 53:14, 76:9, 76:14, 83:3, 83:13, 83:23, 83:24, 85:2
**percent** [4] - 12:4, 12:8, 14:7, 88:7
**perform** [1] - 38:12
**performing** [1] - 26:10
**period** [4] - 57:20, 64:6, 66:18, 76:4
**permissible** [1] - 34:3
**person** [6] - 22:11, 24:2, 24:5, 24:6, 24:25, 58:3
**personal** [1] - 17:23
**personally** [1] -

22:15
**personnel** [1] - 27:13
**persons** [2] - 8:6, 83:8
**perspective** [2] - 27:19, 74:11
**pertaining** [2] - 39:15, 43:15
**pertains** [1] - 9:19
**phone** [17] - 11:8, 12:3, 12:5, 12:8, 12:17, 13:16, 13:20, 13:24, 14:3, 14:10, 14:12, 14:17, 15:1, 15:6, 47:8, 86:14
**photograph** [1] - 82:13
**photographs** [14] - 37:10, 38:6, 73:9, 74:22, 75:1, 76:22, 79:23, 79:25, 81:4, 82:4, 82:12, 82:17, 82:24
**physical** [1] - 12:6
**picture** [2] - 58:1, 59:15
**pictures** [1] - 77:12
**pieces** [1] - 83:5
**place** [2] - 38:12, 45:22
**places** [2] - 22:21, 23:4
**Plaintiff** [12] - 1:5, 2:4, 2:6, 3:11, 6:16, 38:18, 41:12, 50:12, 50:14, 77:20, 77:25, 80:11
**PLAINTIFF** [1] - 1:14
**Plaintiff's** [5] - 33:4, 34:15, 34:22, 62:3, 77:16
**pleased** [1] - 50:20
**point** [15] - 9:4, 11:18, 14:24, 18:17, 22:7, 26:20, 27:24, 28:1, 31:18, 32:10, 32:11, 53:24, 56:22, 60:23, 81:18
**pointed** [2] - 53:7, 67:7
**policies** [2] - 17:5, 82:2
**polled** [1] - 30:10
**pool** [2] - 6:17, 16:22
**portion** [8] - 17:14, 20:4, 20:10, 20:12, 21:3, 21:9, 75:12, 81:4
**portions** [1] - 51:23
**position** [12] - 3:19,

6:10, 21:3, 25:2, 25:12, 28:25, 30:19, 30:23, 34:14, 74:7, 84:1, 86:11
**possession** [1] - 65:6
**precipitated** [1] - 37:11
**precise** [2] - 17:2, 17:10
**predicate** [1] - 37:9
**prefer** [1] - 28:1
**preference** [1] - 49:20
**prejudice** [2] - 10:17, 38:23
**premature** [1] - 84:13
**prepare** [6] - 2:20, 30:6, 30:11, 53:9, 82:3, 87:23
**prepared** [13] - 25:22, 26:5, 30:4, 30:9, 30:23, 31:13, 31:16, 40:1, 53:22, 55:25, 87:4, 88:11, 88:12
**preparing** [1] - 30:5
**present** [2] - 22:12, 65:25
**preserved** [1] - 17:18
**presume** [1] - 24:24
**pretty** [7] - 25:21, 37:17, 43:8, 46:4, 49:25, 55:6, 85:9
**prevent** [1] - 5:15
**previous** [1] - 64:14
**previously** [2] - 22:3, 58:15
**print** [12] - 56:18, 57:10, 57:16, 57:18, 59:4, 59:7, 59:13, 59:20, 79:8, 80:9, 87:20, 88:9
**printed** [5] - 48:24, 54:10, 57:5, 57:19, 57:20
**printing** [3] - 82:12, 87:22, 87:23
**printout** [1] - 70:2
**privilege** [30] - 9:17, 19:21, 19:22, 19:24, 19:25, 20:16, 20:22, 21:1, 21:17, 24:13, 25:23, 25:24, 26:21, 27:5, 27:14, 37:4, 37:5, 37:16, 41:22, 41:24, 51:22, 54:16, 69:22, 70:21, 71:4, 72:6, 73:1, 73:3, 74:8

**privileged** [33] - 7:23, 19:19, 20:3, 20:11, 21:19, 22:17, 24:18, 24:19, 25:12, 25:15, 26:13, 26:25, 27:20, 28:15, 30:1, 30:13, 31:24, 32:2, 41:23, 42:2, 42:3, 42:4, 42:6, 42:12, 47:17, 71:4, 71:11, 72:5, 72:19, 72:25, 73:14, 75:24

**problem** [7] - 9:25, 16:13, 17:21, 22:22, 30:7, 43:21, 64:19

**procedures** [2] - 17:5, 82:2

**proceedings** [3] - 50:6, 88:19, 89:4

**process** [4] - 76:17, 77:11, 78:5, 78:19

**produce** [17] - 14:18, 17:8, 21:7, 32:18, 32:23, 41:1, 41:22, 56:2, 63:22, 63:24, 65:3, 67:14, 72:9, 74:8, 76:3, 78:15, 81:4

**produced** [27] - 10:21, 11:6, 12:9, 16:21, 17:14, 21:5, 29:9, 29:16, 38:2, 43:15, 60:17, 65:1, 65:4, 65:5, 65:11, 65:14, 65:17, 65:18, 66:9, 68:11, 68:12, 69:6, 71:2, 72:10, 74:22, 75:3, 75:5

**producing** [6] - 39:14, 64:12, 64:19, 67:22, 74:20, 76:18

**product** [13] - 9:20, 19:15, 24:10, 31:5, 31:8, 37:15, 51:22, 53:10, 55:10, 70:13, 73:14, 73:23, 74:1

**Production** [2] - 18:8, 63:17

**production** [9] - 9:8, 24:10, 26:22, 44:7, 65:21, 65:22, 69:21, 70:12, 73:23

**progression** [1] - 5:6

**project** [5] - 36:22, 37:10, 38:3, 39:7, 39:15

**pronounce** [1] - 40:5

**properly** [1] - 7:25

**proportional** [3] - 62:22, 76:24, 78:23

**proportionality** [1] - 61:6

**proposal** [1] - 39:6

**proposals** [1] - 3:10

**proposed** [11] - 3:10, 4:1, 4:5, 36:9, 45:3, 45:5, 45:9, 45:24, 51:6, 51:10

**propounded** [1] - 5:4

**protected** [10] - 9:7, 9:8, 9:9, 21:4, 27:8, 29:12, 30:21, 41:5, 41:6

**protective** [7] - 46:24, 47:5, 47:6, 47:12, 47:16, 47:19, 76:3

**provide** [15] - 7:15, 8:14, 8:17, 11:7, 11:19, 13:19, 15:18, 33:10, 33:21, 43:22, 44:23, 53:11, 61:20, 63:13, 69:7

**provided** [25] - 10:18, 12:13, 17:18, 18:10, 19:2, 20:13, 21:11, 29:21, 46:8, 51:13, 51:16, 51:18, 51:25, 52:16, 53:1, 54:14, 56:5, 61:15, 63:12, 63:20, 65:21, 67:16, 67:17, 67:18

**providers** [1] - 85:5

**provides** [1] - 60:10

**providing** [1] - 77:10

**pull** [3] - 57:7, 81:12, 81:17

**pulled** [4] - 45:21, 56:14, 62:15, 79:12

**pulling** [2] - 81:14, 82:6

**purposes** [2] - 6:23, 10:3

**pursue** [1] - 31:2

**push** [1] - 36:6

**put** [17] - 3:11, 8:11, 13:21, 16:6, 37:5, 37:16, 41:5, 41:22, 41:23, 42:3, 42:12, 51:15, 71:4, 72:6, 72:19, 76:2, 76:12

**puzzle** [1] - 44:4

## Q

**query** [2] - 79:6, 79:7

**quite** [6] - 36:20, 61:1, 76:23, 78:20, 85:15, 88:5

**quote** [1] - 7:14

## R

**raised** [1] - 75:15

**random** [1] - 81:12

**rarely** [1] - 87:2

**rate** [1] - 56:10

**rather** [1] - 76:17

**RCCL** [1] - 7:8

**RDR** [2] - 1:20, 89:8

**reach** [1] - 14:23

**read** [3] - 11:2, 13:11, 29:19

**readily** [1] - 14:17

**reading** [1] - 25:16

**ready** [4] - 33:25, 34:6, 87:1, 87:2

**real** [1] - 41:4

**really** [13] - 2:19, 22:7, 22:9, 36:6, 36:19, 45:7, 55:12, 66:13, 72:11, 78:1, 80:12, 80:16, 86:20

**reason** [7] - 19:17, 28:19, 39:13, 63:19, 75:15, 87:6, 87:25

**reasonable** [5] - 45:8, 45:9, 45:20, 45:23, 80:10

**reasons** [2] - 5:21, 45:14

**receive** [1] - 68:25

**received** [2] - 14:2, 21:14

**recess** [1] - 35:21

**recitation** [1] - 23:6

**recognize** [1] - 77:4

**recollection** [2] - 54:11, 54:15

**reconsider** [1] - 80:7

**record** [9] - 2:3, 8:20, 10:3, 17:6, 22:20, 29:15, 35:4, 50:11, 82:1

**RECORDING** [1] - 1:10

**recording** [4] - 12:15, 12:21, 13:3, 75:9

**recordkeeping** [1] - 35:23

**records** [11] - 9:1, 9:10, 14:17, 15:21, 33:15, 34:20, 34:21, 35:15, 69:5, 83:4, 85:5

**redact** [4] - 22:23, 23:10, 52:1, 52:9

**redacted** [8] - 20:25, 21:20, 23:17, 27:9, 51:24, 52:4, 55:5, 65:3

**redacting** [1] - 20:21

**redaction** [1] - 55:9

**redactions** [1] - 23:3

**refer** [4] - 36:24, 38:15, 41:10, 56:3

**reference** [9] - 16:21, 21:5, 27:3, 31:4, 53:8, 58:16, 59:2, 60:7, 65:20

**referenced** [3] - 6:6, 60:21, 69:4

**references** [5] - 36:19, 63:2, 63:14, 67:11, 73:18

**referencing** [1] - 43:5

**referred** [2] - 5:20, 32:6

**referring** [5] - 6:14, 6:17, 63:1, 70:8, 71:15

**refers** [2] - 43:14, 44:5

**reflect** [1] - 4:6

**refurbishment** [1] - 40:22

**regard** [2] - 12:7, 63:14

**regarding** [9] - 6:14, 8:21, 12:3, 39:6, 39:14, 40:21, 43:1, 49:8, 69:19

**regulatory** [1] - 55:23

**rehear** [1] - 46:21

**relate** [2] - 36:25, 38:15

**related** [10] - 37:7, 38:16, 38:23, 38:24, 39:1, 39:11, 39:19, 40:15, 63:11

**relates** [3] - 27:7, 29:23, 47:8

**relatively** [1] - 82:7

**relevance** [1] - 75:11

**relevant** [16] - 24:8, 62:24, 65:4, 66:24, 74:5, 75:1, 75:10, 75:11, 75:21, 76:18, 81:11, 81:16, 82:14, 82:16, 82:22, 82:23

**Reliance** [2] - 10:22, 62:3

**reliance** [5] - 28:12, 28:17, 56:11, 57:8, 71:17

**relief** [1] - 18:21

**relying** [2] - 9:1, 88:8

**remains** [1] - 34:14

**remark** [1] - 62:21

**remotely** [1] - 28:12

**renotice** [2] - 50:20, 51:3

**repair** [13] - 40:22, 41:11, 41:14, 41:20, 41:21, 42:8, 42:10, 42:11, 42:16, 42:19, 42:20, 42:21, 43:3

**repairs** [3] - 38:4, 38:5, 83:19

**replace** [2] - 42:19, 43:4

**replaced** [1] - 40:11

**replacement** [11] - 40:22, 41:11, 41:14, 41:20, 41:21, 42:8, 42:11, 42:16, 42:21, 42:22

**report** [74] - 7:6, 7:7, 7:23, 9:5, 11:23, 15:22, 19:18, 20:4, 20:11, 20:12, 20:16, 20:17, 20:21, 20:22, 20:25, 21:1, 21:4, 21:7, 21:19, 21:20, 22:7, 22:14, 22:15, 22:16, 22:23, 23:1, 23:4, 23:7, 23:10, 23:11, 23:15, 23:17, 23:25, 24:19, 25:9, 25:21, 26:3, 27:6, 28:7, 28:9, 28:10, 28:11, 28:14, 29:3, 29:6, 29:10, 29:11, 29:23, 29:25, 30:20, 30:25, 31:11, 31:22, 31:23, 32:6, 32:22, 41:17, 52:16, 53:6, 53:9, 53:12, 53:13, 53:20, 53:22, 54:13, 54:25, 60:8, 60:9, 69:22, 78:17, 82:3, 82:18, 82:19

**Reporterlisaedwards@gmail.com** [2] - 1:21, 89:8

**reporting** [1] - 28:22

**reports** [16] - 7:25, 9:20, 21:18, 21:23, 21:25, 22:25, 25:22, 30:11, 31:20, 32:22, 39:21, 68:25, 69:8, 69:20, 77:13, 82:9

**represent** [2] - 23:11, 52:20

**representation** [6] -

18:12, 18:15, 53:24, 65:13, 80:1, 80:23

**representations** [2] - 20:5, 20:8

**representative** [1] - 73:24

**represented** [1] - 67:12

**representing** [1] - 67:15

**request** [32] - 8:1, 8:5, 16:1, 17:25, 18:1, 18:2, 18:22, 18:25, 19:1, 20:2, 24:13, 33:3, 37:6, 39:17, 39:25, 40:1, 40:2, 41:9, 43:15, 47:3, 47:8, 59:12, 61:8, 68:19, 69:19, 69:24, 70:1, 70:11, 70:12, 73:13, 76:24, 85:23

**Request** [8] - 18:7, 19:16, 24:16, 47:9, 56:1, 63:17

**requested** [2] - 14:8, 51:19

**requesting** [2] - 8:4, 76:8

**Requests** [1] - 33:1

**requests** [2] - 18:3, 87:15

**require** [4] - 18:6, 18:7, 76:22, 77:12

**required** [9] - 29:3, 31:7, 31:25, 32:1, 32:4, 52:20, 55:22, 56:1, 67:13

**requirements** [1] - 61:6

**requires** [1] - 55:24

**resend** [1] - 59:17

**reset** [5] - 3:1, 35:18, 48:1, 48:20, 48:21

**resistant** [2] - 42:20, 43:2

**resolution** [1] - 85:22

**resolve** [4] - 2:23, 85:19, 85:20, 85:21

**resolved** [2] - 50:21, 85:21

**respect** [19] - 5:7, 20:2, 26:24, 42:16, 55:3, 59:11, 60:12, 62:11, 64:13, 66:2, 66:7, 67:1, 69:1, 69:10, 73:12, 75:2, 81:2, 86:3

**respectfully** [1] - 22:2

**respond** [5] - 8:2, 32:14, 34:17, 39:17, 49:19

**responded** [1] - 80:19

**response** [25] - 6:13, 7:5, 8:22, 9:15, 9:21, 10:7, 18:1, 19:6, 19:15, 24:16, 33:1, 33:23, 43:18, 63:16, 69:1, 69:13, 70:18, 70:19, 70:20, 72:4, 72:21, 73:2, 73:5, 75:20

**Response** [1] - 43:14

**responses** [2] - 72:8, 73:4

**responsibilities** [4] - 28:20, 29:1, 29:3, 29:8

**responsibility** [1] - 6:21

**responsive** [5] - 34:24, 39:24, 41:19, 60:14, 69:24

**rest** [1] - 46:21

**result** [2] - 25:7, 61:5

**results** [1] - 76:5

**resurfacing** [1] - 39:15

**retention** [1] - 57:20

**Review** [1] - 71:17

**review** [5] - 60:8, 64:16, 69:4, 76:22, 81:9

**reviewed** [1] - 49:5

**Reyes** [2] - 21:6, 21:12

**rid** [1] - 36:10

**Riskonnect** [15] - 60:8, 60:11, 69:3, 69:4, 69:10, 70:4, 70:6, 70:9, 70:11, 70:16, 71:16, 71:19, 71:20, 72:3, 72:23

**rotate** [1] - 59:5

**route** [1] - 46:18

**routine** [1] - 55:22

**Royal** [58] - 2:7, 2:10, 6:8, 11:21, 11:25, 13:21, 14:11, 14:21, 15:13, 15:17, 15:19, 16:2, 17:5, 17:15, 18:8, 18:25, 21:16, 21:24, 23:23, 24:24, 25:3, 26:9, 27:16, 29:17, 34:10, 41:15, 42:24, 43:10, 46:3, 50:9, 50:16, 54:3, 54:20, 63:8, 65:2,

65:5, 68:15, 69:17, 69:18, 70:2, 70:9, 70:13, 70:17, 73:15, 73:16, 75:6, 76:6, 78:5, 78:16, 79:16, 81:19, 82:6, 83:3, 84:1, 84:10, 84:21, 86:20

**ROYAL** [1] - 1:7

**Rule** [1] - 83:12

**rule** [5] - 40:18, 71:5, 83:21, 84:2

**ruled** [7] - 52:18, 53:19, 71:22, 72:1, 73:14, 73:22, 85:15

**rules** [1] - 34:3

**ruling** [3] - 72:24, 81:3, 81:25

**rulings** [1] - 88:13

---

### S

---

**safe** [2] - 79:19, 88:14

**safety** [57] - 7:3, 19:18, 27:13, 36:13, 36:24, 37:7, 38:15, 38:16, 38:23, 38:24, 39:1, 39:10, 40:20, 40:21, 55:22, 56:2, 56:3, 56:4, 56:11, 56:20, 56:24, 57:1, 57:24, 59:22, 60:3, 60:5, 60:12, 60:14, 60:18, 60:22, 61:15, 62:16, 62:23, 62:25, 63:14, 63:25, 64:12, 64:22, 65:12, 65:16, 66:4, 66:11, 66:16, 67:4, 67:6, 67:16, 67:17, 67:18, 67:19, 67:22, 68:16, 68:24, 69:5, 69:8, 69:11, 71:16, 71:18

**Safety** [1] - 56:19

**safety-related** [4] - 38:16, 38:23, 38:24, 39:1

**sake** [2] - 35:17, 35:22

**sanction** [1] - 18:20

**sat** [1] - 45:7

**satisfied** [2] - 16:2, 21:1

**satisfy** [1] - 61:6

**saw** [6] - 8:9, 22:5, 22:11, 24:3, 24:6, 87:11

**scary** [1] - 8:10

**scene** [2] - 7:17, 53:15

**school** [1] - 87:20

**SCHWARTZ** [1] - 1:14

**scope** [9] - 24:19, 29:2, 38:20, 55:25, 61:4, 62:19, 74:3, 74:21, 75:18

**scrambling** [1] - 2:24

**scratched** [1] - 85:13

**screen** [2] - 47:25, 59:5

**scroll** [1] - 60:9

**search** [2] - 65:15, 78:8

**Seas** [3] - 5:2, 57:24, 65:6

**second** [8] - 12:22, 16:6, 18:5, 28:10, 32:24, 36:1, 47:25, 87:20

**security** [13] - 24:3, 24:25, 25:5, 25:10, 25:17, 25:18, 26:7, 30:10, 51:15, 69:19, 69:23

**see** [36] - 5:6, 8:17, 10:18, 13:10, 15:16, 16:23, 19:12, 20:11, 21:9, 21:12, 22:12, 22:15, 23:17, 23:21, 23:25, 27:11, 43:21, 47:21, 50:20, 55:8, 56:17, 57:1, 60:7, 60:10, 60:20, 64:17, 69:13, 73:1, 75:13, 75:17, 76:15, 77:20, 77:24, 82:14

**seek** [2] - 18:20

**seeking** [1] - 21:8

**seeks** [1] - 19:19

**seem** [3] - 46:4, 80:9, 85:16

**select** [2] - 77:3, 77:22

**send** [8] - 14:20, 28:12, 49:13, 49:14, 58:10, 87:6, 87:7, 87:21

**sending** [4] - 58:9, 87:5, 87:10, 87:11

**sends** [1] - 58:4

**senior** [1] - 60:4

**sense** [2] - 40:15, 78:3

**sent** [11] - 3:15, 16:15, 24:23, 26:5, 27:1, 28:17, 54:9, 58:6, 58:15, 58:18,

87:19

**separate** [2] - 40:2, 79:10

**separately** [1] - 63:9

**September** [4] - 1:5, 3:22, 50:7, 58:20

**serving** [1] - 4:17

**set** [4] - 4:17, 54:3, 60:18, 84:14

**sets** [2] - 60:4, 67:10

**setting** [1] - 45:22

**settled** [1] - 25:22

**seven** [1] - 46:16

**several** [3] - 73:15, 76:9, 77:18

**shed** [1] - 75:21

**ship** [11] - 7:4, 27:13, 35:2, 36:21, 37:12, 38:9, 60:4, 60:19, 64:22, 69:9, 74:22

**ship's** [2] - 19:18, 62:24

**Shipboard** [1] - 56:19

**shipboard** [3] - 56:25, 57:24, 59:22

**ships** [3] - 36:18, 64:24, 76:4

**short** [4] - 20:3, 36:9, 48:14, 77:6

**short-circuit** [1] - 77:6

**shortening** [1] - 73:23

**show** [9] - 5:22, 5:25, 35:12, 52:22, 53:17, 55:15, 75:4, 75:15

**showed** [1] - 63:1

**showing** [1] - 60:23

**shows** [3] - 5:22, 6:16, 16:22

**side** [1] - 78:9

**significance** [1] - 53:13

**significant** [2] - 5:9, 5:10

**similar** [4] - 43:15, 63:5, 74:24, 75:14

**similarities** [1] - 75:4

**simple** [3] - 5:11, 6:3, 37:6

**simplest** [1] - 15:7

**simply** [4] - 14:4, 34:17, 39:9, 53:25

**single** [1] - 78:10

**sister** [1] - 60:19

**sit** [3] - 52:1, 76:15, 80:8

**sitting** [2] - 58:12, 63:18

**six** [2] - 84:3, 84:14
**size** [1] - 76:12
**skipping** [1] - 17:20
**skips** [1] - 75:5
**slip** [9] - 5:1, 38:16, 39:10, 40:20, 40:21, 42:20, 43:2, 44:16, 61:14
**slip-and-fall** [6] - 5:1, 39:10, 40:20, 40:21, 44:16, 61:14
**slip-or-fall** [1] - 38:16
**slip-resistant** [2] - 42:20, 43:2
**slipped** [1] - 5:8
**slipperiness** [1] - 40:21
**slips** [1] - 77:18
**slow** [1] - 61:21
**small** [2] - 11:3, 13:12
**software** [1] - 11:24
**Solis** [1] - 55:23
**someone** [5] - 17:25, 37:25, 41:16, 54:9, 85:9
**someplace** [4] - 15:23, 20:23, 20:25, 31:21
**sometimes** [9] - 20:14, 23:2, 23:5, 66:11, 76:10, 85:20, 87:1, 88:1, 88:3
**somewhere** [4] - 13:14, 21:22, 66:10, 79:4
**soon** [1] - 88:15
**sorry** [9] - 2:9, 4:15, 11:15, 19:10, 26:19, 28:6, 52:12, 57:17, 80:24
**sort** [3] - 35:1, 36:22, 76:9
**sounds** [2] - 39:23, 74:14
**SOUTHERN** [1] - 1:1
**Spain** [3] - 45:13, 45:14
**speaker** [1] - 10:11
**speaking** [1] - 40:4
**specific** [5] - 10:19, 39:22, 41:21, 61:1, 63:14
**specifically** [9] - 5:7, 18:9, 54:3, 55:4, 70:11, 70:24, 71:6, 71:20, 72:22
**specify** [1] - 87:10
**spell** [2] - 2:12, 9:24

**spend** [2] - 14:15, 79:17
**spent** [2] - 47:7, 86:14
**spoken** [1] - 69:18
**spreadsheet** [13] - 10:21, 11:2, 12:2, 62:3, 62:8, 65:18, 66:8, 74:10, 74:11, 76:14, 77:17, 78:12, 79:11
**stage** [1] - 77:16
**stamp** [2] - 56:13, 72:14
**stamped** [2] - 58:1, 59:23
**stamps** [1] - 58:2
**standing** [1] - 84:2
**start** [2] - 4:9, 59:3
**started** [2] - 13:9, 59:15
**starting** [2] - 2:4, 50:12
**starts** [2] - 17:3, 17:11
**state** [5] - 2:3, 5:11, 18:9, 21:22, 50:11
**statement** [6] - 8:21, 49:3, 74:15, 78:4, 78:11, 79:2
**statements** [19] - 15:5, 47:1, 47:11, 47:17, 73:8, 73:13, 73:22, 74:8, 76:21, 76:25, 77:1, 77:4, 77:22, 79:12, 79:18, 79:22, 80:1, 81:7
**STATES** [2] - 1:1, 1:11
**steering** [6] - 56:13, 56:20, 57:1, 57:2, 57:24, 59:22
**Steering** [1] - 56:19
**stick** [1] - 65:9
**still** [8] - 24:8, 34:14, 37:23, 50:22, 50:24, 51:8, 77:14, 77:15
**stop** [1] - 75:8
**stopped** [3] - 12:16, 12:21, 75:9
**stored** [2] - 81:21, 82:5
**story** [2] - 3:8, 15:25
**straight** [1] - 23:13
**straight-out** [1] - 23:13
**streamline** [1] - 3:24
**stretch** [2] - 64:9, 80:16
**strike** [3] - 34:2,

34:8, 35:14
**struggle** [1] - 3:3
**stuff** [2] - 11:1, 46:21
**subject** [16] - 10:2, 27:13, 38:18, 38:19, 47:15, 56:3, 61:9, 63:9, 63:11, 64:10, 66:5, 68:4, 69:2, 72:17, 74:22, 75:22
**submit** [6] - 27:17, 45:2, 45:5, 45:9, 47:13, 51:6
**submitted** [2] - 4:4, 10:22
**Subpart** [1] - 73:7
**subparts** [1] - 51:2
**substance** [6] - 5:13, 5:19, 25:6, 29:25, 42:20, 43:2
**substantial** [1] - 86:13
**sudden** [2] - 16:18, 17:11
**sufficient** [8] - 6:20, 6:25, 25:14, 31:9, 31:11, 55:12, 73:4, 80:21
**sufficiently** [1] - 41:15
**suggest** [1] - 34:7
**suggesting** [3] - 18:11, 20:24, 32:12
**suggestion** [1] - 5:24
**suggests** [1] - 81:14
**Suite** [1] - 1:18
**summarize** [1] - 8:10
**summary** [4] - 7:19, 8:14, 10:5, 22:4
**sun** [1] - 27:7
**sunny** [1] - 13:8
**super** [1] - 39:9
**supervisor** [12] - 7:15, 24:24, 25:18, 25:19, 28:18, 28:21, 28:22, 29:7, 29:9, 29:20, 30:23, 32:22
**supplement** [3] - 4:21, 6:22, 43:19
**supplemented** [1] - 43:13
**supplements** [2] - 4:19, 4:20
**support** [5] - 33:16, 33:22, 34:1, 34:4, 34:5
**supposed** [4] - 17:6, 42:3, 51:10, 52:25
**supposedly** [1] - 45:6
**surface** [16] - 36:25,

37:7, 37:14, 38:17, 39:2, 39:7, 39:20, 40:10, 40:11, 40:12, 40:16, 41:11, 41:12, 43:16
**suspect** [1] - 80:18
**swears** [1] - 23:14
**system** [10] - 69:3, 70:2, 70:3, 70:8, 70:9, 70:14, 79:5, 79:6, 82:2, 82:4

**T**

**takeaways** [1] - 86:25
**talks** [1] - 56:13
**target** [1] - 34:18
**team** [2] - 60:8, 60:9
**TELEPHONIC** [1] - 1:10
**ten** [16] - 3:6, 73:4, 81:3, 81:12, 81:17, 83:1, 83:16, 83:20, 83:25, 84:2, 84:3, 84:16, 84:18, 84:25, 85:9, 85:10
**ten-deposition** [1] - 84:2
**testimony** [3] - 8:16, 34:24, 83:10
**testing** [2] - 38:24, 38:25
**that'll** [1] - 18:17
**THE** [182] - 1:10, 1:11, 1:14, 1:17, 2:1, 2:9, 2:12, 2:15, 4:1, 4:7, 4:14, 4:16, 6:8, 6:19, 7:12, 7:18, 8:5, 9:13, 9:23, 10:13, 11:1, 11:5, 11:14, 11:16, 11:21, 12:11, 12:18, 12:20, 12:21, 12:24, 13:1, 13:2, 13:3, 13:5, 13:6, 13:7, 13:18, 13:21, 13:24, 14:9, 15:9, 15:12, 16:10, 17:15, 17:24, 18:3, 18:5, 18:14, 19:11, 19:14, 20:14, 21:12, 22:9, 25:3, 25:13, 26:14, 26:16, 26:18, 27:16, 27:19, 28:8, 29:17, 30:4, 30:17, 31:6, 33:8, 33:11, 33:15, 34:7, 34:10, 34:19, 34:25, 35:22, 36:4, 36:6, 36:13, 37:19, 38:13, 39:3, 39:18, 41:8,

42:15, 42:24, 43:3, 43:10, 43:12, 43:19, 44:2, 44:20, 44:25, 45:5, 45:19, 46:3, 46:9, 46:11, 46:19, 46:24, 47:2, 47:12, 47:20, 48:4, 48:10, 48:14, 48:18, 48:20, 48:23, 49:11, 49:14, 49:18, 49:25, 50:4, 50:8, 50:18, 51:9, 52:8, 52:11, 52:14, 52:17, 52:25, 53:16, 54:17, 55:6, 55:20, 56:16, 57:4, 57:9, 57:13, 57:16, 57:18, 58:3, 58:9, 58:17, 58:21, 58:23, 58:25, 59:4, 59:7, 59:13, 59:19, 59:22, 60:1, 61:8, 61:17, 61:21, 61:25, 62:5, 63:8, 63:21, 64:5, 64:20, 65:9, 65:23, 66:13, 67:21, 68:3, 68:21, 69:16, 69:25, 70:6, 70:15, 71:13, 71:22, 72:1, 74:14, 75:25, 76:20, 77:6, 77:9, 77:24, 78:14, 79:14, 79:21, 81:6, 82:8, 84:5, 84:8, 84:10, 84:17, 84:23, 85:2, 85:6, 86:18
**themselves** [2] - 24:3, 24:7
**theory** [1] - 32:11
**they've** [13] - 26:12, 30:22, 33:18, 37:3, 37:14, 47:5, 66:16, 67:1, 67:4, 72:10, 72:14, 83:7, 83:19
**three** [25] - 10:17, 34:12, 36:8, 37:2, 38:24, 40:24, 46:4, 48:8, 57:21, 62:20, 63:13, 63:25, 65:6, 65:19, 66:17, 66:18, 66:20, 66:22, 67:5, 67:7, 67:20, 72:9, 72:20, 75:19, 76:4
**three-year** [2] - 66:18, 76:4
**thrilled** [1] - 23:19
**tie** [2] - 18:21, 32:7
**time-consuming** [1] - 82:11
**today** [16] - 2:25, 3:9, 18:9, 35:21, 39:8, 46:14, 47:8, 49:13,

49:20, 50:2, 58:6, 63:18, 85:15, 86:4, 87:11, 88:16

**together** [2] - 13:22, 85:17

**top** [1] - 57:21

**Topic** [1] - 51:5

**topics** [1] - 57:2

**total** [3] - 57:21, 62:7, 83:8

**track** [1] - 52:19

**TRANSCRIBED** [2] - 1:10, 1:20

**transcription** [1] - 89:4

**transferred** [1] - 25:9

**transitory** [2] - 5:13, 5:19

**translate** [1] - 7:25

**travel** [2] - 45:15, 80:21

**traveling** [1] - 3:22

**trial** [7] - 19:12, 33:24, 33:25, 34:6, 44:15, 45:21, 84:4

**trials** [1] - 45:22

**tried** [1] - 87:16

**trips** [1] - 77:17

**true** [1] - 20:9

**truly** [1] - 80:13

**trust** [1] - 4:8

**try** [7] - 2:22, 3:6, 9:3, 51:7, 86:13, 86:25, 87:7

**trying** [12] - 3:20, 5:5, 14:15, 30:15, 37:13, 37:23, 56:8, 58:15, 61:18, 63:3, 79:17, 86:17

**Tuesday** [3] - 46:15, 48:5, 48:9

**turned** [1] - 68:17

**turns** [1] - 81:9

**two** [18] - 3:9, 3:10, 20:20, 26:4, 31:11, 35:20, 35:25, 41:17, 44:10, 60:4, 63:8, 67:3, 67:19, 79:7, 80:5, 80:8, 86:25, 87:1

**tying** [1] - 30:2

**types** [1] - 39:11

**typically** [5] - 11:22, 20:16, 49:15, 65:3, 87:7

## U

**ultimately** [21] - 6:3,

10:25, 17:7, 20:9, 27:5, 27:9, 36:21, 37:3, 38:2, 55:24, 56:23, 60:2, 60:16, 61:7, 63:2, 63:4, 73:21, 74:1, 75:17, 83:15, 84:1

**unavailable** [1] - 48:9

**unclear** [5] - 10:4, 27:2, 27:15, 27:21, 36:15

**uncovered** [1] - 7:16

**under** [12] - 3:22, 11:11, 12:13, 23:11, 23:14, 27:7, 28:21, 34:3, 37:3, 50:24, 61:14, 67:12

**understood** [2] - 34:9, 59:21

**undertake** [1] - 25:10

**undertaken** [2] - 5:14, 36:22

**unduly** [1] - 76:6

**unedited** [3] - 16:25, 17:8, 27:9

**uniformly** [1] - 73:21

**UNITED** [2] - 1:1, 1:11

**universe** [1] - 61:25

**unknown** [1] - 5:21

**unless** [6] - 3:7, 24:4, 26:1, 46:19, 58:10, 87:8

**unnecessarily** [1] - 61:5

**unnecessary** [2] - 74:4, 80:13

**unreasonable** [1] - 15:20

**unredacted** [1] - 55:4

**untidy** [1] - 18:23

**up** [21] - 3:11, 3:12, 16:7, 17:3, 17:11, 25:10, 28:22, 29:4, 32:8, 38:1, 56:14, 57:7, 59:9, 64:21, 66:19, 76:11, 76:16, 78:18, 82:7, 82:20, 86:3

**uploaded** [2] - 82:4, 82:14

**useable** [1] - 82:15

## V

**vague** [1] - 10:2

**variety** [1] - 45:14

**various** [3] - 10:20, 24:23, 60:20

**vary** [1] - 76:11

**version** [2] - 51:24, 87:17

**versus** [5] - 2:2, 21:5, 50:9, 73:15, 73:16

**vessel** [6] - 12:2, 38:18, 40:16, 45:12, 66:7, 75:22

**vessels** [2] - 64:23, 77:18

**video** [37] - 5:20, 5:21, 5:25, 6:1, 6:22, 16:13, 16:14, 16:22, 16:25, 17:8, 17:13, 17:20, 17:22, 18:16, 19:1, 19:5, 19:8, 19:12, 27:9, 27:10, 73:8, 74:16, 75:2, 75:3, 75:5, 75:15, 76:21, 77:11, 78:24, 78:25, 79:24, 82:14, 82:16, 82:24

**videos** [3] - 75:13, 75:16, 82:10

**viewable** [1] - 76:13

**VOICE** [1] - 12:15

**voluminous** [1] - 56:9

**vs** [1] - 1:6

## W

**wait** [4] - 15:16, 49:21, 59:19, 77:20

**waiting** [2] - 49:23, 51:10

**WALTER** [1] - 1:17

**wants** [6] - 55:4, 65:12, 77:3, 77:6, 77:9, 84:17

**wasteful** [3] - 61:5, 74:4, 80:14

**watched** [2] - 16:14, 19:8

**ways** [2] - 20:6, 22:22

**Wednesday** [9] - 10:24, 48:10, 48:12, 49:21, 49:22, 49:24, 50:1, 58:20

**Wednesday's** [1] - 49:21

**week** [14] - 15:19, 15:25, 45:5, 45:10, 46:1, 46:15, 46:22, 47:21, 47:23, 48:1,

51:11, 52:6, 85:16

**weeks** [1] - 80:5

**West** [1] - 1:19

**Westlaw** [1] - 73:18

**wet** [2] - 5:12, 5:18

**what-all** [1] - 84:15

**whatsoever** [1] - 76:19

**whoa** [1] - 33:11

**wholesale** [1] - 39:16

**willing** [1] - 40:8

**withdraw** [1] - 46:20

**withdrawing** [1] - 46:9

**withdrawn** [4] - 44:25, 45:1, 46:11

**withheld** [1] - 55:8

**withhold** [2] - 24:21, 34:4

**witness** [5] - 44:17, 83:3, 83:9, 85:1, 85:3

**witnesses** [3] - 6:12, 83:8, 83:19

**wondering** [1] - 85:13

**word** [2] - 42:17, 42:21

**words** [2] - 28:19, 31:19

**work-product** [1] - 51:22

**works** [2] - 48:17, 70:9

**workup** [1] - 38:11

**world** [2] - 35:2, 44:19

**worth** [2] - 63:25, 88:10

**write** [2] - 13:17, 13:18

**written** [1] - 74:11

## X

**XYZ** [1] - 70:20

## Y

**year** [3] - 45:24, 66:18, 76:4

**years** [21] - 10:17, 37:1, 37:3, 38:18, 38:21, 38:24, 39:2, 40:23, 40:24, 41:17, 57:20, 62:21, 63:13, 65:6, 65:19, 66:17, 66:21, 66:22, 67:5, 67:7, 75:19

**years'** [1] - 63:25

**Yeshota** [2] - 7:13, 29:7

**yesterday** [3] - 10:23, 46:8

**yourselves** [1] - 85:22